IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY,
an unincorporated nonprofit association, on behalf of itself and its members,

    *Plaintiff*,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

**MOTION FOR PRELIMINARY INJUNCTION**

Pl

---

Plaintiff submits the following Motion for Preliminary Injunction. Counsel for Plaintiff conferred with counsel for Defendant prior to the filing of the motion, and counsel for Defendant indicated Defendant opposes the motion.

**INTRODUCTION**

This is a suit challenging the legality, both on its face and as applied, of Colorado's Proposition 108 (and its implementing statutes) ("Proposition 108"), a ballot initiative adopted in 2016 that requires a major political party to allow voters not affiliated with the party to vote in that party's primary election and thereby to help determine the party's nominee for the general election. Plaintiff COLORADO REPUBLICAN PARTY asserts, on behalf of itself and its members, that the law violates constitutionally-protected rights of speech, association, and equal protection of the laws. Plaintiff's governing State Central Committee has voted at the outset of the last two election cycles to challenge Proposition 108's constitutionality. Joint Statement of

Undisputed Facts, Dkt. 33, ¶¶ 7, 11.

## ARGUMENT

Plaintiff and its members have already been deprived of their constitutional rights to free association and speech and to the equal protection of the laws in the three primary elections—June 2018, June 2020, and June 2022—that have been held since the adoption of Proposition 108. Absent a preliminary injunction, Plaintiff and its members will suffer further irreparable harm to their constitutional rights should Plaintiff be required to allow unaffiliated voters to participate in its primary election scheduled for June 25, 2024. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1221 (D. Colo. 2001). The moving party has the burden of making a prima facie showing of a probable right to the ultimate relief and a probable danger of injury if the motion is denied. *Big O Tires*, 167 F. Supp. at 1221. For injunctive relief that is "disfavored," Plaintiff bears "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors," requiring that it "make a 'strong showing' that these tilt in [its] favor." *Free the Nipple v. City of Ft. Collins*, 916 F.3d 792, 797 (10th Cir. 2019). Even if such a "higher burden" is applicable here, *but see Springer v. Grisham*, No. 1:23-CV-00781 KWR/LF, 2023 WL 8436312, at *3 (D.N.M. Dec. 5, 2023) (holding that the heightened standard does not apply when Plaintiff seeks to enjoin an unconstitutional law), that "strong showing" burden does not require Plaintiff to demonstrate that the traditional four factors weigh *heavily and compellingly* in Plaintiff's favor. "[T]he

2

requirement that a movant requesting a disfavored injunction must make a showing that the traditional four factors weigh heavily and compellingly in [the movant's] favor is no longer the law of the circuit." *Free the Nipple*, 916 F.3d at 797 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005)).

I. **Plaintiff Is Likely To Succeed On The Merits Of Its Constitutional Claims.**

   A. **The Freedom of Association of Plaintiff and Its Members Is Clearly Infringed By Proposition 108's Mandate That Unaffiliated Voters Be Allowed To Participate in the Party's Selection of Its Nominee for Office.**

More than two decades ago, the Supreme Court made clear that forcing a political party and its members to allow unaffiliated voters—people who by definition are not part of the political association—to vote in the primary election that determines the nominee of that political party, violates the Freedom of Association of the party and its members protected by the First Amendment and made applicable to the States by the Fourteenth Amendment. *California Democratic Party v. Jones*, 530 U.S. 567 (2000).

At issue in that case was California's "blanket primary," which provided that "[a]ll persons entitled to vote, *including those not affiliated with any political party*, shall have the right to vote ... for any candidate regardless of the candidate's political affiliation." *Id.* at 570 (quoting Cal. Elec. Code § 2001, emphasis added). Although unaffiliated voters and also members of other political parties were allowed to cross over and vote in another party's primary election, the fact that "the candidate of each party who wins the greatest number of votes 'is the nominee of that party at the ensuing general election,'" when the total includes votes cast by voters unaffiliated with the party—whether affiliated with another party or unaffiliated with any party—is what rendered the blanket primary unconstitutional. *Id.* (citing Cal. Elec. Code. §

3

15451); *see also id.* at 577.

The Court held that "[t]he First Amendment protects 'the freedom to join together in furtherance of common political beliefs,'" … which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Id.* at 574 (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214-15 (1986), and *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981)). Indeed, the Court noted that "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee" because "[t]hat process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Jones*, 530 U.S. at 575 (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 372 (1997) (Stevens, J., dissenting)).

California's blanket primary violated the freedom of association of the political parties and their members because it "force[d] political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Jones*, 530 U.S. at 577. It was therefore "qualitatively different from a closed primary," for "[u]nder that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary [as is also the case in Colorado], and thus, in some sense, to 'cross over,' at least he must formally *become a member of the party*; and once he does so, he is limited to voting for candidates of that

4

party." *Id.* (emphasis in original).[1]

That unaffiliated voters may alter the results of a party's primary election is not speculative. Indeed, producing "candidates who better represent all Coloradans," and "who are more responsive to a broader range of interests," was one of the two official ballot arguments advanced in favor of Proposition 8,[2] demonstrating that the law was designed to alter the political expression of political parties and their members. This is particularly of concern in a state like Colorado, where statewide and in most counties and election districts, unaffiliated voters outnumber voters registered with either of the major parties by significant margins, sometimes by as much as two to one or more. *See* Complaint ¶ 10; Answer ¶ 10; Undisputed Facts ¶ 3; and voter registration statistics published by the Colorado Secretary of State.[3]

The Supreme Court has confirmed that election restrictions trigger strict scrutiny when infringements of associational rights are "severe." The law at issue here imposes a "severe" burden on Plaintiff's constitutional rights because it interferes with Plaintiff's "authority to

---

[1] In a footnote, Justice Scalia did suggest, in dicta, that a "blanket primary … may be constitutionally distinct from the open primary, … in which the voter is limited to one party's ballot," *id*. at 577 n.8 (emphasis added), but he did so in reliance on a dissenting opinion in *La Follette*, in which Justice Powell noted that "the act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party." *Id*. at 577 n.8 (quoting *La Follette*, 450 U.S. at 130 n. 2 (Powell, J., dissenting). That is not true of the Colorado law at issue here, for a provision of Proposition 108 provides that "[a]n eligible unaffiliated elector … is entitled to vote in the primary election of a major political party without affiliating with that political party." CRS § 1-7-201(2.3); *see also* § 1-2-218.5(2) ("Any unaffiliated eligible elector may, but is not required to, declare a political party affiliation when the elector desires to vote at a primary election.").

[2] *See* "Official Arguments," available at https://ballotpedia.org/Colorado_Unaffiliated_Elector,_Proposition_108_(2016)#cite_note-bluebook-2.

[3] Available at https://www.coloradosos.gov/pubs/elections/VoterRegNumbers/2023/November/VotersByPartyStatus.pdf.

5

exclude unwanted members" and also "regulate[s] [its] internal processes." *Clingman v. Beaver*, 544 U.S. 581, 590 (2005) (citing *Timmons*, 520 U.S. at 363). It is therefore subject to strict scrutiny. Colorado's Proposition 108 could therefore only be sustained if the government could demonstrate that it was narrowly tailored to further a compelling governmental interest. As the Supreme Court's decision in *Jones* makes clear, it cannot.

In *Jones*, the California defendants asserted "seven state interests they claim are compelling," but the Court rejected every one of them. It held that two of them—"producing elected officials who better represent the electorate and expanding candidate debate beyond the scope of partisan concerns"—"reduce[d] to nothing more than a stark repudiation of freedom of association." *Jones*, 530 U.S. at 582. And it rejected a third—"that a blanket primary is the only way to ensure that disenfranchised persons enjoy the right to an effective vote"—as "nothing more than reformulation of an asserted state interest we have already rejected." *Id.* at 583. A "non-member's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications," the Court held. *Id*. (quoting *Tashjian*, 479 U.S., at 215-16, n. 6).

The Court also rejected the four remaining interests that the California defendants had asserted—"promoting fairness, affording voters greater choice, increasing voter participation, and protecting privacy"—as simply not "compelling" in the circumstances of the case. Indeed, it found that the asserted interest in affording voters greater choice, which is to say, a range of candidates who are all more "centrist," was not only *not compelling* but may not even be a *legitimate* state interest.

Finally, even assuming that all of the interests asserted by the State were compelling, the

6

Court held that the blanket primary was not narrowly tailored to further those interests, because all of the interests could be protected without interference with the free association rights of political parties by resort to a *nonpartisan* blanket primary. California adopted a *nonpartisan* blanket primary in response to the *Jones* decision; but Colorado embraced an unconstitutional semi-open primary instead.

Plaintiff is therefore extremely likely to prevail on the merits of its First Amendment claim that the Freedom of Association rights of itself and its members are violated when it is forced to associate with unaffiliated voters in the core function of choosing the party's nominees for political office.

B. **The Opt-Out Provision of Proposition 108 Not Only Does Not Save The Open Primary From Unconstitutionality, But It Is Unconstitutional In Its Own Right.**

Proposition 108 also contains an "opt-out" provision, CRS § 1-4-702, which Defendant has previously claimed eliminates Plaintiff's contention that Proposition 108 forces it to allow unaffiliated voters to participate in its primary election. But the opt-out provision is constitutionally problematic in its own right for at least two reasons. First, it allows a major political party to opt out of the semi-open primary *only* if, before every election cycle, a super-majority of three-fourths of the total membership of the party's governing state central committee votes to opt out of the semi-open primary election in which the Party must allow unaffiliated voters to participate. That threshold is extraordinary, rarely if ever applied in other parliamentary contexts because it is nearly impossible to meet, *see, e.g.*, Robert's Rules of Order ¶ 68 ("In prescribing the vote necessary for the adoption of an amendment, the expression 'a vote of two-thirds of the members' should never be used in ordinary societies, especially in large organizations with quorums smaller than a majority of the membership, as in such societies it is

7

seldom that two-thirds of the members – that is, two-thirds of the entire membership – is ever present at a meeting."). It is also a severe and unconstitutional "intrusion into the internal structure or affairs" of Plaintiff, *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984), for it allows a small minority of members (if that) to thwart an opt-out vote even if such were supported by an overwhelming majority but less than a ¾ supermajority of Plaintiff's governing body, the State Central Committee.

Second, even were the ¾ of total membership threshold to be met, the opt-out provision allows nomination *only* by assembly caucus or convention (conducted with only the party's resources); it prohibits a party from choosing a primary election (conducted with access to county and state resources) limited only to Republican voters—the one choice that Plaintiff's State Central Committee unanimously or nearly unanimously supported in both 2021 and 2023. Undisputed Facts ¶¶ 7, 11. It therefore creates an unenviable and unconstitutional Hobson's choice—forego a primary election where the nominee is chosen only by voters affiliated with the party, or accept an unconstitutional condition mandating that it allow unaffiliated voters to influence—perhaps dispositively—the choice of nominee in its primary election. Some choice. Both alternatives – the semi-open primary where the Party is compelled to accept participation by unaffiliated voters and the "opt-out" alternatives of nomination by assembly caucus or convention rather than a primary election open to all Republican voters – violate the associational rights of Plaintiff and its members. As the Supreme Court has recognized, "Freedom of association … encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989).

Given this clear precedent from the Supreme Court, Plaintiff is likely to succeed on the merits of its claim that the opt-out provision is an unconstitutional intrusion into the internal affairs of Plaintiff's political associations, and therefore a violation of the First Amendment Freedom of Association rights of Plaintiff and its members. And as with the core Freedom of Association claim set out above in Part I.A, there are no compelling governmental interests that the opt-out provision is narrowly tailored to further. Indeed, by forcing the party to the Hobson's choice of allowing unaffiliated voters to help determine the party's nominees or no primary election at all, the opt-out provision actually runs counter to a governmental interest asserted by proponents of the initiative of encouraging more people to get involved in the electoral process. *See*, *e.g.*, KUNC, "From Hickenlooper To House, Colorado Leaders On Ballot Battle For A Presidential Primary" (Sept. 15, 2016).[4]

### C. By Forcing A Political Party to Place Its Imprimatur on Primary Election Victors Even When Those Candidates May Not Have Received A Plurality of Support from the Party's Own Members, Proposition 108 Also Violates the Free Speech Rights of the Party and its Members.

Section 1-4-104 of the Colorado Revised Statutes provides that "Candidates voted on for offices at primary elections who receive a plurality of the votes cast shall be the respective party nominees for the respective offices." That requires that a political party place its imprimatur on a candidate who may not have received a majority or even plurality of support from the party's members. That infringes Freedom of Speech, for it amounts to "compelled speech," which the Supreme Court has long held to be anathema to the First Amendment's Freedom of Speech

---

[4] Available at https://www.kunc.org/politics/2016-09-15/from-hickenlooper-to-house-colorado-leaders-on-ballot-battle-for-a-presidential-primary.

guarantee. *See*, *e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Board of Education v. Barnette*, 319 U.S. 624, 637 (1943). More recently, the Supreme Court reaffirmed that laws compelling individuals to speak a particular message" unconstitutionally alters "the content of [their] speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Forcing a political party to lend its name to a nominee who may not reflect the views of a majority or even plurality of the party's members is compelled speech that runs afoul of these foundational First Amendment precedents.

Plaintiff is therefore likely to succeed on the merits of that claim as well and, as with the Freedom of Association claims above, the restriction on Plaintiff's free speech rights is not narrowly tailored to further any compelling governmental interest.

**D. Allowing Unaffiliated Voters to Vote in a Party's Primary Election Dilutes the Votes of Voters Affiliated with the Party in Violation of the Commands of the Fourteenth Amendment's Equal Protection Clause.**

The Right to the Equal Protection of the Laws protected by the Fourteenth Amendment to the United States Constitution prohibits States from diluting the weight to be accorded to a person's vote. *Reynolds v. Sims*, 377 U.S. 533, 568 (1964). The right to vote cannot be "diluted by ballot-box stuffing." *Id.* at 555 (citing *Ex parte Siebold*, 100 U.S. 371 (1879); *United States v. Saylor*, 322 U.S. 385 (1944)). By compelling a major party to accept the votes of unaffiliated voters in determining the party's nominee at its primary election, Proposition 108 dilutes the votes of party members by "ballot-box stuffing" with the votes of unaffiliated voters.

Plaintiff is therefore likely to succeed on the merits of its equal protection/vote dilution claim, and the violation of Plaintiff's equal protection right to not have the votes of its members diluted is not narrowly tailored to further any compelling governmental interest.

E.  **By Allowing Minor Parties to Choose not to Have Unaffiliated Voters Participate in their Primary Elections, While Denying that Right to Major Parties, Proposition 108 Also Violates Equal Protection.**

The Right to the Equal Protection of the Laws protected by the Fourteenth Amendment to the United States Constitution prohibits States from treating voters affiliated with some political parties differently than voters affiliated with other political parties without good cause related to compelling governmental interests.

Proposition 108, in whole or in part, and Colo. Rev. Stat. Sections 1-4-101(2)(b), § 1-4-1304, and 1-7-201(2.3), treat voters affiliated with major political parties differently than voters affiliated with minor political parties. Pursuant to those provisions, voters affiliated with major political parties such as Plaintiff are not permitted to participate in a primary election to choose their party's nominees without their votes being diluted by unaffiliated voters, but voters affiliated with minor political parties are permitted to do so. That differential treatment infringes upon the fundamental voting rights of voters affiliated with major political parties such as Plaintiff, in violation of the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied.

Because the fundamental right to vote is at stake, Colorado can sustain this discrimination between major and minor political parties only if the distinction is narrowly tailored to further a compelling governmental interest. For the reasons set out in Part I.A above, the State is unlikely to be able to sustain its burden under such strict scrutiny or even a lesser standard. Plaintiff is therefore likely to succeed on the merits of this Equal Protection claim as well.

II.  **The Other Preliminary Injunction Factors All Favor Plaintiff**

In a constitutional case, the likelihood of success on the merits will often be the

determinative factor. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). This is because: (a) "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); (b) the government's interests in enforcing a likely unconstitutional law do not outweigh Plaintiff's interest in having its constitutional rights protected; and (c) it is always in the public interest to prevent violation of constitutional rights. *Hobby Lobby*, 723 F.3d at 1145. As the Tenth Circuit has previously recognized, "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

Even if the Court were to consider the other three factors, however, the result would be the same, because all of the factors favor Plaintiff.  It is well-settled that a showing of the infringement of a constitutional right requires no further showing of irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 805 (10th Cir. 2019).

As for the balance of harms and public interest prongs, the State's interest in enforcing an unconstitutional law does not outweigh Plaintiff's interest in having its constitutional rights protected. *Awad*, 670 F.3d at 1131. Moreover, it is always in the public interest to prevent the violation of a party's constitutional rights. *Id*. (internal citation and quotation marks omitted).

That is particularly the case here. Nomination of candidates is the most critical stage of the electoral process because the ultimate choice of the mass of voters is determined when the major party nominations have been made. *Newberry v. United States*, 256 U.S. 232, 286 (1921). By allowing unaffiliated voters to affect a party's choice of nominee, Proposition 108 imposes an

irreparable injury on the First Amendment and Equal Protection rights of Plaintiff and its members because that harm cannot be cured after the fact.

Defendant Secretary of State has previously asserted several governmental interests, none of which outweigh the harm to Plaintiff caused by the deprivation of its constitutional rights. In *PARABLE v. Griswold*, the Secretary contended that a preliminary injunction issued in April 2022 would disrupt the orderly conduct of the primary election that was scheduled for June 28, 2022, less than three months after the hearing on the motion for preliminary injunction. But the next election at issue in this case is scheduled for June 25, 2024—still over six months away. *See* Secretary of State, 2024 Election Calendar.[5] And state law already allows a minor political party to notify the Secretary of State that it is prohibiting unaffiliated electors from voting in its primary as late as April 11, 2024. CRS § 1-4-1304(1.5)(c). No harm would arise were major political parties allowed to avail themselves of that same notification deadline, much less a harm that outweighs the infringement on the constitutional rights of Plaintiff and its members.

Second, the Secretary has previously contended that the will of the voters who adopted Proposition 108 in 2016 would be harmed by a preliminary injunction. The Tenth Circuit squarely rejected this argument in *Awad*: "Appellants argue that the balance weighs in their favor because Oklahoma voters have a strong interest in having their politically expressed will enacted, a will manifested by a large margin at the polls. But when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected." *Awad*, 670 F.3d at 1131 (citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692,

---

[5] Available at https://www.sos.state.co.us/pubs/elections/calendars/2024ElectionCalendar.pdf.

699 (9th Cir.1997)).

Finally, the Secretary has previously contended that unaffiliated voters would be harmed by not being able to participate in a major party's primary election. Even assuming that interference with the First Amendment associational rights of others is a cognizable harm at all, which is doubtful, unaffiliated voters have it entirely within their own power to avoid any such harm merely by becoming affiliated with the political party in whose primary they wish to participate. Under Colorado law, they can do so up until election day itself. CRS § 1-2-201(3)(a).

If the Secretary instead characterizes the supposed harm to unaffiliated voters as not being able to vote in a major party primary without becoming a member of that party, there is no such cognizable harm. One does not have a right to interfere in another's political association and, therefore cannot be harmed in any cognizable way should the association choose not to permit such interference. As the Supreme Court held in *Jones*, "[t]he First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' … which "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Jones*, 530 U.S. at 574 (quoting *Tashjian*, 479 U.S. at 214-15).

In sum, none of the purported harms that one might anticipate being raised by the Secretary outweigh the harm to Plaintiff and its members caused by the violation of their constitutional rights of Free Association, Free Speech, and Equal Protection of the Laws.

The likely unconstitutionality of Proposition 108 is also dispositive on the "public interest" prong, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132. Thus, "[w]hile the public has an interest in the will of the voters being carried out, … the public has a more profound and long-term interest in

14

upholding an individual's constitutional rights." *Awad*, 670 F.3d at 1132. Granting the preliminary injunction would therefore serve the public interest.

## CONCLUSION

This Court should issue a Preliminary Injunction, enjoining Defendant, Defendant's officers, agents, employees and all other persons acting in active concert with her, from enforcing Proposition 108 and Colo. Rev. State Sections 1-2-218.5(2), 1-4-101(2)(b), 1-4-104, 1-4-702, and 1-7-201(2.3), in whole or in part, against Plaintiff, and affording to major political parties the same right that is available to minor political parties under CRS § 1-4-1304(1.5)(c) to notify the Secretary of State by April 11, 2024, whether they wish to prohibit unaffiliated electors from voting in their primary elections.

Alternatively, the Court should enjoin the three-fourths supermajority requirement of the opt-out provision of Proposition 108 and CRS § 1-4-702, permitting major political parties such as Plaintiff to determine by simple majority vote whether to opt out of the State-sponsored open primary and thereby prevent the State from its "intrusion into the internal structure or affairs of an association." *Eu*, 489 U.S. 214 at (1989).

Respectfully Submitted,

/s/ John C. Eastman
John C. Eastman
jeastman@ccg1776.com
Anthony T. Caso
atcaso@ccg1776.com
CONSTITUTIONAL COUNSEL GROUP
1628 North Main St., Suite 289
Salinas, CA 93906
Telephone: (909) 257-3869
FAX: (714) 844-4817

Randy B. Corporon
rbc@corporonlaw.com
D. Beth Chambers
bethc@corporonlaw.com
LAW OFFICES OF RANDY B. CORPORON P.C.
2821 S. Parker Road, Suite 555
Aurora, CO 80014
Telephone: (303) 749-0062
FAX: (720) 836-4201

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

    Grant T. Sullivan, grant.sullivan@coag.gov

    Emily Burke Buckley, emily.buckley@coag.gov

    Kyle M. Holter, kyle.holter@coag.gov

    /s/ John C. Eastman
    John C. Eastman