# Exhibit 1

# Declaration of Alexander Haberbush

EXHIBIT 1                                    Declaration of Alexander Haberbush - 20

**DECLARATION OF ALEXANDER H. HABERBUSH**

I, Alexander H. Haberbush, declare as follows:

1. I am an attorney at law, duly licensed to practice in the State of California. I am admitted to practice before the United States District Court for the District of Colorado. I am a partner with the Constitutional Counsel Group, and I serve as outside counsel for the Plaintiff, the Colorado Republican State Central Committee (the "Party"), in this matter. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently thereto.

2. This declaration is submitted to establish the timeline of events following this Court's March 31, 2026 Order and to explain the delay in filing the Party's Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction. Specifically, this declaration places on the record the several directives our firm received from Steve Klenda, Esq., acting as General Counsel under the direction of the Party's former Chairman, Brita Horn, which explicitly prohibited us from filing this motion until the Chairman's resignation became effective on April 17, 2026.

3. Following the resignation of the former Chairman, the new acting Chairman of the Party, Eric Grossman, assumed the authority to assert or waive the Party's privilege. Mr. Grossman has explicitly waived the attorney-client privilege with respect to these specific communications so that they may be disclosed to the Court to explain the timeline of events and the reasons for the delayed filing. A true and correct copy of Mr. Grossman's email to me waiving that privilege is attached hereto as Exhibit A.

4. Following this Court's March 31, 2026 Order, I immediately began efforts to coordinate a time-sensitive strategy to secure emergency injunctive relief for the 2026 primary election. On Saturday, April 4, 2026, I left a voicemail for Mr. Klenda and sent him an email requesting an urgent conference call to discuss this strategy. Later that day, we held a conference call with Mr. Klenda where he agreed that our strategy seemed prudent and represented that he would convey our legal advice to Ms. Horn.

5. Following those discussions, Ms. Horn, through Mr. Klenda, declined to authorize the filing of the emergency motion. On April 6, 2026, I emailed Mr. Klenda a formal letter advising him that this decision conflicted with binding resolutions previously passed by the Party's State Central Committee. I strongly advised that an emergency meeting of the Executive Committee be called to address the issue. Attached hereto as Exhibit B is a true and correct copy of my April 6, 2026 letter to Mr. Klenda.

6. On Sunday, April 12, 2026, at 12:39 PM, I sent a direct text message to Mr. Klenda notifying him that the Party's State Assembly had passed a resolution explicitly directing that the motion for preliminary injunction be filed. I asked how he would like us to proceed in light of this clear directive from the State Assembly.

7. At 1:12 PM on April 12, 2026, Mr. Klenda responded to me via text message, refusing to authorize the filing. He stated verbatim: "Hi Alex, My instructions remain the same. The state assembly lacks authority to direct the Chair in specific litigation decisions or tactics.

EXHIBIT 1                                                Declaration of Alexander Haberbush - 21

The party will not pursue a tro/prelim injunction or similar relief to exclude unaffiliated voters from the 2026 primary." Attached hereto as Exhibit C is a true and correct copy of a screenshot of these April 12, 2026 text messages.

8. Early on Monday, April 13, 2026, I emailed Mr. Klenda a formal letter requesting clarification regarding his directive and outlining Colorado law indicating that the State Assembly, acting in convention, is the ultimate authority in the Party on this matter.

9. At 6:43 AM on April 13, 2026, Mr. Klenda replied to my email, rejecting the authority of the State Assembly to direct this litigation. He concluded his email with another explicit directive to stand down, stating verbatim: "I again instruct you, on behalf of the Chair as the Party's CEO, that the party will NOT pursue injunctive relief to close the 2026 primary."

10. Later that same morning, at 9:58 AM, Mr. Klenda sent me another email reaffirming the Chairman's refusal to authorize the filing, asserting that it was a "tactical litigation decision" and stating: "The Chair maintains the discretion to make this decision." Attached hereto as Exhibit D is a true and correct copy of this April 12-13, 2026 email chain, including my April 12 letter.

11. Because Mr. Klenda was acting as the authorized counsel for the Party's Chairman, his explicit directives prohibited our firm from filing this Emergency Motion. It was not until the former Chairman's resignation became effective at midnight on Friday, April 17, 2026, and the new acting Chairman assumed authority and waived the privilege, that we were authorized to execute the will of the State Assembly and file this motion.

12. I contacted opposing counsel by phone and email Monday morning, April 20, 2026, to confer about this motion. Secretary Griswold opposes this motion. Defendant's counsel requested that we agree to a briefing schedule consisting of a response brief by Thursday, April 23, a reply brief by Friday, April 24, and a hearing on Monday or Tuesday of the following week. We have no objection to this proposed schedule, unless the court favors a more expedited schedule, in which case, we defer to the Court's discretion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Alexander Haberbush

EXHIBIT 1                                          Declaration of Alexander Haberbush - 22

# Exhibit A

Declaration of Alexander Haberbush - 23

## Alexander Haberbush

**From:** Eric Grossman <eric@colorado.gop>
**Sent:** Sunday, April 19, 2026 4:14 PM
**To:** Alexander Haberbush; rbc@corporonlaw.com; tom@colorado.gop
**Cc:** ericredlion@yahoo.com; russ@colorado.gop
**Subject:** Attorney Client Waiver

Dear Prop 108 Team,

I am writing to you in my capacity as Acting Chairman of the Colorado Republican Party, having assumed the duties of the office effective April 18, 2026.

On behalf of the Party, I hereby waive the attorney-client and work product privileges regarding all communications you had with Steve Klenda between September 27, 2025, and April 17, 2026 concerning the Proposition 108 litigation and the filing of the emergency motion for a TRO/Preliminary Injunction.

I further authorize you to disclose these specific emails and text messages to the Court.

Sincerely,

 - Eric Grossman Acting Chairman
Colorado GOP State Central Committee

1

EXHIBIT "1"                                                          Declaration of Alexander Haberbush - 24

# Exhibit B

# Constitutional Counsel Group

444 W Ocean Blvd., Suite 1403, Long Beach, CA 90802 | (562) 435-3456



John C. Eastman (temporarily inactive)
jeastman@ccg1776.com
Member: U.S. Supreme Court Bar

Alexander Haberbush
ahaberbush@ccg1776.com
Member: California Bar,
U.S. Supreme Court Bar

April 6, 2026

***VIA EMAIL***

Steve Klenda

**Re:    *TIME-SENSITIVE: Legal and Governance Risks and Prop 108 Motion***

Mr. Klenda,

Please forward this immediately to Chairman Horn, as it concerns urgent governance and bylaw issues regarding the Party's legal strategy.

John forwarded to me your message that Chairman Horn has decided not to proceed with the emergency motion for temporary restraining order and/or preliminary injunction that we discussed on our conference call on Saturday, based in part on her discussion with one of the existing candidates for Congress, incumbent Jeffrey Hurd.

As I see it, this raises several issues of concern under the existing Party Bylaws and resolutions of the State Central Committee. As you know, the resolution unanimously adopted by the State Central Committee in 2021 authorized litigation challenging the constitutionality of Proposition 108, specifically noting that "a majority of the Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate." Similarly, the resolution overwhelmingly (91% to 9%) adopted by the State Central Committee in 2023 reaffirmed the Central Committee's support of the current lawsuit "to challenge the constitutionality of Proposition 108 with the goal of having it overturned," and again referenced the fact that "a majority of the Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate."

Given the Court's ruling last week, an emergency motion filed now would provide a path to accomplish what those resolutions require, at least for the upcoming June 30, 2026 primary election.

I think the resolutions of the State Central Committee are binding here, and Article V, Section B.1.c requires the Chairman to "observe and enforce the bylaws and rules of the CRC."  The

EXHIBIT "1"                                           Declaration of Alexander Haberbush - 26

April 6, 2026
Page 2

bylaws also prohibit the CRC or any of its officers from endorsing, supporting, or opposing any candidate in a contested primary election before the primary.  Following the views of some candidates in contested primaries, even an incumbent like Jeffrey Hurd, instead of the unambiguous command of the CRC's resolutions, is highly problematic under that bylaw. At the very least, I think the Executive Committee should probably be asked to weigh in, and my strong advice is that an emergency meeting of the Executive Committee be called for tomorrow. While 5-days' notice is generally required, that requirement does not apply "in cases of emergency," such as we have here.

Sincerely,

By:_____

Alexander H. Haberbush, Esq.

Telephone: (562) 435-9062 | 444 W. Ocean Blvd., Ste. 1403, Long Beach CA, 90802

Constitutional Counsel Group

# EXHIBIT "A"

**EXHIBIT 8**

# COLORADO REPUBLICAN PARTY

**Meeting of the State Central Committee**

**September 18, 2021**

**Pueblo, Colorado**

<u>RESOLUTION ADOPTED BY UNANIMOUS VOTE</u>

WHEREAS, prior to the enactment of ballot Proposition 108 in November of 2016, all Colorado political parties enjoyed the freedom of association guaranteed by the First Amendment to the United States Constitution; and

WHEREAS, until the adoption of that unconstitutional statute in 2016, members of the Colorado Republican Party, a private association properly incorporated in the State of Colorado, enjoyed the rights and benefits of selecting party nominees for the General Election through a primary election open only to members of the Republican Party; and

WHEREAS, a majority of the Colorado Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate; and

WHEREAS, the present Open Primary established by Proposition 108 is clearly a violation of Republican Party members' constitutional rights under the First Amendment of the United States Constitution;

THEREFORE, BE IT RESOLVED, by the elected members of Colorado Republican Party's governing body, the State Central Committee, properly assembled this 18th Day of September, 2021, that a lawsuit is authorized to be initiated in federal district court by the Colorado Republican Party, its members, or both, at the earliest possible date to challenge the constitutionality of Proposition 108; and,

BE IT FURTHER RESOLVED, that the Colorado Republican Party is authorized to provide limited financial support to the litigation through and within the organization's annual budget-making process, with the expectation that adequate additional funding in support of the total expenses of litigation will be forthcoming by way of both pro bono contributions and lawful voluntary donations from interested citizens and organizations acting within applicable state and federal law.

EXHIBIT "A"                                        Page 3

EXHIBIT "1"                                        Declaration of Alexander Haberbush - 29

# EXHIBIT "B"

EXHIBIT 10

# COLORADO**GOP**

## CERTIFICATION OF RESULTS:

**Resolution Concerning Colorado's Unconstitutional Open Primary, which was adopted on October 7, 2023. (See Attached)**

### Vote Results:

**Yes:** 217.82 (91%)

**No:** 24 (9%)

**Total:** 241.82 (100%)

We, the authorized officers of the Colorado Republican Party, certify that on October 7, 2023, the attached resolution was adopted by a majority of the elected members of the Colorado Republican State Central Committee.

Dave Williams
Chairman
Colorado Republican Party

Anna Ferguson
Secretary
Colorado Republican Party



## Resolution of the State Central Committee

## Adopted: October 7, 2023

**WHEREAS,** prior to the enactment of ballot Proposition 108 in November of 2016, all Colorado political parties enjoyed the Freedom of Association guaranteed by the 1st Amendment to the United States Constitution; and

**WHEREAS,** until the adoption of that unconstitutional statute in 2016, members of the Colorado Republican Party, a private association properly incorporated in the State of Colorado, enjoyed the rights and benefits of selecting party nominees for the General Election through a primary election open only to members of the Republican Party; and

**WHEREAS,** a majority of the Colorado Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate; and

**WHEREAS,** the present Open Primary established by Proposition 108 is clearly a violation of Republican Party members' constitutional rights under the 1st Amendment of the United States Constitution;

**THEREFORE, BE IT RESOLVED,** by the elected members of the Colorado Republican Party's governing body, the State Central Committee, that the Colorado Republican Party still believes the Open Primary enacted under Proposition 108 is unconstitutional as it violates the Freedom of Association guaranteed by the 1st Amendment to the United States Constitution, and reaffirms its support for the Colorado Republican Party's lawsuit filed in federal district court, on July 31st, 2023, to challenge the constitutionality of Proposition 108 with the goal of having it overturned.

# EXHIBIT "C"

# BYLAWS OF THE COLORADO REPUBLICAN STATE CENTRAL COMMITTEE

*Amendments Adopted: August 31, 2024 (Effective on January 1, 2025)*

I:     **Name**
II:    **Purpose**

III:   **Organization and Policy**
A. Law
B. Powers
C. Republican Candidate Endorsement
D. Authority to Bind

IV:    **Membership**
A. Membership Defined
　　1. Voting Members
　　2. Nonvoting Members
B. Rights of Nonvoting Members
C. Residence and Registration

V:     **Officers**
A. Officers Defined
B. Duties.
　　1. Chairman
　　2. Vice-Chairman
　　3. Secretary
　　4. Assistant Secretary
　　5. Treasurer
　　6. Assistant Treasurer
C. Removal
D. Vacancies

VI:    **Nominations and Elections**
A. Nominations
B. Elections

VII:   **Meetings**
A. Organizational Meeting
B. Preassembly/Pre-convention Meetings
C. Nomination Method Selection Meeting
D. Other Meetings
E. Call
F. Quorum
G. Minimum Number of Meetings

VIII:  **Voting and Proxies**
A. Methods of Voting
B. No Multiple Votes
C. Proxies

IX:    **Executive Committee**
A. Membership
　　1. Voting Members
　　2. Nonvoting Members
B. Duties
C. Meetings.

X:     **Committees**
A. Standing Committees
　　1. Audit Committee
　　2. Bylaws Committee
　　3. Credentials Committee
B. Additional Committees
C. Quorum

XI:    **Representatives on Republican National Committee**

XII:   **Precinct Caucuses**
A. Date and Location
B. Voting Members
C. Procedure

XIII:  **Assemblies and Conventions**
A. Selection of National Convention Delegates
　　1. Allocation of delegates to Presidential candidates
　　2. General rules and procedures
　　3. State and congressional district convention procedures
　　4. Automatic Delegates
B. County Assemblies
C. Single County District Assemblies
D. Other Assemblies
　　1. Apportionment of delegates
　　2. Multi-county districts
　　3. State Assembly and/or Convention
E. Resolutions
F. Voting
G. Quorum
H. Resolution of Controversies
I. Party Registration
J. Rules

XIV:   **Vacancies in Designation, Nomination and Public Office**
A. Compliance with Colorado Law
B. Vacancies in Designation and Nomination
C. Vacancies in Public Office
D. Other Provisions

XV:    **Controversies**
A. State Delegate Contests
B. Other Delegate Contests
C. Other Controversies

XVI:   **Rules for Counties and Districts**
A. Adoption
B. Special Duties of County and District Chairmen
C. Central Committee Membership
D. Selection of Officers
E. Delegate and Bonus Member Requirements
F. Effects of Reapportionment
G. Residency
H. De Facto Single County Districts

XVII:  **Organizations Using the Name Republican**
XVIII: **Conflict and Severability, Interpretation**
XIX:   **Parliamentary Authority**

XX:    **Amendment of Bylaws**
A. Amendment
B. Effect of Inadequate Notice.

**Appendix A and Appendix B**



### BYLAWS OF THE COLORADO REPUBLICAN STATE CENTRAL COMMITTEE

*Amendments Adopted: August 31, 2024 (Effective on January 1, 2025)*

ARTICLE I:  NAME

The name of this organization shall be the Colorado Republican State Central Committee, also known as the Colorado Republican Committee, and hereinafter referred to as CRC.

ARTICLE II:  PURPOSE

Recognizing the principles of the Republican Party as reflected in the State and National Platforms, the primary purposes of this organization shall be to elect duly nominated or designated Republican candidates to office, to promote the principles and achieve the objectives of the Republican Party at national and state levels, and to perform the functions set forth in the election laws of the State of Colorado.

ARTICLE III:  ORGANIZATION AND POLICY

**Section A.  Law.**
The Colorado Republican Committee is an unincorporated nonprofit association and political party committee, governed by and operating under the laws of the State of Colorado.

**Section B.  Powers**.
The Colorado Republican State Central Committee shall have and may exercise all such powers as are expressly or impliedly conferred upon it by these bylaws and by the laws of the State of Colorado, provided the same are not inconsistent with the laws of the State of Colorado, and the laws of the United States.

**Section C.  Republican Candidate Endorsement.**
No candidate for any designation or nomination for partisan public office shall be endorsed, supported, or opposed by the CRC, acting as an entity, or by its state officers or committees, before the Primary Election, unless such candidate is unopposed in the Primary Election, or the candidate has gained access to the primary election ballot but has not participated in the applicable authorized Republican Assembly/Convention. Additionally, the CRC, and the various Republican county and district central committees, have no obligation to support, and may oppose, any candidate who has gained access to the primary election ballot outside of the Assembly/Convention process. Personal contributions of time or money to candidates by CRC officers or CRC committee members shall not be considered to be "endorsements" or "support" or "opposition" in violation of this section unless the officer or committee member uses their official position to encourage other people to support or oppose a pre-primary candidate going through the Convention/Assembly process. After the primary election is over, nothing in this section shall impair the CRC's obligation to support the Republican nominee to the general election ballot.

**Section D.  Authority to Bind.**
No person or entity, including any county or district political party central committee, affiliated, auxiliary, or allied organization, or any separate organization authorized to use the name Republican, has authority to

EXHIBIT "C"
EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 35

bind in any manner the CRC unless prior written authorization from the Chairman or his designee is given.

ARTICLE IV:  MEMBERSHIP

### Section A.  Membership Defined.

Membership of the CRC shall be composed of voting and nonvoting members.  The previous sentence notwithstanding, for purposes of any vote taken pursuant to Section 1-4-702 of the Colorado Revised Statutes, the "total membership" of the CRC shall consist solely of the voting members of the CRC. The voting members shall be:

**a.**  The Chairman, Vice-Chairman and Secretary of the CRC;

**b.**  The chairman, vice-chairman and secretary of each of the Republican county central committees;

**c.**  The elected Republican United States senators and representatives in Congress;

**d.** The elected Republican state officials including governor, lieutenant governor, secretary of state, state treasurer, attorney general, and members of the General Assembly, the state board of regents, and the state board of education;

**e.**  The Republican National Committeeman and National Committeewoman for Colorado; and

**f.**   Two additional ("bonus") members from each county that polled ten thousand votes at the last preceding general election for the Republican candidate for governor of Colorado or president of the United States, and two bonus members for each additional ten thousand votes or major portion thereof so polled in such county.

    **i.**   The bonus members shall be elected by the county central committee at its organizational meeting.

    **ii.**  Bonus member vacancies shall be filled by the county entitled to make the original selection, in accordance with the bylaws of the county central committee.

    **iii.** Counties shall not elect more bonus members than they are entitled to by state law.

**h.**  The elected Republican District Attorneys.

**i.**   The chairman of each congressional district central committee.

**2.**  The nonvoting members shall be:

**a.**  The appointed officers and chairman of the CRC standing and special committees;

**b.**  The chairman and vice-chairman of each of the judicial, senatorial and representative district central committees and the vice-chairman of each of the congressional district central committees;

**c.**  For county parties with multiple chairmen, vice-chairmen, or secretaries: Those officers who have not been designated to carry the vote for that officer position pursuant to Section B of Article VIII and who are not otherwise voting members as previously described in this Section; and

**d.**  The presiding state officer of each separate organization, auxiliary or allied organization recognized by the Executive Committee in accordance with Article XVII of these Bylaws;

### Section B.  Rights of Nonvoting Members.

Nonvoting members shall have all of the privileges, rights and duties of voting members, except that they may vote only when acting as the proxy of any voting member, or when they are also voting members of the CRC.

### Section C.  Residence and Registration.

All members shall reside and be registered as Republicans in the county that they represent as shown by the registration books of the county clerk and recorder or the Colorado secretary of state.

ARTICLE V:  OFFICERS

EXHIBIT "C"

EXHIBIT "1"                                        Declaration of Alexander Haberbush - 36

**Section A.  Officers Defined**.

**1.** The elected officers of the CRC shall be a Chairman, Vice-Chairman and Secretary. They shall assume their duties at the close of the organizational meeting and shall serve for a term of two years or until their successors are elected.

**2.** The appointed officers shall be an Assistant Secretary, a Treasurer, and an Assistant Treasurer, all of whom shall be registered Republicans appointed by the Chairman, and who shall serve at his pleasure; and any other officers deemed necessary by the CRC.

**Section B.  Duties.**

**1.** The Chairman shall:

**a.** Be the chief executive officer of the CRC.

**b.** Issue the call and preside at all meetings of the CRC and the Executive Committee.

**c.** Observe and enforce the bylaws and rules of the CRC. Be custodian of all funds, books, papers, records and proceedings of the CRC and the Republican state assembly and/or convention and report to the Executive Committee when and as the Executive Committee requires.

**d.** Appoint necessary staff members and all standing and special committees.

**e.** Be ex officio a member of all committees except for the Independent Expenditure Committee.

**f.** With the assistance of the Secretary, file under oath with the Colorado secretary of state a full and complete roll of the CRC membership in accordance with law.

**g.** Submit a proposed budget to the Executive Committee by June 15 following his election, and amendments to such budget as may be required, and shall provide or cause to be provided quarterly financial statements to the Executive Committee.  CRC members who are not members of the Executive Committee may request financial statements and information. The Executive Committee shall make a policy to govern the disclosure of financial information to CRC members pursuant to such requests. This policy shall balance financial transparency with the need to keep certain financial information confidential. This policy may require a recipient of financial information to sign a non-disclosure agreement. The Executive Committee shall cause this policy to be published  on the secure SCC section of the CRC website. The Executive Committee shall approve a brief financial report and statement of major liabilities to be presented at each regular CRC meeting.

**h.** Make arrangements for the Republican state assembly and/or convention.

**i.** Preside over the Republican state assembly and/or convention or designate a presiding officer.

**j.** Certify the names of the Republican National Committeeman and National Committeewoman to the Republican National Committee after their election.

**k.** File state central committee bylaws and rules with the Colorado secretary of state in accordance with law.

**l.**  File national delegate procedures and the certification of delegates and alternate delegates elected in accordance with the rules of the Republican National Committee.

**m.** Appoint the Colorado Republican Presidential Electors

**n.** Within 3 months of  taking office, each new Chairman shall submit to the Executive Committee for approval a policy on conflicts of interest, which policy shall include provisions regarding (i.) who is covered; (ii) what conflicts are required to be disclosed; (iii) how such disclosures and conflicts are to be handled; and similar issues.

**o.** Within 3 months of taking office, each new Chairman shall submit to the Executive Committee for approval policies and procedures for assuring integrity of voting and elections at the CRC, which policy and procedures shall include provisions regarding, but not limited to, (i) individuals or officers responsible for implementation and their authority; (ii) credentials, proxies, voting records retention and access; (iii) use of

EXHIBIT "C"

EXHIBIT "1"                                                           Declaration of Alexander Haberbush - 37

technology; (iv) quality assurance, training, schedule, etc.

**2.** The Vice-Chairman shall:

**a.** Exercise the functions of the Chairman during his temporary absence, during his temporary inability to act, or at the request of the Chairman.

**b.** Perform such other duties as the Chairman may prescribe.

**3.** The Secretary shall:

**a.** Be the chief clerical officer of the CRC and record all CRC and Executive Committee proceedings.

**b.** Have ready for the convening of each State Assembly and/or Convention, a temporary roll of delegates entitled to participate. The roll shall be prepared from the credentials of uncontested delegates filed with the Secretary and from the credentials of the contested delegates placed upon the temporary roll by the CRC.

**c.** Serve as secretary at all State Assemblies and/or Conventions.

**d.** Prepare and verify all credentials for delegates and certificates showing designations or nominations made by the State Assembly and/or Convention.

**e.** File with the Colorado secretary of state a list of the names, addresses, and telephone numbers of each of the officers elected, together with a list of the names, addresses, and telephone numbers of the vacancy committee selected, no later than thirty days after the meeting in which the officers were elected.

**f.** Perform such other duties as the Chairman may prescribe.

**4.** The Assistant Secretary shall:

**a.** Assume the duties of the Secretary if he is absent or unable to act.

**b.** Perform such other duties as the Chairman may prescribe.

**5.** The Treasurer shall:

**a.** File or cause to be filed with the appropriate authorities all campaign finance reports and tax filings required by state or federal law.

**b.** Comply with all other applicable state and federal laws.

**c.** Perform such other duties as the Chairman may prescribe.

**6.** The Assistant Treasurer shall:

**a.** Assume the duties of the Treasurer if he is absent or unable to act.

**b.** Perform such other duties as the Chairman may prescribe.

**Section C.  Removal.**

**1.** Any elected officer of the CRC may be removed from office at any time for whatever cause the CRC may deem sufficient, by a vote of three-fifths of the entire membership of the CRC eligible to vote at a meeting called for that purpose.

**2.** Written notice giving the time, place, and purpose of the meeting shall be mailed to each member at least fifteen days before the meeting.

**3.** The action of the CRC shall be final.

**Section D.  Vacancies.**

**1.** A vacancy shall exist in the event of an officer's or National Committeeman or National Committeewoman's ineligibility to hold office, death, resignation, removal, permanent absence, or permanent disability. The Executive Committee shall determine by majority vote whether sufficient evidence exists of permanent absence or permanent disability.

**2.** A vacancy in any elected office shall be filled by the CRC members present or present by proxy and voting at a meeting of the CRC called to fill the vacancy.

**a.** The Vice-Chairman shall mail or otherwise transmit the call for a meeting to all members of the CRC within ten days of the vacancy in the office of the Chairman. This meeting shall be held within thirty days of the call.

**b.** The Chairman shall mail or otherwise transmit the call if a vacancy occurs in the office of the Vice- Chairman, Secretary, National Committeeman or National Committeewoman.

**3.** Vacancies occurring in any appointed office shall be filled in the same manner as the appointment was originally made.

ARTICLE VI:  NOMINATIONS AND ELECTIONS
**Section A. Nominations.**

**1.** Candidates for Chairman, Vice-Chairman and Secretary shall be nominated from the floor at the organizational meeting.

**2.** Nominations for any office shall be made only by members of the CRC in person or by a person acting as a proxy on behalf of a voting member.

**Section B.  Elections.**

**1.** Officers shall be elected by majority vote using a secret ballot unless there is only one nominee for the office.  In that case election shall be by voice vote. If more than two persons are nominated for an office, and on the second ballot no nominee has received the required majority vote, then the nominee receiving the least votes on that ballot and the nominee receiving the least votes on each subsequent ballot shall be ineligible on all subsequent ballots, unless, taking account of nominees who have withdrawn, ineligibility would result in only one nominee on the ballot.

**2.**  The CRC shall retain the ballots, electronic and paper records of votes cast, and teller reports for one year after the date of any election.

ARTICLE VII:  MEETINGS

**Section A.  Organizational Meeting.**
The organizational meeting of the CRC shall be held between the fifteenth day of February and the first day of April of each odd-numbered year, or at the time as otherwise specified by law. Its purpose shall be to elect a Chairman, Vice-Chairman and Secretary, and to conduct other business that may properly come before it.

**Section B.  Preassembly/Pre-convention Meeting.**
A preassembly and/or pre-convention meeting of the CRC shall be held in the even-numbered years on the day preceding the State Assembly and/or Convention. Its purpose shall be to hear any and  all contests of persons claiming seats in the assembly or convention and to conduct any other business placed on the call by the Chairman.

**Section C.  Nomination Method Selection Meeting.**

A primary opt-out meeting of the CRC shall be held in the odd-numbered years between the fifteenth day of August and the first day of October.  Its purpose shall be to hold a vote of the CRC, pursuant to C.R.S.§ 1-4-702(1) on the question of whether to nominate candidates to the next year's general election ballot by participation in a primary election pursuant to C.R.S. § 1-4-502 or by nominating convention pursuant to C.R.S. § 1-4-702(2).  Pursuant to C.R.S. § 1-4-702(1), three-quarters (75%) of the total membership of the CRC must vote in favor of nomination by nominating convention in order for this choice to take effect.  In the event of a vote in favor of nomination by nominating convention, the Chairman shall deliver notice to the Secretary of State of this choice as required by law.

**Section D.  Other Meetings.**

EXHIBIT "C"
EXHIBIT "1"                                                                  Declaration of Alexander Haberbush - 39

Other meetings shall be held:

**1.** At a time and place designated by the CRC; or

**2.** Upon the call of the Chairman or, in the event of his absence or inability to act, upon the call of the Vice-Chairman or, in the event when both Chairman and Vice-Chairman are absent or unable to act, upon the call of the Secretary; or

**3.** Upon the written request of one-quarter of the voting members.  The request shall be made on a form to be developed and authorized by the Secretary. The Secretary shall make this form freely available to voting members upon request (this requirement may be satisfied by posting a blank form on the CRC website).  The form shall require disclosure of sufficient identifying information so that the Secretary can verify that the requesters are voting members and that they do, in fact, desire that the requested meeting be held. The Secretary shall have authority to verify any signature or other indication of assent for any person requesting the meeting.  The form shall require that the purpose(s) of the meeting shall be disclosed. The business of a meeting requested pursuant to this section shall be limited to the purpose(s) stated in the request(s). Meeting requests having different purposes may not be aggregated to reach the number of required members calling for a meeting.  If  requests should be received having different purposes, and each request is assented to by the required number of members, the Chairman and Secretary may schedule a meeting at which all of the purposes may be addressed. Any such meeting request may be challenged by any voting member and such challenge shall be heard and determined as provided by Article XV.  Any such challenge shall be made no later than seven days after a completed meeting request has been received. If the meeting request has not been challenged, the meeting shall be called by the Chairman within ten days after receipt of such request.  If the meeting request has been challenged before the Executive Committee, the period for issuing the call shall be extended while the challenge is pending (including any subsequent appeal from the Executive Committee). If the Chairman fails to call the meeting within the time period provided herein, any voting member may issue the call at the expense of the CRC.  The meeting shall be held within thirty days of the call.

**Section E.  Call.**
The official call shall be in writing and mailed or transmitted by email to the last address of each member on file at the office of the CRC.  The call shall be sent no fewer than fifteen (15) days before the date of the meeting, except that if an officer election will be held, or amendments to the bylaws will be proposed, the call shall be sent no fewer than thirty (30) days before the meeting and shall include a copy of the proposed amendments, as well as a copy of the current Standing Rules for meetings of the CRC and the policy, approved by the Executive Committee in accordance with Article V, Section B, Subsection (p) of these bylaws. The call shall state the time and place of the meeting and the business to be conducted, provided that the business of the meeting shall not be limited to matters stated in the call unless the call is for a special meeting.

**Section F.  Quorum.**
A quorum for any meeting shall be one-third of the voting members; except that once the presence of a quorum has been established, the departure of members shall not be cause for adjournment.

**Section G.  Meeting Requirements.**
Meetings of the CRC shall be held no fewer than three times during any two-year period.  Meetings may be held in person, in an electronic format, or in a hybrid format at the discretion of the Chairman. In the event a meeting is held in an electronic or hybrid format, proxies shall be forbidden at that meeting.

**Section H.  Action by Written Consent.**
Except for the election of officers, or the filling of vacancies specified in Article V, Section D of these Bylaws, any action required to be taken at a special meeting of the CRC may be taken without a meeting if written or electronic consent shall be given by a majority of all the members of the CRC entitled to vote with respect to the subject matter thereof.

EXHIBIT "C"
EXHIBIT "1"                                                      Declaration of Alexander Haberbush - 40

**Section I.  Rules.**

**1.**  For any CRC meeting pursuant to this article, the proposed rules shall be transmitted to the members of the CRC at least seven (7) days before the meeting. If the rules have been so transmitted, and if there have been no intervening changes made by the rules committee, then a request by a CRC member at the meeting to have the proposed rules read to the CRC shall not be in order unless a motion is made, seconded and approved by the affirmative vote of a majority of the CRC voting members present at the meeting.

**2.**  If the rules have not been transmitted to the CRC members at least seven (7) days before a CRC meeting, then a CRC member may request to have the proposed rules read to the CRC.

**3.**  If the proposed rules have been changed by the rules committee within seven (7) days of the meeting, then a CRC member may request at the meeting to have those parts of the proposed rules that are affected by the rules committee's changes read to the CRC. Under these circumstances, a request to have all of the proposed rules read to the CRC shall not be in order unless a motion is made, seconded, and approved by the affirmative vote of a majority of the CRC voting members present at the meeting.

**4.**  The rules of the most recent prior CRC meeting shall be the temporary rules of the next CRC meeting and shall control until new rules are adopted.

ARTICLE VIII:  VOTING AND PROXIES

**Section A.  Methods of Voting.**

Voting, with the exception of the election of officers, shall be by voice, standing, hand vote, or by technology at the discretion of the chairman, unless a roll call vote is requested by seventy-five or more voting members, in the form of a petition authenticated by the signatures of each of the voting members requesting a roll call vote. In this case, the Secretary or his or her designee will call the roll of the individual voting members of the CRC (present in person or by proxy), and each individual member or proxy present shall answer in the affirmative, in the negative, as abstaining, or as present. In calling the roll and recording the votes, the Secretary or his or her designee will distinguish between CRC members voting in person and those voting by proxy. All reports of the teller committee shall be certified by the signatures of two members of the teller committee, or of the majority of members of the committee, whichever is greater.

**Section B.  No Multiple Votes.**

No county shall increase its voting strength by electing multiple officers.  If a county has more than one chairman, vice-chairman, or secretary, the county must inform the Chairman and the Secretary no later than seven days before any CRC meeting which of the county's multiple officers are entitled to vote.  If a county should fail to designate which of its multiple officers shall carry the vote for the officer position, the Secretary shall assign the vote to the first of such multiple officers who is listed as an officer on the CRC's official roster of CRC members ("Red Book").  All remaining multiple officers shall be non-voting members of the State Central Committee under Article IV(A) of these Bylaws.

**Section C.  Proxies.**

Any voting member desiring to vote by proxy shall designate his proxy in writing which shall specify the meeting and be dated, signed, witnessed and submitted to and approved by the Credentials Committee.

**1.**  The proxy shall apply to a single meeting.

**2.**  The individual designated as a proxy shall be a Republican elector, shall reside in the constituency or county which his principal represents, and may vote only if the principal is absent at the time of the vote. For example, a county chairman may be designated as a proxy for any of his county's state bonus members and for any senator or representative in whose district the chairman resides. The previous two sentences notwithstanding, no individual may, by the use of proxies, be entitled to cast, in total, more than five whole votes on any particular question at a given CRC meeting. For example, an individual who is a CRC voting member may be designated as proxy for absent voting members for a total of up to five votes including their

- 8 -
EXHIBIT "1"                                                          Declaration of Alexander Haberbush - 41

own vote. An individual who is not a CRC voting member and who is eligible to be designated as a proxy may be designated as a proxy for absent voting members for a total of up to five votes.

3.   A proxy of a member absent when the meeting is called to order shall be submitted before ½ hour after the call to order.  This requirement may be waived by a majority vote of the CRC.

4. A proxy of a member present at roll call who subsequently leaves the meeting may be submitted at any time during the meeting, but the proxy may be voted on a particular ballot only if submitted before voting commences on that ballot.

5.   Any member of the CRC or a candidate for Chairman, Vice Chairman, or Secretary or their designated representative shall have the right to examine the proxies prior to any particular vote.  Documentation for proxies must be kept by the CRC for 90 days following any vote of the Central Committee.

6. At the discretion of the Credentials Committee, check in procedures may be substituted for the roll call as required by this section.

ARTICLE IX:  EXECUTIVE COMMITTEE

**Section A.  Membership.**
The Executive Committee shall consist of voting and non-voting members as follows:

1. Voting members:

a.  Members by virtue of holding office shall be the Chairman, Vice-Chairman and Secretary of the CRC; the National Committeeman and National Committeewoman; the Republican president or minority leader of the state Senate; and the Republican speaker or minority leader of the state House of Representatives.

b.  Elected members shall be one representative elected from and by each of the congressional district central committees.

c.  Members appointed by the Chairman shall be: two county officers shall be from the county central committees from counties with populations of more than 100,000; two county officers shall be from the county central committees from counties with populations of less than 100,000; and two additional CRC members.  No two members appointed by the Chairman shall be from the same county.

d.  Members elected by the county central committee chairmen: two county officers shall be elected by the county central committee chairman from counties with populations of more than 100,000; and two county officers shall be elected by the county central committee chairman from counties with populations of less than 100,000.  No two members elected by the county central committee chairmen shall be from the same congressional district.

2. Nonvoting members shall be the Treasurer, each congressional district and county central committee chairman who is not an appointed or otherwise a voting member of the Executive Committee, and the presiding state officer of each recognized statewide Republican separate organization, auxiliary or allied organization in Colorado.

**Section B.  Duties.**
The duties of the Executive Committee shall be to:

1. Serve as an advisory committee to the Chairman, and to perform other functions prescribed in these bylaws or by the Chairman.

2. Approve the budget by July 15 of each odd-numbered year and approve the hiring and salary of any officer and any director-level staff member.

3. Decide by majority vote if sufficient evidence exists to declare a vacancy in an office because of permanent absence or permanent disability.

4. Hear and determine party controversies, other than delegate contests, subject to review by the CRC.

- 9 -
EXHIBIT "C"                                     Page 14
EXHIBIT "1"                                               Declaration of Alexander Haberbush - 42

**5.** Determine whether to recognize any affiliated organization or grant permission to any separate organization using the name Republican. The committee shall also hear all controversies concerning such organizations, subject to review by the CRC.  (See Article XV and Article XVII.)

**Section C.  Meetings.**
**1.** Regular meetings of the Executive Committee shall be held no fewer than six times a calendar year and at least once each calendar quarter. A regular meeting location, day and time shall be set at the first meeting of the new term. The Chairman may, at his discretion, call a regular meeting at another location, day, or time. Meetings of the Executive Committee may be held in person, in an electronic format, or in a hybrid format at the discretion of the Chairman.

**2.** Special meetings shall be called by the Chairman, at his discretion, or at the written request of one-third of the voting members of the Executive Committee.

**3.** Except in cases of emergency, at least five days' notice of any Executive Committee meeting shall be given to all voting members.

**4.** Meetings may be open but shall go into executive session at the discretion of the Chairman or by majority vote of the members present and voting. Nonvoting members shall be permitted to attend meetings in executive session.

**5.** The quorum for any meeting shall be one-third of the voting members.

**6.** Votes shall be cast in person, via phone, teleconference, or similar technology, or by proxy given to a member of the CRC and presented to the presiding officer before or at the  meeting at which said proxy is exercised. Otherwise, proxies shall be governed by Art. VIII, § D of these  bylaws.

**7.** Any action required to be taken at a meeting of the Executive Committee may be taken without a meeting if written or electronic consent shall be given by two-thirds of all the members of the Executive Committee entitled to vote with respect to the subject matter thereof.

ARTICLE X:  COMMITTEES

**Section A.  Standing Committees.**
The standing committees shall be audit, bylaws, credentials, independent expenditure, and any others deemed necessary by the Chairman. Standing Committees may begin their work upon appointment and upon announcement to the CRC which may be done electronically.

**1. a.** The Audit Committee shall be composed of three members, none of whom shall be a state party officer, and at least one of whom shall be a certified public accountant.

**b.** The committee shall provide for an annual audit of the books of the CRC by an independent certified public accounting firm, shall review the audit report, and shall report the results of the audit to the next meeting of the Executive Committee. The committee shall report all audits since the last organizational meeting to the CRC at its organizational meeting.

**c.** The Audit Committee shall also audit the books at any other time requested by the Executive Committee. Upon request of the Chairman or a majority of the voting members of the Executive Committee, such audit(s) shall be conducted by an independent certified public accounting firm and reviewed by the Audit Committee.

**d.** Unless otherwise directed by the Executive Committee, the Audit Committee shall establish the scope and level of the audit, which may be in the nature of a formal audit, review, or compilation.

**2.** The Bylaws Committee shall be composed of no fewer than five members. It shall review all proposed amendments and make recommendations to the CRC. It shall also notify the CRC of mandatory changes required by changes in the election laws or in the rules of the Republican National Committee.

**3.** The Credentials Committee shall initially review credentials of CRC members and proxies at each CRC

EXHIBIT "C"
EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 43

meeting. At the request of the Chairman, the Executive Committee, or the CRC it shall investigate any delegate contest and shall report thereon to the CRC or Executive Committee with its recommendations.

**4.** The Independent Expenditure Committee shall be a standing committee and separate segregated fund of the CRC, managed by an independent management committee composed of not fewer than three members and not more than seven members appointed by the Chairman to fixed terms of not less than one year and no more than three years.  Upon the expiration of their terms, the independent management committee of the Independent Expenditure Committee may re-appoint current members of the management committee to not more than two additional terms of the same duration as their initial appointment by the Chairman.  The Chairman may only remove any member of the independent management committee for cause, such as fraud or malfeasance, upon the recommendation of a majority of the remaining members of the independent management committee. If a member of the independent management committee resigns or is removed for cause prior to the end of their term, the Chairman may appoint a replacement to fulfill the remainder of the member's unexpired term.  The management or development of any of the plans, projects, activities, or expenditures of the Independent Expenditure Committee will be conducted independently of any candidate, agent of any candidate, candidate committee, officer, official, staff member or authorized agent of the CRC. The Independent Expenditure Committee shall elect its own officers, may appoint and delegate authority to its own directors and managers, and may adopt its own standing rules to govern its conduct and shall ensure that in every respect the Independent Expenditure Committee strictly operates in accordance with how "contribution" and "independent expenditure" are defined and applied under relevant provisions of Colorado campaign finance law.

**Section B.  Committee Membership, Additional Committees.**
Standing or special committees may be comprised of members other than the members of the CRC. Additional standing or special committees shall be appointed by the Chairman at the request of the Executive Committee or the CRC.

**Section C.  Quorum.**
The quorum for any standing or special committee shall consist of (1) a majority of those members appointed to the committee or (2) one-third of those members appointed provided that written notice has been mailed or transmitted by email to all members no fewer than seven days before the meeting.

**Section D.  Meetings of Standing and Special Committees.**
Meetings of Standing or Special Committees may be held in person, in an electronic format, or in a hybrid format at the discretion of the Committee Chairman. Any action required to be taken at a meeting of a committee may be taken without a meeting if written or electronic consent to such action shall be given by two-thirds of all the members of the committee entitled to vote with respect to the subject matter thereof.

ARTICLE XI:  REPRESENTATIVES ON REPUBLICAN NATIONAL COMMITTEE

Colorado representatives on the Republican National Committee shall be the National Committeeman and National Committeewoman, who shall be nominated and elected at the State Convention; and the Chairman of the CRC.

ARTICLE XII:  PRECINCT CAUCUSES

**Section A.  Date and Location.**
Precinct caucuses shall be held in even-numbered years at 7:00 p.m. on the date provided for by law or the rules of the Republican National Committee at a private place in each precinct or at a public place in or proximate to each precinct as determined by the county central committee or county executive committee

and posted as required by law.

### Section B.  Voting Members

Voting members at each precinct caucus shall have been:

**1.** A resident of the precinct for twenty-two days; and

**2.** Registered to vote no later than twenty-two days before the precinct caucus and affiliated with the Republican Party for at least twenty-two days as shown in the statewide voter registration database; except that any registered Republican elector who has attained the age of eighteen years or who has become a naturalized citizen during the twenty-two days immediately preceding the precinct caucus may vote at any caucus even though the elector has been affiliated with the Republican Party for less than twenty-two days.  A pre-registrant who is affiliated with the Republican Party and is seventeen years of age on the date of the precinct caucus, and who will be eighteen years of age on the date of the next general election may vote at the caucus; or

**3.** Such other registered Republican electors as may be present and otherwise entitled to participate in the precinct caucus as may be required by law.

**4.** Voting by proxy shall not be permitted at any Republican precinct caucus.


### Section C.  Procedure.

The eligible voting members at each precinct caucus present and voting shall:

**1.** Elect by plurality vote a precinct caucus chairman and secretary to serve as officers of the precinct caucus.

**2.** Elect by plurality vote the delegates and alternate delegates to the county assembly and/or convention and for such other higher assemblies and/or conventions as determined by the county central committee or county executive committee and apportioned or allocated to the precinct. Each eligible voting member at the precinct caucus shall be entitled to vote for the total number of delegates and alternates to be elected from the precinct. In the event of a tie for the last available delegate or alternate delegate, the last available place shall be determined by lot. Cumulative voting or unit rule shall not be allowed or adhered to in the election of delegates or alternate delegates.

**3.** Elect by plurality vote two precinct committee people.

**a.** The two people receiving the highest number of votes shall be elected as the precinct committee people.

**b.** If two or more candidates for precinct committeeperson receive an equal and the second highest number of votes, or if three or more candidates receive an equal and the highest number of votes, the election shall be determined by lot by such candidates.

**c.** Each precinct committee person shall hold such position for a term of two years after the date of his election, and each shall serve until his successor is duly elected or appointed.

**d.** The names of the precinct committee people and delegates and alternate delegates elected shall be certified to the county assembly and/or convention of the political party by the officers of the precinct caucus.

**4. a.** For precinct caucuses occurring in the year in which a national convention is to be held and a presidential candidate is to be nominated, or occurring in the year in which any candidate for statewide office is to be nominated, a non-binding preference poll shall be conducted for such offices and candidates as the CRC Executive Committee may direct as part of the business of each precinct caucus meeting, except that the CRC Executive Committee may direct that no preference poll be conducted.  The preference poll shall be conducted, and results reported in a manner as shall be provided by the Chairman or the Executive Committee. Only eligible precinct caucus participants may participate in any preference poll.

EXHIBIT "C"

EXHIBIT "1"                                                                              Declaration of Alexander Haberbush - 45

**b.** No preference poll of any kind shall be conducted if it dictates or requires the binding of delegates chosen to any higher assembly or convention. The participants at each precinct caucus, or at any caucus, assembly, or convention of any county or district, alone shall determine if the results of any preference poll are to be a factor in the selection of individual delegates or alternates to any higher assembly or convention, and no candidate for delegate or alternate for any higher assembly or convention shall be compelled or required to identify the candidate he or she is pledged to support, but may do so at his or her option.

ARTICLE XIII:  ASSEMBLIES AND CONVENTIONS

### Section A. Selection of National Convention Delegates.

**1.** Balloting at the Republican National Convention.

**a.**  On the first nominating ballot for President, or a second nominating ballot if no presidential candidate receives the minimum number of votes to become the nominee, in accordance with State statute all members of the State's delegation shall be bound to vote for the Presidential candidate according to the following allocation and the CRC Chairman acting as chair of the delegation, or his designee, shall announce the vote of the State's delegation accordingly and the vote shall be recorded accordingly.

**Winner Take All Allocation.**  Under circumstances when Rules of the Republican National Committee permit the State's vote to be allocated all to one candidate ("winner take-all"), such as when the Primary takes place after a specified date or if the candidate receives more than a certain threshold percentage of the vote, all of the State's National Delegate votes may be allocated to the candidate receiving the most votes in the Primary, provided the candidate receives the minimum threshold.  The minimum threshold shall be the lowest permitted by RNC Rule, but in any event no less than 50%.

**Proportional Allocation.**  Under circumstances when winner-take-all is not permitted by such Rules, the State delegation's votes shall be allocated on a proportional basis as follows.  Candidates who received less than a specified threshold percentage of the total Presidential Primary votes shall be allocated no delegate votes. The threshold shall be the highest permitted by RNC Rule, but in any event no higher than 20%.  A committee composed of the CRC Chairman, Vice-Chairman and Secretary shall divide the total number of delegate votes allocated to the State into integral numbers of delegate votes for each candidate meeting the threshold so that such allocation on the whole best represents the proportional distribution of votes among the candidates achieving the threshold.  The following examples assume the State's delegation has 35 votes:

*Example One*:  Two candidates each achieve the threshold. Of their combined votes, Candidate A receives 60% and Candidate B 40%. The computation would be: 35 X 60% = 21; 35 X 40% = 14. The Committee would allocate 21 votes to Candidate A and 14 votes to Candidate B.

*Example Two*: Three candidates achieve the threshold. Of the votes cast for those three candidates, Candidate A receives 35%, Candidate B 33% and Candidate C 32%. The computation would be: 35 X 35% = 12.25%; 35 X 33% = 11.55%; 35 X 32% = 11.2%. The Committee would allocate 12 votes to Candidate A; 12 to B, and 11 to C.

**Release of Delegates.**  If a Presidential candidate releases his delegates through public declaration or written notification, the candidate's name is not placed in nomination, or the candidate does not otherwise qualify for nomination under the rules of the Republican National Convention, CRC Chairman shall release a number of individual National Delegates equal to the number allocated to that candidate. Such National Delegates released may cast their ballots as each may choose, and the CRC Chairman shall announce the delegation's vote accordingly. The Chairman shall release the National Delegates by category in the following order, and within category as the Chairman directs: First,

- 13 -
EXHIBIT "C"                                   Page 18
EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 46

Delegates pledged to such candidate; second, the National Committeeman and National Committee Woman; third, others.

**b.** On any succeeding ballot for President (after the second ballot) and on all ballots for other purposes the individual delegates are released to cast their ballots as each may choose.

**2.** General rules and procedures.

**a.** On or before the first day of October of the year before the year in which a national convention is to be held the CRC shall:

**i.** Adopt rules, procedures, policies, and instructive material governing the selection of delegates and alternate delegates to the national convention which are consistent with these bylaws and the rules of the Republican National Committee.

**ii.** Certify and file with the Republican National Committees true copies of the above and of all pertinent state statutes. Changes to the filed material shall be filed in accordance with the rules of the Republican National Committee.

**b.** Delegates to the county assembly shall serve also as delegates to the corresponding county convention. Delegates to the congressional assembly shall serve also as delegates to the corresponding congressional convention. Delegates to the State Assembly shall serve also as delegates to the State Convention.

**c.** Delegates to the congressional district conventions shall be apportioned by the CRC among counties of the congressional district in accordance with the same allocation formula adopted for the State Assembly and/or Convention.

**d.** The congressional district chairman, under the authority of the CRC Chairman, shall issue the call to the congressional assembly and/or convention not later than the first day of February of each presidential election year. The congressional conventions shall be held prior to, but no earlier than 14 days before, the state convention.

**e.** Notice of any precinct caucus must comply with state law.

**3.** State and congressional district convention procedures:

**a.** All candidates for National Convention Delegate, whether a candidate at any congressional convention or State Convention or both, must file a notice of intent to run for National Delegate with the CRC Chairman in writing. Such notice of intent must be received by the CRC Chairman or his designee by mail, facsimile, electronic transmission or hand delivery on a form and in such manner as may be designated by the CRC Chairman, or in such other manner as may be designated by the CRC Chairman, no later than thirteen (13) days prior to the convention in which the candidate for National Delegate desires to stand for election, and shall specify the presidential candidate the candidate for National Delegate is pledged to support. To be eligible to be selected as a National Convention Delegate or Alternate Delegate, whether as candidate at the congressional or State Convention, the candidate must have been eligible to participate in the precinct caucus held that same year, must have been continuously registered as a Republican elector in the state or district from the date of the precinct caucus until the date of the convention, must have been a delegate, alternate delegate, or qualified voting member of the county assembly held that same year, and must be a delegate or alternate delegate to the convention from which such candidate is to be selected.

**b.** The campaign of a Presidential candidate receiving at least 50% of the votes in the Presidential Primary may officially nominate a slate of candidates for National Delegate, the number so nominated not to exceed 60% of the number of Delegates to be elected at the state convention and congressional assemblies.  If so nominated, the state convention and congressional assemblies shall by majority vote elect or decline to elect the slate.  Except for National Delegates so elected, National Convention Delegates and Alternates shall be elected on a single ballot. Each state convention and congressional assembly delegate shall be entitled to vote for the total number of national delegates and alternates to be elected.

- 14 -

Those candidates receiving the highest number of votes shall be assigned to the national delegate and alternate positions according to the total number of votes each received. The campaign if a presidential candidate receiving at least 20% the votes in the presidential primary may officially nominate a slate of candidates for national delegate, the number so nominated to match their proportional allocation based on the presidential primary results, to be elected at the state convention and congressional assemblies. If so nominated, the state convention and congressional assemblies elect of decline to elect each of the individual candidates nominated to the slate .

**c.** Candidates for National Convention Delegate and Alternate shall identify the presidential candidate they are pledged to support. The Chair shall inform Delegates the presidential candidate each candidate for National Delegate is pledged to support.

**d.** Alternate Delegates will be designated as congressional district or State Alternate Delegates according to the convention at which each is elected. In the event a delegate or alternate is unable to serve, such delegate or alternate will be replaced by the next ranked alternate elected at the convention which elected the delegate or alternate being replaced.

**e.** In the event a delegate or alternate is elected by both the State Convention and a congressional district convention, the delegate or alternate shall select the convention for which he wishes to serve by notifying the CRC Chairman, in writing, within ten days of the close of the State Convention. In the event such selection is not made within the time required, the CRC Chairman may designate the convention from which the delegate or alternate will serve.

**f.** Congressional district chairmen shall certify the elected National Delegates and Alternates to the CRC Chairman at the close of their convention. The CRC Chairman shall file the certifications for all National Convention Delegates and Alternates with the Republican National Committee.

**g.** Ties of consequence shall be broken by lot:

**i.** By the CRC Chairman in the case of delegate allocation to presidential candidates and

**ii.** By the appropriate convention chairman in determining the election or rank order of national convention delegates and alternates.

**4.** The CRC Chairman and the Colorado Republican National Committeeman and Committeewoman shall be delegates to the National Convention.

**5.** If any provision of this section should be inconsistent with the rules of the Republican National Committee, the National Committee's rules shall prevail to the extent of the conflict.

## Section B.  County Assemblies.

County assemblies and/or conventions shall be held after the precinct caucuses at the time and place determined by the county central committee and within the time period required by law.

**1.** Each county central committee shall consider the number of delegates to be elected by the county assembly and/or convention to state and district assemblies and/or conventions, in fixing the number of delegates to participate in the county assembly and/or convention.

**2.** The call for the county assembly and/or convention shall include (in addition to the time, place and purpose) a statement of the number of delegates to be elected to the state and multi-county district assemblies and conventions. At the request of the chairman of any district lying wholly within such county, the call for the county assembly and/or convention shall include the call for the assembly of such district.

**3.** The county assembly and/or convention shall elect from among its members all delegates to every state or congressional assembly or convention, to any multi-county senatorial or representative assembly, and to every judicial assembly.  However, nothing shall prevent any county from electing its delegates from election districts, and any delegate elected by his district shall be deemed properly elected by his county assembly or convention unless such county assembly or convention votes to overturn or negate such

EXHIBIT "C"
EXHIBIT "1"                                                          Declaration of Alexander Haberbush - 48

district election. County assemblies shall elect delegates and alternates, shall establish the ordering of alternate delegates to higher assemblies, and shall provide for the promotion of alternates, to be provided to the CRC and to the chairman of all higher district central committees in writing within ten (10) days of the county assembly. If not submitted in a timely matter in accordance with these bylaws, the delegation shall not be seated, unless appealed to the Credentials Committee, who may reinstate the delegation. The county party chairman or his designee shall oversee the promotion of and seating of alternates in the place of any absent or ineligible delegate in accordance with the ordering as established by the county assembly.

    **a.** "Members" of a county assembly and/or convention shall mean all delegates and alternates to the county assembly and/or convention elected at the precinct caucuses (whether or not present and voting at the county assembly and/or convention) provided that an alternate may vote only when a delegate is absent.

    **b.** A delegate who moves from his precinct shall be ineligible to serve as a delegate from that precinct.

    **4.** The county assembly shall ratify the list of committee people. The presiding officer and secretary of the county assembly shall file a certified list of the names and addresses, by precinct, of those persons elected as precinct committee people with the county clerk and recorder and forward a copy to the CRC within ten days after the date of the county assembly.

### Section C.  Single County District Assemblies.

    **1.** Single county senatorial, representative, and judicial district assemblies shall be held on the same date and at the same location as the county assembly.

    **2.** Apportionment of delegates.

    **a.** In senatorial and representative districts lying wholly within one county, the delegates and alternate delegates elected at the precinct caucuses shall serve also as delegates and alternate delegates to their respective senatorial and representative district assemblies.

    **b.** In judicial districts comprised of a single county the delegates and alternate delegates elected at the precinct caucuses shall serve also as delegates and alternate delegates to their judicial assembly.

    **2.** The call for the district assembly shall include time, place, and purpose and should be issued in conjunction with the call to county assembly.  See Section B.2. of this article.

    **3.** Failure of a single county district to properly issue a call for the district nominating assembly held under this Section shall not invalidate the assembly provided that the assembly is announced during the county assembly and before the district assembly meets.

### Section D.  Other Assemblies.

All other assemblies shall be held within the period as provided by state law, but in any event shall be held prior to the State Assembly and/or Convention. In no event shall any multi-county assembly or convention be held prior to any county assembly that is found in whole or in part within the district.

    **1.** Apportionment of delegates.

    **a.** In multi-county congressional, judicial, senatorial and representative districts, the number of delegates to all assemblies shall be allocated in accordance with state law.

    **b.** The number of delegates to the State Assembly and/or Convention shall be uniform so that each county shall be entitled to at least two delegates-at-large plus additional delegates based upon the vote cast for the Republican candidate for governor or president at the last general election.

    **c.** Each county also shall be entitled to elect alternates equal in number to its delegates.

    **d.** All delegates to district assemblies and/or conventions shall reside within the district, and a delegate who moves from the district shall become ineligible to serve as a delegate to such district assembly and/or convention. A delegate who moves from his county shall become ineligible to serve as a

EXHIBIT "C"
EXHIBIT "1"                                                                                 Declaration of Alexander Haberbush - 49

delegate from that county.

**2.** The call for the assembly and/or convention of each multi-county district shall be issued to the county chairmen of the counties of which the district is comprised in whole or in part by the chairman of the district central committee no later than the first day of February of each even-numbered year.

**a.** The call shall notify the chairman of each county in such district of the time, place and purpose of the multi-county district assembly and/or convention and the delegate apportionment plan adopted by the officers of the district central committee or as otherwise provided by law.

**b.** If any district chairman fails to issue the call on time, the CRC Chairman shall allocate, in conformity with these bylaws, delegates within said district, and shall issue the call to all county chairmen within the district no later than ten (10) days prior to the convening of such assembly.

**3.** The call for the State Assembly and/or Convention shall be issued by the CRC Chairman no later than the fifteenth day of January of each even-numbered year. The call shall notify the county chairmen of the time, place and purpose of the Assembly and/or Convention and the number of delegates apportioned or allocated to each county.

### Section E.  Resolutions.

Before any resolution may be considered by any State Assembly or Convention, it shall be referred to a resolutions committee of such body. All resolutions must be proposed by a county party, a county party chairman, or an eligible delegate or alternate delegate to the assembly or convention at which the resolution is to be considered, and must be filed with the CRC Chairman no fewer than thirty (30) days before the State Assembly or Convention convenes, unless the assembly or convention or resolutions committee modifies or extends the time for filing such resolutions or amendments thereto.

### Section F.  Voting.

**1.** No proxies shall be allowed or recognized in any assembly or convention. Any vacancy shall be filled by an alternate present, selected from the list of alternates by numerical order, beginning with the first alternate.

**2.** What is commonly known as the "unit rule," by which the entire vote of a delegation is cast according to the majority vote within that delegation, shall not be enforced nor adhered to. Cumulative voting shall not be permitted. What is commonly known as fractional or proportional voting shall not be permitted.

**3.** Ten percent of the county's delegation to any State, congressional, judicial, senatorial or representative district assembly or any State or congressional district convention shall have the right to demand and have entered a roll call of the county's delegation upon any disputed vote by the county's delegation.

### Section G.  Quorum.

The quorum at any assembly and/or convention shall consist of those delegates present.

### Section H.  Resolution of Controversies.

From the convening of the State Assembly and/or Convention until its final adjournment, the State Assembly or Convention shall have the power to determine controversies about both the regularity of the party organization within any district or county and the right to use the party name. It may also provide rules that shall govern the CRC in determining such controversies.

### Section I.  Party Registration.

Affiliation as a Republican shall be as shown on the registration books of the county clerk and recorder. No candidate shall be designated to the primary election ballot by any assembly or nominated to the general election ballot by any convention unless he shall have been continuously affiliated as a Republican for at least thirty (30) days preceding the date of the assembly or convention making such

EXHIBIT "C"

EXHIBIT "1"                                                            Declaration of Alexander Haberbush - 50

designation or nomination, and this provision shall control notwithstanding any other provision in any county or district bylaws or rules.

### Section J.  Rules.
1. The rules of the last State Assembly and/or Convention shall be the temporary rules of the next State Assembly and/or Convention and its committees and shall control until new rules are adopted.
2. At the state assembly and/or convention, and at any county or district assembly and/or convention, any eligible person who has been properly nominated and seconded may be considered as a candidate for designation to the primary election ballot with no requirement of prior notice to any state, county, or district officer. However, the CRC may by rule provide that any candidate who has not given at least seven (7) days' advance written notice to the State Chairman of his or her intent to seek designation to the primary election ballot at the State Assembly and/or Convention might not have his or her name printed in advance on the assembly ballot and may appear at the end in the speaking order. Any county or district party may by rule provide that any candidate who has not given at least seven (7) days' advance written notice to the county or district chairman of his or her intent to seek designation to the primary election ballot at the county or district assembly and/or convention might not have his or her name printed in advance on the assembly ballot and may appear at the end in the speaking order.

### Section K.  Badge Fees.
The State Chair, County Chair or Chair of any District, may set a fee to be paid by Delegates and others attending the respective Assembly.  No individual shall be prevented from serving as a Delegate to any Assembly because such individual is unable or unwilling to pay such fee. Chairs shall disclose the estimated percentages of the Assembly fee revenue allocated to pay for assembly/caucus expenses and to general fund.

ARTICLE XIV: VACANCIES IN DESIGNATION, NOMINATION AND PUBLIC OFFICE

### Section A.  Compliance with Colorado Law.
1. All vacancy committees shall refer to and comply with Colorado law in filling any vacancy.

2. Should Colorado law require any act for the filling of a vacancy be done within a shorter time frame than provided by these or any county or district central committee bylaws, such time frames may be accelerated to enable the vacancy to be filled within the time frame set forth by Colorado law.

### Section B.  Vacancies in Designation and Nomination.
1. Designation of candidates for nomination on the primary election ballot shall be made by the appropriate designating assembly.  In the event of a CRC vote to nominate candidates to the general election ballot by nominating convention pursuant to C.R.S. § 1-4-702 and Article VII, Section C of these Bylaws, nomination of candidates to the general election ballot shall be made by the appropriate nominating convention by a vote in excess of 50% of the delegates present and voting at such nominating convention.  Such designating assembly or nominating convention shall also select a vacancy committee, which may fill any vacancy occurring in the designations within such period as provided by state law before the primary election, and/or any vacancy occurring in the nomination as provided by law before a general or special election.

2. If no vacancy committee has been selected by the appropriate designating assembly or nominating convention and the automatic selection thereof has not been provided for in the county or district central committee bylaws, the vacancy committee shall be selected or constituted as follows:
   a. In counties, the vacancy committee shall consist of the chairman, vice-chairman and secretary of

EXHIBIT "C"

EXHIBIT "1"                                        Declaration of Alexander Haberbush - 51

the county central committee.

**b.** In county commissioner districts, the county commissioner district vacancy committee shall consist of the chairman, vice-chairman and secretary of the county commissioner district central committee. Where there is no separate county commissioner district central committee, vacancies in the designation or nomination of candidates for county commissioner shall be filled by the chairman, vice- chairman and secretary of the county central committee.

**c.** In state senatorial, representative, judicial and congressional districts, the vacancy

committee shall consist of the district central committee.

**d.** The Chairman of the CRC shall appoint the voting members of the CRC Executive Committee as the state vacancy committee, which shall fill any vacancy occurring in designation and/or nomination at the state level, unless and until a vacancy committee is selected by the State Assembly or Convention. The State Assembly or Convention may select a vacancy committee of not less than seven nor more than twenty- four members, at least one of whom shall be from each congressional district. In this event, such committee shall supersede the vacancy committee appointed by the Chairman.

## Section C.  Vacancies in Public Office.

**1.**  Vacancy committees shall be selected by the various congressional, county, state senatorial, representative and judicial district central committees and by the CRC. If any central committee fails to select a vacancy committee as provided in Colorado Election Law, then a vacancy committee shall be selected or constituted according to the provisions of the appropriate subsections of Section B.2. of  this Article.

**2.**  Vacancy committees shall be selected by the various county or county commissioner district central committees, as appropriate, for the specific and only purpose of filling vacancies in the office of county commissioner. If any central committee fails to select a vacancy committee, then a vacancy committee shall be constituted according to the provisions of the appropriate subsections of Colorado Election Law.

**3.**  These vacancy committees shall act with respect to vacancies in public office as follows:

**a.**  When a vacancy occurs in the General Assembly, such vacancy shall be filled by the appropriate district vacancy committee in accordance with law. In state senatorial or representative districts comprised of a part of one or more counties, the chairman of the several county central committees who do not reside in the district are designated as non-voting members of the district vacancy committee with all privileges, rights and duties of voting members except that of voting.

**b.**  When a vacancy occurs in the office of United States senator or any state office, the state vacancy committee shall make recommendations promptly to the governor concerning an appointment to fill such vacancy.

**c.**  When a vacancy occurs in the office of any district attorney, the vacancy committee of the judicial district shall make recommendations promptly to the governor concerning an appointment to fill such vacancy.

**d.**  When a vacancy occurs in the office of county commissioner, such vacancy shall be filled by the county commissioner vacancy committee in accordance with law.

**e.**  When a vacancy occurs in any other county office, the county vacancy committee shall make recommendations promptly to the board of county commissioners concerning an appointment to fill such vacancy.

**f.**  Should a vacancy occur in the office of regent of the University of Colorado, other than a vacancy in a seat filled by a regent elected from the state at large, the congressional district central committee vacancy committee for the congressional district represented by the vacating regent, or the vacancy committee designated in B.2.c. of the Article, shall make recommendations promptly to the governor concerning an appointment to fill such vacancy.

- 19 -

**g.** Should a vacancy occur in the office of member of the state board of education, other than a vacancy in a seat filled by a member elected from the state at large, such vacancy shall be filled by the congressional district central committee vacancy committee for the congressional district represented   by the vacating board member or regent, or the vacancy committee designated in B.2.c.of this Article. Should a vacancy occur in the office of a member of the state board of education elected from the state at large, the vacancy shall be filled in accordance with Colorado Election Law.

**4.** Should a vacancy occur in the office of representative in Congress:

**a.** A committee composed of the officers of the congressional district concerned and the county chairmen of all counties entitled to bonus member representation on the central committee of the congressional district concerned are hereby designated to convene a convention for the purpose of

nominating a candidate to fill a vacancy in the unexpired term of a representative in congress and shall provide the procedure for the nomination of such candidate.

**b.** Upon receipt of the notice of election, the CRC Chairman shall issue the call for the convention, stating the number of delegates from each county and the method of their selection.

**c.** Should the convention fail to select a vacancy committee then the convening committee of this section is so designated.

## Section D.  Other Provisions.

**1.** District vacancy committees and county commissioner vacancy committees shall have a minimum of five voting members.

**2.** Promptly after selection, the names and addresses of members of all vacancy committees shall be filed with both the CRC Chairman and the secretary of state, by the chairman of the county or district central committee for which such vacancy committee is to act.

**3.** In the event of a recall election for a partisan office, the CRC Vacancy committee in the case of a state-wide office, or the Vacancy Committee of the respective district in a district office may name a preferred candidate to replace the office holder subject to being recalled.

ARTICLE XV:  CONTROVERSIES

## Section A.  State Delegate Contests.

**1.** The CRC Chairman shall appoint a Credentials Committee from among the members of the State Assembly and/or Convention. It shall hear all contests of delegate elections and make recommendations to the CRC.

**2.** The CRC shall meet the day before the State Assembly and/or Convention to hear any and all contests of persons claiming seats in said Assembly and/or Convention and the recommendations of the Credentials Committee relating thereto. It shall authorize the temporary roll of delegates to be prepared by the Secretary.

**3.** The names of all delegates elected and uncontested shall be placed on the temporary roll. All delegates who have been contested and whose names have been placed upon the temporary roll by a majority of the CRC present and voting shall have the right to vote on all questions until otherwise determined by the Assembly and/or Convention, except upon contests involving their own credentials.

**4.** Every person intending to contest the seat of any delegate shall give written notice of such intention, specifying the grounds of the contest, to the Secretary of the CRC and to the delegate whose seat he intends to contest. He shall give such notice at least seventy-two hours before the Assembly and/or Convention convenes.

**5.** All persons claiming seats as delegates in any Assembly and/or Convention by right of contest shall be held to have waived their right to seats in the Assembly and/or Convention unless they appear and prosecute their contest before the CRC as provided above.

EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 53

**Section B.  Other Delegate Contests.**
Contests of delegate elections, at assemblies and/or convention other than the State Assembly and/or Convention, shall be heard and determined initially by a credentials committee to be appointed by the county or district chairman from among the members of the assembly and/or convention. Final determination of all such contests may be made by the assembly and/or convention itself.

**Section C.  Other Controversies.**

If any controversy arises at the county, representative, senatorial, judicial, or congressional district level which cannot be resolved at that level, or at a CRC meeting, such controversy shall be determined by the CRC or the Executive Committee, in accordance with rules and procedures provided by the CRC or by the State Assembly and/or Convention, and Section D of Article XV. Additionally, as referenced in CRS 1-3-106, all questions, or disputes regarding the "regularity of the organization," within any county, representative, senatorial, judicial, or congressional district level must first be addressed at that level and follow the procedures of Section D of Article XV. If the complaint is not heard within 2 weeks, then the complainant has the right to submit the complaint to the state executive committee. If the controversy or decision concerning the "regularity of the organization" is determined by the Executive Committee, any party to the controversy or decision concerning the "regularity of the organization" may appeal the decision to the CRC. The determination of the CRC shall be final.

**Section D.  Procedure.**
A controversy must be submitted to the CRC Chairman within two weeks of the meeting in which the controversy arose, or if the controversy did not occur at a meeting, within two weeks of the reasonably determined state of the controversy.  If no controversy is submitted by the two-week period deadline,  any controversy or points of order regarding the controversy expire.  In the event a controversy is appealed to the Executive Committee or CRC, the State Chairman may call a Special Meeting. The call may be made electronically and shall be sent no less than 3 days before the Special Meeting. The Special Meeting may be held electronically.  Each party to the controversy may send materials to the Executive Committee or CRC members.  The quorum for this Special Meeting shall be the members present. Proxies shall not be allowed. The only agenda item permitted at this Special Meeting shall be the determination of the controversy.

ARTICLE XVI: BYLAWS FOR COUNTIES AND DISTRICTS

**Section A.  Adoption.**
Counties and districts may adopt their own bylaws, but they shall not be in conflict with the CRC  bylaws. A county or district central committee must file true and complete copy of such rules or bylaws then in effect and must file a copy of any new rules or bylaws or amendments thereto within thirty (30) days of their adoption. If any county or district central committee fails to file a copy of such rules or bylaws or amendments with the CRC in accordance with this section, then any bylaws or amendments filed thereafter shall only become effective thirty (30) days from the date of such filing. If no bylaws have been filed, then the bylaws set forth in Appendix B of the CRC bylaws shall control the conduct of the county or district central committee, notwithstanding any other bylaws or rules adopted.

**Section B.  Special Duties of County and District Chairmen.**
   **1.** Each county and district chairman shall instruct the secretary to provide the Colorado Secretary of State and the CRC Chairman with a list of officers elected in his county or district and the membership of the vacancy committee selected (with their post office addresses, zip codes, and telephone numbers) immediately following the organizational meeting of the county or district central committee.

   **2.** Each county chairman shall provide a list of all candidates in his county (with their post office addresses, zip codes, and telephone numbers) to the Chairman of the CRC following the designation to the primary election ballot or nomination to the general election ballot of those candidates in their

EXHIBIT "C"                                Page 26

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 54

county or district designating assemblies or nominating conventions.

**3.** Each county chairman shall provide a similar written list authenticating all delegates and alternates elected by his county to any state, congressional, judicial, senatorial, or representative assembly or to any state or congressional convention, specifying the numerical order in which alternates were elected. The county chairman shall mail such list to the CRC Chairman and to the appropriate district chairman immediately after the county assembly and/or convention.

**4.** Each county chairman shall provide to the CRC Chairman a copy of the list of committee persons ratified at county assembly within ten days of the assembly.

**5.** Each county chairman shall provide the CRC with copies of all calls or meeting notices for their respective County Central Committee.

### Section C.  Central Committee Membership.

Membership on central committees shall be as follows:

**1.** The chairman, vice-chairman and secretary of the district central committee shall, if not otherwise voting members, become voting members of their district central committee during their term of office.

County central committees also shall be composed of all resident Republican (a) precinct committeepersons, (b) district captains and co-captains, (c) county chairperson, vice-chairperson, and secretary, (d) elected county public officials, (e) United States and state senators and representatives, (f) elected state public officials, and (g) the district attorney. County central committee voting membership may be expanded to include state and national officers, state, congressional, and judicial central committee bonus members, and the chairman, vice-chairman, and secretary of district central committees who reside in the county.

**2.** Congressional central committees also shall be composed of the Republican (a) resident U.S. Representative, (b) resident congressional district state board of education and regents members, (c) resident state senators and representatives, (d) the county chairmen and vice-chairmen of each county wholly or partially within the district, and (e) resident bonus members as provided by Colorado Election law. Congressional district central committee bylaws may provide that the secretaries of the county central committee wholly or partially within the district are voting members.

**3.** Judicial district central committees also shall be composed of the resident Republican (a) district attorney, (b) county chairmen, vice-chairmen, and secretaries, and (c) bonus members as provided by Colorado Election Law. If the judicial district consists of only one county or portion thereof, all Republican precinct committeepersons also shall serve on the district central committee.

**4.** State senatorial and representative district central committees also shall be composed of the Republican (a) resident state senators and representatives, and (b) resident county chairmen, vice-chairmen, and secretaries, and (c) resident designees of each non-resident county chairman, vice-chairman and secretary who resides within a county that is partially within the district. If the district consists of only one county or portion thereof, all Republican precinct committeepersons also shall serve on the district central committee.

### Section D.  Selection of Officers.

**1.** District officers are elected by, but not necessarily from, the district central committee.

**2.** All district officers shall reside and be registered as Republicans in the district which they represent.

**3.** County and district officers shall be elected at the organizational meetings. If a vacancy exists in a county or district officer position for more than 30 days and no meeting is pending pursuant to a call or notice to the appropriate committee to fill such vacancy, the CRC Chairman may issue such a call or notice and if the appropriate committee does not provide a chairman thereof, he may personally or by nominee preside at the meeting so noticed.  Those officers elected at such meetings shall serve until the next

EXHIBIT "C"
EXHIBIT "1"                                                        Declaration of Alexander Haberbush - 55

regular organizational meeting. In the event the vacancy is not filled, then the CRC Chairman may fill the vacancy by appointment.

**4.** Failure of a single county state representative, state senatorial or judicial district to properly issue a call for the regular organizational meeting shall not invalidate a district organizational meeting held on the same date and proximate to the county organizational meeting in both time and location provided that the meeting is announced during the county organizational meeting and before the district organizational meeting.

### Section E.  Delegate and Bonus Member Requirements.

All delegates and bonus members to any county or district assembly, convention, or central committee shall, at the time of their election and throughout their term of office, be registered as Republicans and shall reside within the county or district, as the case may be, which each such delegate or bonus member represents. A delegate or bonus member who moves from the county or district shall thereafter become ineligible to serve as a delegate to such county or district assembly and/or convention or central committee as the case may be.

### Section F.  Effects of Reapportionment.

Following the filing with the Secretary of State of the final reapportionment plan for state senatorial and state representative districts and following the adoption of a final redistricting plan for congressional districts the party central committees for each such new state senatorial, state representative, and congressional district shall be called to meet for the purpose of electing a chairman, vice-chairman, and secretary, selecting a vacancy committee and adopting bylaws. Calls shall be issued within twenty days following the filing or adoption of the final reapportionment or redistricting plan. Calls shall give at least fifteen days' notice of the meeting.  The call shall be issued by the following party officers:

**a.**  For single county districts - by the current presiding officer of the county party of the county in which the district is situated, or by his designee.

**b.** For multi-county districts - by the current presiding officer of the county party  of the county with the largest portion of the district's population, according to the last federal census, or his designee, after consultation with the current chairmen of other counties wholly or partially within that district.

**c.**  If no call is issued within the indicated twenty-day period, then the CRC Chairman may issue such a call. Any officers not elected by the meeting called may be filled by appointment by the CRC Chairman.

**2.** The person calling the meeting shall call the meeting to order and preside until the election of a chairman pro tem. Nothing shall preclude his being elected as chairman, if eligible.

**3.** The meeting shall be governed by the applicable district bylaws set forth in Appendix B to these Bylaws. The Appendix B bylaws shall govern until the district shall have adopted and filed its own bylaws as provided in Section A of Article XVI of these Bylaws.

**4.** The meeting may be held in person, in an electronic format, or in a hybrid format at the discretion of the person calling the meeting as provided in Section 1 above. If the meeting is held in an electronic or hybrid format, proxies shall be forbidden at the meeting.

**5.** In the first election year after boundaries are changed, if the district central committee has not been organized forty days before the date of the precinct caucuses, the central committee of the county with the largest portion of the population according to the last federal census shall adopt rules for representation and apportion the number of delegates. The chair of said county, after due consultation with the chairs of the other counties having precincts within the district, shall issue the call for the district assembly and, if the district central committee has not been organized fifteen days prior to the assembly, preside over its meeting.

EXHIBIT "C"

EXHIBIT "1"                                                                    Declaration of Alexander Haberbush - 56

**Section G.  Residency.**

**1.** A county officer must reside in a district in order to be elected as a district officer or representative.

**2.** In congressional districts, the chairmen, vice-chairmen, and secretaries (if included by district bylaws) of the several party county central committees who do not reside within the congressional district are designated as voting members of the district central committee.

**3.** In multi-county state senatorial or representative districts, the chairman, vice-chairman, and secretary of the county central committees who reside within the multi-county state senatorial or representative district shall be members of that district central committee. In the event the county chairman, vice-chairman, or secretary does not reside within that district, he shall name a replacement member to the central committee who resides within that district.

**4.** In state senatorial or representative districts composed of a single county or a portion thereof, the chairman, vice-chairman, and secretary of the county central committee are designated as non-voting members of the district central committee with all privileges, rights, and duties of members except that of voting, provided, however, that such officers of the county central committee shall be voting members of the legislative district central committees for the particular districts in which they individually reside.

**Section H.  De Facto Single County Districts**

If a state senate or representative district is a two-county district due to the inclusion of areas with zero registered voters from a second county, then that district is directed to operate as though it were a single county district with:

**a.** Organizational meetings held at the same time and place as the county organizational meeting,

**b.** District central committee membership as for a single county district,

**c.** Designating assembly to be held at same time and place as the county designating assembly.

**d.** Delegates elected at precinct caucuses to county assembly shall also serve as delegates to the subject senate or representative assembly.

ARTICLE XVII: SEPARATE ORGANIZATIONS USING THE NAME REPUBLICAN

**Section A.** No person, group of persons, or organization shall use the name or address of the CRC in any manner, unless the person, group of persons, or organization has received permission to use such name and address from the Executive Committee. Any separate organization, auxiliary, or allied organization desiring to use the Republican name or otherwise claiming affinity with the Republican Party shall fulfill the following requirements:

**Section B.** Such separate organization, auxiliary, or allied organization shall present its credentials, in writing, to the Executive Committee for a determination of whether it shall be granted permission to use the Republican name or address. The application shall include a copy of its governing rules, the names, addresses and phone numbers of its officers and directors, and any other information which might be pertinent to the deliberations of the Executive Committee. Thereafter, such organization shall report within thirty days any amendment to its governing rules or change in its list of officers and directors and shall file annually a list of its members and their addresses with the CRC Chairman.

**Section C.** No such separate organization, auxiliary, or allied organization shall endorse, support, or make any contributions to any non-Republican candidate, candidate committee, small donor committee, political committee, or other committee or organization acting in said candidate's behalf for the purpose of influencing the outcome of a partisan election contest.

**Section D.** No such separate organization, auxiliary, or allied organization shall endorse, support, or make any contributions to any candidate, candidate committee, small donor committee, political committee, or

EXHIBIT "C"
EXHIBIT "1"                                                                    Declaration of Alexander Haberbush - 57

other committee or organization acting in said candidate's behalf for the purpose of influencing the outcome of a Republican primary election contest.

**Section E.** No such separate organization, auxiliary, or allied organization shall be considered attached to or a part of the Colorado Republican Party. Such separate organization, auxiliary, or allied organization shall not participate in the designation or nomination of candidates to the ballot and shall not be deemed to be an "affiliated party organization" as the term is used in the Colorado Constitution, Article XVIII, Section 2 (13).

**Section F.** All such separate organizations, auxiliaries, or allied organizations must comply with all applicable state and federal laws regarding financial reporting and disclosure.

**Section G.** Once permission as set forth in Section (A) above is granted, permission to use the Republican name may be revoked at any time by the Executive Committee.

ARTICLE XVIII:  PARLIAMENTARY AUTHORITY

The rules in the current edition of *ROBERT'S RULES OF ORDER NEWLY REVISED* shall govern the CRC in all cases to which they are applicable and not inconsistent with these bylaws, any special rules of order, or the laws of the State of Colorado.

ARTICLE XIX:  CONFLICT AND SEVERABILITY, INTERPRETATION

Unless otherwise determined by the Executive Committee or the CRC, should any provision of these bylaws or any rule of the Colorado Republican Party or any rule of any county or district central committee be in conflict with local, state, or federal law, or be in conflict with any rule of the Republican National Committee, then the portion in conflict shall be deemed inoperative and ineffective to the extent of such prohibition without invalidating any of the other provision or portions thereof. Any reference in these bylaws to the singular shall, if the context so requires, include the plural and vice versa, and all reference to the male includes the female, and the masculine pronoun includes the feminine, as the context may require.

ARTICLE XX:  AMENDMENT OF BYLAWS

**Section A.  Amendment.**
These bylaws may be amended at any meeting by a two-thirds vote of members present in person or by proxy and voting provided that the proposed amendment was first submitted to the Bylaws Committee and included in the official call mailed no fewer than thirty days before that meeting.

**Section B.  Effect of Inadequate Notice.**
If previous notice was not given in the call, unanimous consent of all CRC members present, in person or by proxy, must be obtained before any amendment may be offered.

EXHIBIT "C"

EXHIBIT "1"                                                         Declaration of Alexander Haberbush - 58

### APPENDIX A – ADDITIONAL POLICIES & RULES

**Introductory Note**

*The policies & rules contained in this section are separate from the Bylaws of the Colorado Republican Party but otherwise align with the bylaws and were previously adopted by the State Executive Committee or Central Committee. They are designed to provide general rules for the operation of the CRC or the conduct of regular and special meetings of the CRC. The CRC or any county or district Republican central committee, is free to adopt new policies or rules to govern the conduct of its operations or meetings that replace any of the rules in this section, insofar as such rules are not in conflict with the bylaws and other governing authorities of the CRC. Citations included below are to the applicable provisions of the Bylaws of the Colorado State Republican Central Committee (CRC Bylaws).*

_____

# Presidential Candidate Qualification Rules (*)

> *\* Pursuant to CRS 1-4-1204(1)(B) the Colorado Republican Party must affirm that anyone seeking ballot access to the Presidential Primary Ballot is a "bona fide" presidential candidate per Party rules and affiliated with the Party. "Bona fide" candidates are those who demonstrate constitutional eligibility, viability, seriousness, competitiveness, and a commitment to Colorado.*

The following sets forth requirements to have one's name placed on the Republican ballot as a U.S. Presidential candidate in Colorado and related matters.

**Section 1: U.S. Constitutional Requirements – The candidate must:**

A.  Be a natural-born citizen of the United States.

B.  Be at least 35 years old.

C.  Be a resident of the United States for 14 years.

**Section 2: Federal Requirements – The candidate must:**

A.  Have registered their Republican Presidential Committee with the Federal Election Commission.

**Section 3: Colorado Republican Party Requirements – The candidate must:**

A.  Announce their excitement to be on the Colorado ballot on X (formerly Twitter) and one other platform (while tagging the Party username) and directly encourage their followers to follow the Party's social media accounts for updates about the Party Primary and events.

B.  Demonstrate viability, seriousness, and competitiveness by paying a non-refundable filing fee to the Colorado Republican Party from one of the options below:

    a.  Pay a non-refundable filing fee of <u>$40,000</u> that is submitted along with the State Party approval application to demonstrate viability, seriousness, and competitiveness or;

    b.  Visit Colorado at least once to a State Party sponsored event at a date and time mutually agreed

- 26 -

EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 59

to by the campaign and State Party for a non-refundable discounted rate of <u>$20,000.00</u> or;

c.   Host a fundraising event for the benefit of the State Party in any state or location during a date and time, and venue, mutually agreed to by the campaign and State Party for a non-refundable discounted rate of <u>$20,000.00</u>.

**Section 4: Related Matters**

A.   The State Chairman shall make all information and approval requests available to the State Executive Committee.

B.   The State Chair shall sign and approve any State Party Presidential Primary Approval Request Form for any candidate who meets the qualification and rules in Sections 1-3.

## <u>Standing Rules for the Conduct of Meetings</u>

**MEETING RULE 1.** The Meeting of the Colorado Republican State Central Committee (CRC) will consider all business listed in the official call. Business not listed in the official call cannot be entertained.

**MEETING RULE 2.** In accordance with Art. XVIII of the CRC Bylaws, the current edition of Roberts Rules of Order, Newly Revised, shall constitute the parliamentary authority for regular and special meetings of the CRC and shall govern in all cases in which it is applicable and not inconsistent with the Colorado Republican State Central Committee Bylaws, the laws of the State of Colorado, or these Rules.

**MEETING RULE 3.** The Chairman shall preside at the Meeting of the Colorado Republican State Central Committee. The Parliamentarian, Sergeant(s) at Arms, Timekeeper, Chairman Pro Tempore, and other officers as may be necessary to facilitate the conduct of the Meeting shall be appointed by the Chairman. The Chairman may take any reasonable steps to ensure the smooth operation and administration of the Meeting while taking all necessary steps to prevent disruptions or outbursts.

**MEETING RULE 4.** The official Agenda shall constitute the Orders of the Day. The Chairman may alter the Order of Business to facilitate the efficient conduct of the Meeting. No resolutions, motions, or business other than that pertaining to the purpose of the Meeting shall be in order. Only that business described in the official Agenda shall be entertained.

**MEETING RULE 5.** Quorum for this Meeting shall consist of one-third of the voting members of the Colorado Republican State Central Committee. Once a quorum is established, the departure of members shall not be cause for adjournment.

**MEETING RULE 6.** The Meeting shall not be adjourned until all business has been completed.

**MEETING RULE 7.** Any member wishing to address the Meeting shall identify him/herself by name and county represented or office held.

**MEETING RULE 8.** Except as otherwise provided for in these Rules, no person may speak more than two minutes to any question until all who wish to speak have spoken. Another two minutes may be allowed by the Chairman. Debate on any issue or question shall be limited to a total of twenty-six (26) minutes. Debate may only be extended at the discretion of the Chairman or upon the affirmative vote of two-thirds of the members present at any meeting. The Chairman may use a pre-registration debate sign-up sheet for an electronic format to ensure an

EXHIBIT "C"
EXHIBIT "1"                                             Declaration of Alexander Haberbush - 60

orderly debate process for members who wish to speak to any agenda item.

Notwithstanding the foregoing, any member of the Republican Party staff, Officer, Chairman of any committee of the Colorado Republican State Central Committee or the principal sponsor of any resolution or proposed amendment may be recognized for any length of time at the discretion of the Chairman. All lengthy motions or resolutions, as determined by the Chairman, shall be submitted in writing.

**MEETING RULE 9.** A section of the meeting space will be cordoned/reserved for credentialed voting members and proxies. Only properly credentialed members and proxies will be permitted in this area. The Chairman will instruct any non-voting individuals to depart or be removed from the cordoned/reserved space.

### CAMPAIGN LITERATURE/MATERIAL

**MEETING RULE 10.** No campaign banners, signs, or other materials may be hung, taped, attached to, or displayed on the walls of the room in which the Meeting is conducted, or posted on the premises or in the facility where the Meeting is held.

**MEETING RULE 11.** Literature may be distributed in person but may not be taped or affixed to or placed on chairs in the room in which the Meeting is conducted. Literature distributed must (1) clearly identify the individual or registered political committee who paid for it (in accordance with applicable state or federal election laws), and (2) be focused on supporting a Republican candidate, a generally accepted Republican issue or on matters properly to be addressed by the Meeting.

### PROXIES

**MEETING RULE 12. Proxies are not allowed for meetings that allow e**lectronic participation (e.g. Zoom). For in-person only meetings, any voting member wishing to vote by proxy shall designate his/her proxy using the official proxy designation form provided by the Chairman in the official call to the Meeting if held solely in-person. The proxy designation form shall be dated and signed by the member designating his/ her proxy, witnessed by a third party, and clearly identify the individual designated as the member's proxy.

**MEETING RULE 13.** At no time during the Meeting may a proxy holder transfer his/her proxy designation to any other individual. No individual may vote as a proxy unless: 1) that individual has been designated as a voting member's proxy, 2) that individual is duly eligible to carry the proxy and vote as a proxy, and 3) the aforementioned proxy form has been properly completed and accepted by the Credentials Committee.

**MEETING RULE 14.** Proxies must visibly carry/display the credentials designating them as proxies and make available identification demonstrating that they are the individual named as a proxy if requested.

**MEETING RULE 15.** Original "hard copy" proxy forms as well as photographs, pdf, fax, or photocopies will be accepted so long as the copy is of the official proxy designation form and it is legible and correctly and completely filled out, dated, and signed.

**MEETING RULE 16.** Digitally presented proxy forms must be verified and recorded by a Credentials Committee Member on a Digital Proxy Record to be created by the Credentials Committee. All physical proxies and record of digital proxies shall be retained in accordance with Bylaws and surrendered to the custody of the COGOP Secretary upon adjournment of the Meeting.

**MEETING RULE 17.** Any individual designated as a proxy must be a Republican elector, must reside in the

EXHIBIT "C"

EXHIBIT "1"                                                                      Declaration of Alexander Haberbush - 61

constituency or county which his or her principal represents, and may vote only if the principal is absent at the time of the vote.

- E.g., A county Chairman may be designated as a proxy for his or her county and for any senator or representative in whose district the Chairman resides, but not for other senators or representatives from his or her county in whose district he or she does not reside.
- E.g., Any registered Republican voter may serve as a proxy for any county officer or bonus member in whose county the voter resides.
- An elected representative may not serve as a proxy for a county officer or bonus member unless they reside in the same county even though the county officers reside within the representative's district.
  - o E.g., If the HD56 representative lives in Elbert County, he/she is not permitted to serve as a proxy for any county officer or bonus member residing in Lincoln County even though Lincoln County is within HD56.

**MEETING RULE 18.** The proxy shall apply only to the Meeting described herein.

**MEETING RULE 19.** The proxy form (or acceptable copy) of an absent member must be submitted by the proxy holder in person to the Credentials Committee no later than one half-hour after the Meeting is called to order.

**MEETING RULE 20.** Any member of the CRC shall have the right to examine the proxies prior to any particular vote.

**MEETING RULE 21.** A member who is present and credentialed for the Meeting may designate his/her proxy to another individual at the Meeting who is eligible to act as the member's proxy provided the following:

- The member will be absent from the meeting upon the designation of a proxy.
  - o I.e., No proxy may represent or be designated for any member who is present at the meeting, whether the member has been credentialed or not.
- The proxy is credentialed as such by the Credentials Committee upon the member's departure from the meeting.
- If the member returns to the Meeting or fails to depart, the proxy designation must be surrendered to the Credentials Committee.
- Only the proxy or the member may vote on the same round.
  - o I.e., Once the proxy is properly credentialed, he/she may not vote on the same round if the member also voted. The member may not vote in a round where his/her proxy casts a vote.

CREDENTIALS/CREDENTIALING

**MEETING RULE 22.** The Credentials Committee Report shall be updated anytime the report changes due to arrivals or discovery of errors. The Credentials Committee Report may also be updated as directed by the Chairman or amended by motion.

**MEETING RULE 23.** Credentialing shall take place prior to the commencement of the Meeting.

- All voting members, non-voting members, and proxy holders must present valid government issued identification to the Credentials Committee in order to be admitted as a voting member and/or proxy holder to an in-person meeting.
- All voting members shall display an identification badge indicating them as voting members of the CRC.

EXHIBIT "C"
EXHIBIT "1"                                                      Declaration of Alexander Haberbush - 62

- All non-voting members shall display an identification badge indicating them as non-voting members of the CRC.
- All proxy carriers shall display an identification badge indicating their designation as a proxy and for whom they are designated.
    o This shall apply to voting members serving as proxies as well as any other individual duly eligible to serve as a proxy.

- When the SCC meeting allows members to participate via electronic means (e.g. Zoom), the Chairman may make any reasonable effort to ensure all voting members participating online are properly identified and verified as the member they claim to be. At a minimum, the Chairman will communicate to the SCC what measures have been taken to credential online participants. If the electronic platform allows for it, all online participants must activate their cameras when they check-in for credentialing so the system administrator(s) can ensure only voting members are participating in the electronic voting process for the meeting. A member of the credentials committee may require an online participant to turn on their camera, or otherwise reverify their identity, at any time during the voting process.

**MEETING RULE 24.** No individual shall hold or be credentialed to account for/represent more than five whole votes, including his/her own as a CRC voting member. This total (five whole votes) is inclusive of partial or fractional votes for constituencies with more than three officers or any other member who has a partial or fractional vote.

- E.g., A voting member may only carry a total of four whole votes by proxy; an individual who is not a voting member may carry a total of five whole votes by proxy.
- E.g., A bonus member (one whole vote) may carry proxies for four other members with one whole vote each.

Nothing in this rule shall be construed to amend or otherwise change the requirements applicable to the eligibility requirements for serving as a CRC proxy voter.

**MEETING RULE 25.** Any and all credentialing materials, proxy forms (paper and digital), documents, lists, reports, etc. shall be placed in the custody of the Secretary of the Colorado Republican State Central Committee immediately upon conclusion of the Meeting.

**MEETING RULE 26.** Any individual or member discovered to be improperly or inappropriately transferring credentials, proxy forms/badges and/or voting on credentials or proxy designations not properly assigned will be removed from the Meeting and those votes disqualified.

BALLOTING/VOTING

**MEETING RULE 27.** Unless otherwise specified in applicable provisions of Colorado law, the bylaws of the Colorado Republican State Central Committee, the applicable parliamentary authority, or these Rules, a majority of members present, and voting shall be required to decide any question.

**MEETING RULE 28.** Voting on any matter or issue shall be by voice vote, standing vote, hand vote, roll call vote, or ballot, either secret or assigned, at the discretion of the Chairman or the designated presiding officer. Once the question is put to the body and voting has commenced, no member may make a motion that would interrupt the voting process.

**MEETING RULE 29.** In the case of a roll call vote (requires 75 member signatures, reference Bylaws Art. VIII Sec. A), the roll shall be called by the COGOP Secretary and shall distinguish between members present and members voting by proxy and identify the individual designated as proxy according to the credentials report.

EXHIBIT "C"                    Page 35

EXHIBIT "1"                                   Declaration of Alexander Haberbush - 63

- The COGOP Secretary shall call the names of individual CRC voting members present and record the individual vote of each member.
- The COGOP Secretary shall call the names of CRC voting members present by proxy, the name of the individual serving as the voting member's proxy and record the member's vote as indicated by the proxy.
- The COGOP Secretary shall also indicate those members (present or by proxy) who represent a fractional or partial vote.

**MEETING RULE 30.** In the event of a vote by ballot:

- Ballots shall be distributed by the members of the Teller Committee to voting members and persons validly/correctly designated as proxies for absent members.
- Lost ballots shall not be replaced; however, a spoiled ballot may be replaced by surrendering the spoiled ballot to the Teller Committee Chairman prior to the announcement that the polls are closed for balloting for that vote.
- The Teller Committee shall accept ballots until the Chairman declares the polls are closed for balloting.
- The Teller Committee shall collect ballots in a manner prescribed by the Chairman of the Teller Committee.
- Teller Committee members shall verify the credentials of each member casting a ballot as a voting member of the CRC or properly designated proxy.
- The Teller Committee shall tally the number of members casting ballots and verify that the number of ballots cast is equal to or less than the number of credentialed members present or by proxy.

**MEETING RULE 31.** A person holding multiple voting positions as a member of the Republican Central Committee shall not be entitled to more than one vote.

**MEETING RULE 32.** All Teller Committee materials (ballots, tally sheets, logs, records of votes) whether paper or electronic shall be surrendered to the custody of the COGOP Secretary upon adjournment of the meeting.

**MEETING RULE 33.** The CRC shall retain the ballots, electronic and paper records of votes cast and teller reports for one year after the date of any election.

### RULES FOR REMOVAL DURING OTHER MEETINGS

**MEETING RULE 34.** During consideration of officer removal, the prime sponsor seeking the removal and the officer subject to removal may present their respective cases to the body. Both sides will be afforded 15 minutes each to present their arguments with the officer subject to removal being afforded an additional 5 minutes to allow for an adequate rebuttal should they choose. If the prime sponsor for removal wishes to introduce evidence of any kind during their speech, then that evidence must be disclosed to the officer subject to removal 3 days before presentation while it, and the prime sponsor for removal, also being subject to cross examination by the officer subject to removal for an additional 10 minutes. Notwithstanding the foregoing, any member of the Republican Party staff, Officer not subject to removal, Chairman of any committee of the Colorado Republican State Central Committee may be recognized for any length of time at the discretion of the Chairman or presiding officer. After both sides have exhausted their allotted time, members may engage in normal debate in accordance with Meeting Rule 8. When the question of officer removal is presented to the body, the removal question may only be voted on after debate has concluded and cannot be amended or altered.

**MEETING RULE 35.** For the purposes of any vote taken to remove an officer, note that CRC Bylaws, Article V, Section (C)(1) states that the vote to remove an officer must pass, "by a vote of three-fifths of the entire membership of the CRC eligible to vote at a meeting called for that purpose." If there are 400 total members of the

EXHIBIT "C"

EXHIBIT "1"                                                                 Declaration of Alexander Haberbush - 64

CRC, there must be 240 (3/5 X 400) in favor of removing the officer, not simply 3/5 of those in attendance. Additionally, the Central Committee members (CRC) must agree that the Meeting qualifies as having been "called for that purpose."

### ELECTIONS OF OFFICERS DURING ORGANIZATIONAL/VACANCY MEETINGS

**MEETING RULE 36.** Officer candidates will have a total of eight (8) minutes for a nomination speech, second(s), and campaign speech and will alert the Chairman of their intent to be nominated prior to the officer campaign speeches. Ballot order will be decided by lot prior to the Meeting, and the order of speeches will be in reverse order of ballot placement. For safety or venue logistics, the Chairman may limit the number of members or guests allowed on the stage during nominating speeches. Any candidate nominated from the floor will be treated as a "write-in" candidate. "Write-in" candidates will have half the speech time as regular candidates.

**MEETING RULE 37.** Officers shall be elected by majority vote using a secret ballot unless there is only one nominee for the office. In that case, election shall be by voice vote. If more than two persons are nominated for an office, and on the second ballot no nominee has received the required majority vote, then the nominee receiving the least votes on that ballot and the nominee receiving the least votes on each subsequent ballot shall be ineligible on all subsequent ballots, unless, taking account of nominees who have withdrawn, ineligibility would result in only one nominee on the ballot.

**MEETING RULE 38.** Officer candidates may withdraw from consideration before subsequent ballots are cast and be given thirty (30) seconds to address the membership of their withdrawal and whom they may recommend supporting out of the remaining candidates. The Chairman will give at least two (2) minutes for any candidate to consider withdrawing prior to the next round of balloting.

EXHIBIT "C"

EXHIBIT "1"                                                            Declaration of Alexander Haberbush - 65

## APPENDIX B

### Central Committee Bylaws where Central Committee is Without Bylaws

#### I. Introductory Note

The bylaws contained in this Appendix B shall be the bylaws of any county or district central committee that has not adopted its own bylaws, or that has failed to file a copy of such bylaws with the Colorado Republican State Central Committee, as provided in Article XVI, Section A, of the CRC bylaws.

**APPENDIX B-1:** Bylaws of the_____County Republican Central Committee, A County Political Party Committee

**APPENDIX B-2:** Bylaws of the_____District Republican Central Committee, A Single-County Political Party Committee

**APPENDIX B-3:** Bylaws of the_____District Republican Central Committee, A Multi-County Political Party Committee

- 33 -
EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 66

APPENDIX **B-1**

Bylaws of the _____County Republican Central Committee A

## County Political Party Committee

### ARTICLE I. NAME, ORGANIZATIONAL STRUCTURE, PURPOSES

Section 1. Name:

The name of this organization shall be the "_____County Republican Central Committee", hereinafter referred to as the "County Central Committee."

Section 2. Organizational Structure:

The County Central Committee is organized as an unincorporated nonprofit association, political organization, and local political party committee within the meaning of and pursuant to applicable Federal and State laws, and the rules and bylaws of the Colorado Republican State Central Committee.

Section 3. Primary Purpose:

The principal purpose of the County Central Committee is to perform the functions of a county party central committee as set forth in the election laws of the State of Colorado and the rules and bylaws of the Colorado Republican State Central Committee; to elect duly nominated or designated Republican candidates to office; and to have such purposes and objectives not otherwise prohibited by the laws of the United States, the State of Colorado, and the bylaws and rules of the Colorado Republican State Central Committee.

The County in the State of Colorado to which this County Central Committee corresponds is _____County (the "County").

### ARTICLE II. MEMBERSHIP

Section 1. Membership:

A. The membership of the County Central Committee shall consist of the following registered Republican electors and officials who reside within the territory included in the limits of the County:

    1. the Chairman, Vice-Chairman and Secretary of this County Central Committee;

    2. the elected or appointed Republican Precinct Committeepersons;

    3. the Republican County public officials, including County Commissioner, County Clerk and Recorder, County Treasurer, County Assessor, County Sheriff, County Surveyor, and County Coroner;

    4. the State Senators and State Representatives;

    5. the United States Senators and United States Representatives;

    6. the Republican State public officials, including Governor, Lieutenant Governor, Secretary of State, State Treasurer, State Attorney General, members of the State Board of Education, and Regents of the University of Colorado;

    7. the District Attorney; and

    8. such other registered Republican electors who reside within the territory included in the

- 34 -

EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 67

limits of the County as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

B. Only registered Republican electors who reside within the territory included in the limits of the County shall be eligible to be voting members of the County Central Committee, and each member holding multiple offices shall be entitled to only one vote on any question.

Section 2. Vacancies in Membership:

A vacancy in membership shall exist in the event of a member's ineligibility, death, resignation, removal or inability to serve. Any vacancy in the officers of this County Central Committee or Precinct Committeeperson shall be filled in accordance with these Bylaws. Any vacancy in any elected or appointed Elected Office shall be filled in the manner provided by the bylaws of the district central committee of the district corresponding to such Elective Office.

### ARTICLE III. OFFICERS, EXECUTIVE COMMITTEE

Section 1. Officers, Term and Qualifications:

A.  Officers. The officers of the County Central Committee shall be a Chairman, Vice-Chairman and Secretary.

B. Officer Qualifications. The officers shall each be registered Republican electors who reside within the territory included in the limits of the County. Persons elected to such officer positions may but do not need to otherwise qualify as members of the County Central Committee.

C. Officer Voting Membership. The officers of the County Central Committee shall be voting members of the County Central Committee during their term of office.

D.  Term of Office. The officers of the County Central Committee shall assume their duties at the conclusion of the biennial Organizational Meeting, or at the conclusion of a meeting that may be called to fill a vacancy and shall hold office until their successors are elected or appointed and qualified to serve.

Section 2. Duties of Officers:

A. Chairman: The Chairman shall perform such duties and have powers as are incident to the offices of Chairman. In addition, the Chairman shall:

   1. Preside at all meetings of the County Central Committee and any of its committees and shall serve as Chair of the County Assembly and as the Chair of each Vacancy Committee.

   2. Serve as ex-officio voting member of all committees of the County Central Committee.

   3. Issue the Call and Notice of all meetings of the County Central Committee and for all meetings of any Vacancy Committee.

   4. Perform such other duties as the County Central Committee or Vacancy Committee may assign or as may be required by law.

B. Vice-Chairman: The Vice-Chairman shall assist the Chairman in the execution of his or her duties. In addition, the Vice-Chairman shall:

   1. Exercise the powers and assume the duties of the Chairman in the absence, or in the inability to perform, of the Chairman, except that the Vice-Chairman shall not have the power to make any appointments.

   2.  Perform such other duties as the County Central Committee or the Chairman may assign.

EXHIBIT "C"
EXHIBIT "1"                                                     Declaration of Alexander Haberbush - 68

C. Secretary: The Secretary shall perform such duties and have such powers as are incident to the office of Secretary, including the duty and power to give written notice of all County Central Committee, County Assembly, Vacancy and Special Committee meetings, to attend all such meetings and keep a written record of the proceedings, and to be custodian of the records of the Committee, County Assembly and any Vacancy Committee. The Secretary shall also maintain a current list at all times of all members and officers of the Committee. In addition, the Secretary shall:

> 1. Provide to the Chair, at least three days prior to the convening of a County Assembly, a temporary roll of the delegates and alternates entitled to participate in such County Assembly.

> 2. Serve as Secretary at all County Central Committee meetings, at all Vacancy Committee meetings, at all other committee meetings, and at the County Assembly.

> 3. Keep and be responsible for all funds, financial records, and reporting requirements, if any, of the County Central Committee and County Assembly.

> 4. Prepare and verify all credentials for delegates and alternates and serve as the Chair of the Credentials Committee of the County Assembly.

> 5. File with the Colorado Secretary of State and with the Colorado Republican State Central Committee a list of names, addresses, telephone numbers and e-mail addresses of each County Central Committee officer and member of each Vacancy Committee not later than thirty (30) days after the Organizational Meeting, within thirty (30) days after any change to the same, or as otherwise required by law.

> 6. Prepare and verify certificates showing designations made by the County Assembly and selections made by any Vacancy Committee.

> 7. Perform such other duties as the County Central Committee, any Vacancy Committee or the Chairman may assign or may be required by law.

Section 3. Election of Officers:

A. Election of Officers: Officers of the County Central Committee shall be elected at the biennial Organizational Meeting.

B. Persons Who May Nominate Officers: Nominations for any officer of the County Central Committee may be made only by a member of the County Central Committee who is present at the biennial Organizational Meeting. No second to any nomination is required, however any person, including nonmembers, may be recognized to second a nomination or indicate endorsement.

C. Voting Procedure: The officers of the County Central Committee shall be elected by a majority vote of those members of the District Central Committee present and voting. The election of County Central Committee officers shall be conducted by secret ballot or by raise of hands unless there is only one nominee for the office, in which case the election may be by voice vote.

Section 4. Vacancies and Removal of County Central Committee Officers

A. Vacancy Conditions: A vacancy in office shall exist in the event of an officer's ineligibility to hold office, death, resignation, removal, permanent absence or permanent disability. The County Central Committee Vacancy Committee shall decide by majority vote of the members of the County Central Committee Vacancy Committee whether sufficient evidence exists of the ineligibility, permanent absence, or permanent disability of any officer. A meeting of the County Central Committee Vacancy Committee shall be held at the call of the Chairman within thirty (30) days of the effective date of any vacancy, and upon no fewer than ten (10) days written notice. In the case of a vacancy in the office of Chairman, the Vice-Chairman shall issue the notice of the meeting of the County Central Committee Vacancy Committee.

EXHIBIT "C"
EXHIBIT "1"                                                                 Declaration of Alexander Haberbush - 69

B. Removal: The County Central Committee may remove any officer for good cause and declare a vacancy by the affirmative vote of 2/3 of the members of the County Central Committee present and voting at a regular or special meeting of the District Central Committee. The County Central Committee Vacancy Committee shall convene immediately upon adjournment of the meeting of the District Central Committee at which an officer is removed to fill the vacancy in such officer position.

C. Declaration of Vacancy by State Chairman: If a vacancy is declared or deemed to exist in an officer position for more than thirty (30) days and no meeting of the County Central Committee Vacancy Committee is pending pursuant to a call or notice to fill such vacancy, the Chairman of the Colorado Republican State Central Committee may issue such a call or notice of a meeting of the County Central Committee Vacancy Committee to fill the vacancy in an officer position, or may appoint an eligible person to fill the vacancy.

Section 5. Executive Committee:

A. Executive Committee Membership. The County Executive Committee shall consist of the officers of the County Central Committee, namely the Chairman, Vice-Chairman and Secretary.

B. Executive Committee Powers. The Executive Committee may exercise any and all powers of the County Central Committee, except when the County Central Committee is joined in meeting and except for those powers which are specifically reserved to the County Central Committee or to the County Assembly by these Bylaws.

C. Executive Committee Meetings. Meetings of the Executive Committee may be called on five (5) days written notice by the Chairman or by one-third of the members of the Executive Committee then in office, except that this notice provision may be waived by two-thirds of the members of the Executive Committee. Proxies shall not be permitted in voting on any matter by the Executive Committee. Voting by the Executive Committee shall be by voice vote, except that any voting member of the Executive Committee shall have the right to demand and have entered a roll call vote of the Executive Committee upon any disputed question.

**ARTICLE IV. COUNTY VACANCY COMMITTEES**

Section 1.  Vacancy Committees Created and Empowered:

Vacancy Committees shall be and are hereby organized and empowered to fill vacancies in County Central Committee officers and Precinct Committee persons, in the designation and nomination of Republican candidates County Elective Office, and in the office of any Republican County Commissioner, in accordance with relevant provisions of Colorado law.

Section 2. County Central Committee Vacancy Committee:

Any vacancy in the office of Chairman, Vice-Chairman or Secretary of this County Central Committee or Precinct Committeeperson, shall be filled by a County Central Committee Vacancy Committee consisting of the officers of the County Central Committee. Notwithstanding the notice provisions in Section 5 of this Article IV, two-thirds of the members of the County Central Committee Vacancy Committee may waive the requirement of advance written notice for any meeting of the County Central Committee Vacancy Committee to fill any vacancy in the office of any Precinct Committeeperson.

Section 3. Vacancy in Designation or Nomination – County Assembly Vacancy Committee:

A. A vacancy caused by:

EXHIBIT "C"
EXHIBIT "1"                                                      Declaration of Alexander Haberbush - 70

1. the failure to designate a candidate at the County Assembly; or

2. the declination, death, disqualification, resignation, or withdrawal of the person previously designated by the County Assembly; or

3. the declination, death, disqualification, resignation, or withdrawal of the person nominated at the Republican primary election; or

4. the declination, death, disqualification, or withdrawal of a candidate for elective office after a primary election at which a nomination could have been made for the office had the vacancy then existed;

shall be filled by a County Assembly Vacancy Committee consisting of the Chairman, Vice-Chairman and Secretary of the County Central Committee. No person is eligible for appointment to fill a vacancy in the party designation or nomination unless the person would have met all the qualifications of eligibility to be designated to the primary election ballot at the time of the County Assembly. The County Assembly Vacancy Committee shall certify the results of its selection to the Colorado Secretary of State and/or to the County Clerk and Recorder in accordance with law.

Section 4. Vacancy in the Republican County Commissioner – County Commissioner Vacancy Committee:

*For County Commissioners elected at-large, or by all voters in the County:*

A. When a vacancy occurs in the office of a Republican County Commissioner elected at-large, or elected by all voters in the County, caused by:

1. the death or resignation of a person who has been sworn into office; or

2. caused by the death or resignation of a person who has been elected to a seat but who has not yet been sworn into office; or

3. a vacancy in a party nomination occurring less than eighteen days before the general election that is caused by the declination, death, disqualification, or withdrawal of any person nominated at the primary election; or

4. the declination, death, disqualification, or withdrawal of any elective officer after a primary election at which a nomination could have been made for the office had the vacancy then existed that cannot be filled before the general election; or

5. a person not taking the oath of office within the time period required by law;

the vacancy shall be filled by the County Commissioner Vacancy Committee, consisting of all eligible voting members of the County Central Committee *at the time the vacancy occurs*. The vacancy shall be filled until the next regularly scheduled general election. The County Commissioner Vacancy Committee shall certify the selection of a person who meets the qualifications for Elective Office to the Colorado Secretary of State within thirty days from the date the vacancy occurs; except that, in the case of a vacancy filled pursuant to Section 1-4-1002 (2.5), C.R.S., the Elective Office Vacancy Committee shall certify the selection within thirty days after the date of the general election affected by the vacancy; or except as otherwise required by law.

*For County Commissioner Districts which have adopted a five-commissioner board or county home rule charter provision or ordinance that provides for the election of County Commissioners by District:*

When a vacancy occurs in the office of a Republican County Commissioner elected by district, the vacancy shall be filled by the Elective Office Vacancy Committee of the Republican County Commissioner District Central Committee in accordance with law.

EXHIBIT "C"

EXHIBIT "1"                                                     Declaration of Alexander Haberbush - 71

<u>Section 5.  Notice of Vacancy Committee Meeting:</u>

Notice of any meeting of any Vacancy Committee shall be distributed to each member of the Vacancy Committee by first-class mail at least ten (10) days prior to such meeting, or in accordance with the notice provisions required under Colorado law, whichever is shorter. Such notice shall clearly state the date, time, place and purpose of the meeting. Notwithstanding the foregoing, two-thirds of the members of the County Central Committee Vacancy Committee may waive this requirement of advance written notice for any meeting of the County Central Committee Vacancy Committee to fill any vacancy in the office of any Precinct Committeeperson.

<u>Section 6. Vacancy Committee Quorum:</u>

The quorum of any Vacancy Committee shall be one half (1/2) of the members present in person. No member of any Vacancy Committee may vote or otherwise participate in any meeting or any selection or designation by proxy. If a quorum is not present at any Vacancy Committee meeting, the Vacancy Committee shall adjourn the meeting to a future date, time and place certain, within the period required under law to fill the vacancy, without republishing notice of the new meeting.

<u>Section 7. Method of Voting:</u>

All elections of the Vacancy Committee shall be conducted by a secret ballot unless there is only one nominee to fill a vacancy. The person to fill the vacancy shall be elected or designated by a majority vote of those members present and voting. Balloting shall be repeated until a majority vote is cast for one nominee, and no nominee shall be removed from any subsequent ballot unless such nominee voluntarily withdraws.

**ARTICLE V. MEETINGS OF THE COUNTY CENTRALCOMMITTEE**

<u>Section 1. Organizational Meeting:</u>

A. The biennial Organizational Meeting of the County Central Committee shall be held between February 1 and February 15 of each odd-numbered year, or within such time period as may otherwise be  required by law. The purpose of the Organization Meeting is to:

    1.  To Elect a Chairman, Vice-Chairman and Secretary of the County Central Committee;

    2.  To Elect such Bonus Members as may be allowed to the County Central Committee to the Colorado Republican State Central Committee, to the Congressional District Central Committee, and/or to the Judicial District Central Committee as provided for bylaw;

    3.  To select or ratify the selection of County Vacancy Committees in accordance with these Bylaws;

    4.  To conduct such other business as may properly come before the County Central Committee.

B. Meeting Notice: Notice of the Organizational Meeting of the County Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting.  Notice of a County Central Committee meeting shall clearly state the time, date, and place of  the meeting, and, to the fullest extent possible, the business to be conducted at the meeting.

C. If no meeting is held within the appropriate time frame for the biennial Organizational Meeting, the State Chairman of the Colorado Republican State Central Committee may issue such a call or notice, and the State Chairman may personally or by nominee preside at the meeting so noticed if the County Central Committee fails to provide a Chair.

<u>Section 2. Special Meetings:</u>

EXHIBIT "C"                                        Page 44
EXHIBIT "1"                                                        Declaration of Alexander Haberbush - 72

A. Special Meeting of the County Central Committee may be called at any time by the Chairman on his own initiative or upon the written request of at least twenty-five percent of the members. If the Chairman fails to act on the request within ten (10) days, then any voting member may issue the call at the Committee's expense. Special Meetings shall be held no sooner than ten (10) days from the date the call is sent at the time, date, and place as designated by the person calling the meeting.

B. Special Meeting Notice: Notice of the Special Meeting of the County Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting to the members of the County Central Committee. Notice of the Organizational Meeting shall clearly state the time, date, and place of the meeting, and the business to be conducted at the meeting.

C. Waiver of Notice of Special Meetings: If two-thirds of the membership of the County Central Committee waive notice of the call of a special meeting of the County Central Committee, a special meeting of the Committee may be held without prior notice. Failure of the County Chair to properly provide a call for the Special Meeting shall not invalidate the need and purpose for the Special Meeting.

Section 3. Notice of all Meetings:

Unless otherwise specified herein, the members of any Regular or Special Meetings of the County Central Committee, Vacancy Committee, or other committee of the County Central Committee shall be notified by written notice delivered by United States mail, first class postage prepaid, or electronically delivered by facsimile or by e-mail.  All notices shall be directed to the County Central Committee member at her or his address(es) as it appears on the official Committee records as maintained by the Secretary.

Section 4. Form and Venue of Meeting, Electronic and Conference Call:

Meetings may be held in person, in an electronic format, or in a hybrid format at the discretion of the Chairman. In the event a meeting is held in an electronic or hybrid format, proxies shall be forbidden at that meeting.

**ARTICLE VI. VOTING AT MEETINGS OF THE COMMITTEE**

Section 1. Method of Voting:

A. Voice or Rising Vote: With the exception of the elections or removal of officers of the County Central Committee, or the designation or nomination of any candidate for Elective Office, all voting at meetings of the County Central Committee, or at the County Assembly, shall be by voice vote, by raise of hands, or by rising vote at the discretion of the Chairman, unless otherwise provided by the affirmative majority vote of the members present and voting.

B. Cumulative Voting, Unit Rule: Cumulative voting (which permits an elector to give more than one vote to a single candidate) or Unit Rule shall not be allowed or adhered to at any meeting of the County Central Committee, any Vacancy Committee, or at the County Assembly.

Section 2. Proxies:

A. Designation: Any voting member who wishes to vote by proxy at those meetings where proxies are allowed shall designate her or his proxy in writing or on a written form which shall be dated, witnessed and submitted to the Chairman prior to the start of the meeting, except that no member may participate by proxy at any Vacancy Committee meeting. All proxies shall apply to a single meeting. An individual designated to cast a proxy vote shall be a qualified Republican elector within the constituency represented by the principal, and a person designated to cast a proxy may vote only if the principal is absent from the meeting at the time of the vote.

EXHIBIT "C"
EXHIBIT "1"                                                                 Declaration of Alexander Haberbush - 73

Section 3. Quorum Requirements:

Those members present and voting at the Organizational Meeting, or at any Regular or Special Meetings of the Central Committee, shall constitute a quorum, so long as due notice has been given or the meeting is held in accordance with these Bylaws and the bylaws and rules of the Colorado Republican State Central Committee.

**ARTICLE VII: PRECINCT CAUCUSES**

Section 1.  Date and Location:

Precinct caucuses shall be held in even-numbered years at 7:00 p.m. on the date provided for by law or the rules of the Republican National Committee at a private place in each precinct or at a public place within the County in or proximate to each precinct as determined by the County Central Committee or County officers and posted as required by law.

Section 2.  Voting Members:

A. Voting members at each precinct caucus shall have been:

> 1. A resident of the precinct for thirty days; and

> 2. Registered to vote no later than twenty-nine days before the precinct caucus and affiliated with the Republican Party for at least two months as shown on the registration books of the County Clerk and Recorder or on the records of the Colorado Secretary of State; except that any registered Republican elector who has attained the age of eighteen years within the two months immediately preceding such precinct caucus or who has become a naturalized citizen within the two months immediately preceding the precinct caucus; or

> 3. Such other registered Republican electors as may be present and otherwise entitled to participate in the precinct caucus as may be required by law.

B. Voting by proxy shall not be permitted at any Republican precinct caucus.

Section 3.  Procedure:

The eligible voting members at each precinct caucus present and voting shall:

A. Elect by plurality vote a precinct caucus chairman and secretary to serve as officers of the precinct caucus.

B. Elect by plurality vote the delegates and alternate delegates to the county assembly and for such other higher assemblies and/or conventions as determined by the County Central Committee or County Central Committee officers. In the event of a tie for the last available delegate or alternate delegate, the last available place shall be determined by lot. Cumulative voting or unit rule shall not be allowed or adhered to in the election of delegates or alternate delegates.

C. Elect by plurality vote two Precinct Committee people.

> 1. The two people receiving the highest number of votes shall be elected as the Precinct Committee people.

> 2. If two or more candidates for Precinct Committeeperson receive an equal and the second highest number of votes, or if three or more candidates receive an equal and the highest number of votes, the election shall be determined by lot by such candidates.

> 3. Each Precinct Committeeperson shall hold such position for a term of two years after the date of his election, and each shall serve until his successor is duly elected or appointed.

- 41 -

4. The names of the Precinct Committee people and delegates and alternate delegates elected shall be certified to the County Assembly of the political party by the officers of the precinct caucus.

D. For precinct caucuses occurring in the year in which a national convention is to be held and a presidential candidate is to be nominated, or occurring in the year in which any candidate for statewide office is to be nominated, a non-binding preference poll shall be conducted for such offices and candidates as the Colorado Republican State Central Committee Executive Committee may direct as part of the business of each precinct caucus meeting, except that the Colorado Republican State Central Committee Executive Committee may direct that no preference poll be conducted. The preference poll shall be conducted and results reported in a manner as shall be provided by the Chairman or the Colorado Republican State Central Committee Executive Committee. Only eligible precinct caucus participants may participate in any preference poll.

E. In no event, however, shall the results of any preference poll dictate or require the proportional allocation or representation of delegates chosen for any County Assembly, higher assembly or convention, or bind such delegates as may be chosen to vote for any particular candidate. The participants at each precinct caucus, or at any caucus, assembly, or convention of any county or district, alone shall determine if the results of any preference poll is to be a factor in the selection of individual delegates or alternates to any higher assembly or convention, and no candidate for delegate or alternate for any higher assembly or convention shall be compelled or required to identify the candidate he or she is supporting, but may do so at his or her option.

## ARTICLE VIII. COUNTY ASSEMBLY

Section 1. County Assembly

A. Date and Location: The County Assembly shall be held on a date no sooner than ten (10) days and no later than thirty (30) days following the Precinct Caucuses and at a time and location determined by the Chairman of the County Central Committee, or as otherwise provided for by law.

B. Call of the County Assembly: The call of the County Assembly shall include a statement of the time, place and purpose of the County Assembly, and shall be distributed or made available at the precinct caucuses or delivered by United States mail, first class postage prepaid, or electronically delivered by facsimile or by e-mail, directed to the delegates and alternates selected at each precinct caucus at her or his address(es) as provided by the officers of each precinct caucus.

Section 2. Qualifications of Delegates and Alternates

A. The delegates and alternates to the County Assembly shall be those delegates and alternates selected at the precinct caucus that reside within the territory included in the limits of the County.

Section 3. Voting in the District Assembly

A. Proxies: No proxies shall be allowed or recognized in the County Assembly.

B. Vacancies: Any vacancy in a delegate place shall be filled only from among the alternates in attendance at the District Assembly from the precinct for which there is a vacancy. Alternates shall be seated as delegates in the order designated by their precinct caucuses. Alternates must yield to delegates when they are present.

C. Designation: The County Assembly shall take no more than two ballots for each office to be designated.

EXHIBIT "C"
EXHIBIT "1"                                                          Declaration of Alexander Haberbush - 75

Every candidate receiving thirty (30%) percent or more of the votes of all duly accredited County Assembly delegates, who are present and voting for that office, shall be certified by affidavit of the presiding officer and secretary of the County Assembly.

If no candidate receives 30% or more of the votes of all duly accredited County Assembly delegates, who are present and voting for that office, on the first ballot, a second ballot shall be cast for all the candidates for that office. If, on the second ballot, no candidate receives 30% or more of the votes cast, the County Assembly shall certify the two candidates receiving the highest numbers of votes as candidates for the office. The certificate of designation shall indicate the order of the vote received at the County Assembly by the candidates, but the County Assembly shall not declare that one candidate has received the nomination of the County Assembly. If two or more candidates receiving designation have received an equal number of votes, the order of certification of designation shall be determined by lot by the candidates.

D. Requirements for Nominees: No person shall be eligible for designation by the County Assembly to the Republican primary election ballot unless such person possesses the constitutional and statutory qualifications for such Elective Office and shall have been continuously affiliated as a Republican for at least thirty (30) days preceding the County Assembly, as shown by the voter registration rolls maintained by the County Clerk and Recorder or the Colorado Secretary of State.

Section 5. County Assembly Vacancy Committee

The County Assembly Vacancy Committee shall fill any vacancy that occurs in the Republican designation or nomination of a candidate for Elective Office, in accordance with Article IV, Section 3 of these Bylaws, the bylaws and rules of the Colorado Republican State Central Committee, and the applicable laws of the State of Colorado.

## ARTICLE IX. AMENDMENT OF THESE BYLAWS

These Bylaws may be amended at any Regular or Special Meeting of the County Central Committee, by the affirmative vote of two-thirds (2/3) of those members present and voting, provided that the proposed amendment was submitted, in writing, to the officers for review, and mailed or sent by e-mail no fewer than thirty (30) days prior to the meeting to the members of the County Central Committee, and a copy of the proposed amendment(s) were included in the written notice of the meeting.

## ARTICLE X. PARLIAMENTARY AUTHORITY

The current edition of *Roberts Rules of Order, Newly Revised* shall govern the meetings of the County Central Committee, the County Assembly, and all regular or special meetings of the County Central Committee or any of its committees, including any Vacancy Committee, whenever they are applicable and not inconsistent with these Bylaws, the bylaws and rules of the Colorado Republican State Central Committee, and applicable law.

EXHIBIT "C"

EXHIBIT "1"                                                 Declaration of Alexander Haberbush - 76

APPENDIX **B-2**

Bylaws  of  the _____ District Republican Central Committee A

**Single County District Political Party Committee**

**ARTICLE I. NAME, ORGANIZATIONAL STRUCTURE, PURPOSES**

Section 1. Name:

The name of this organization shall be   the "_____ District Republican Central Committee", hereinafter referred to as the "District Central Committee."

Section 2. Organizational Structure:

The District Central Committee is organized as an unincorporated nonprofit association, political organization, and local political party committee within the meaning of and pursuant to applicable Federal and State laws, the rules and bylaws of the Colorado Republican State Central Committee, and the rules and bylaws of the County Republican Central Committee of the County which this District is comprised in whole or in part.

Section 3. Primary Purpose:

The principal purpose of the District Central Committee is the selection, designation, nomination, election, and appointment of qualified persons to the Elective Office of (*State Senator / State Representative / District Attorney / County Commissioner* )   for the _____ (*Senatorial / Representative / Judicial / County Commissioner* ) District (the "District"), which District is comprised of only one County or a portion of only one County.

The County in the State of Colorado of which this District is comprised, in whole or in part, is _____ County (the "County").

**ARTICLE II. MEMBERSHIP**

Section 1. Membership:

A. The membership of the District Central Committee shall consist of the following registered Republican electors and officials who reside within the County and within the territory included in the limits of the District:

*For State Senatorial Districts:*

1.  the Chairman, Vice-Chairman and Secretary of this Senatorial District Central Committee;
2.  the elected or appointed Republican precinct committee persons;
3.  the elected or appointed Republican State Senator;
4.  the elected or appointed Republican State Representatives;
5.  the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and
6.  such other registered Republican electors who reside within the territory included in the limits of

EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 77

the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For State Representative Districts:*

1.  the Chairman, Vice-Chairman and Secretary of this Representative District Central Committee;

2.  the elected or appointed Republican precinct committee persons;

3.  the elected or appointed Republican State Senators;

4.  the elected or appointed Republican State Representative;

5.  the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and

6.  such other registered Republican electors who reside within the territory included in the limits of the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For Judicial Districts:*

1.  the Chairman, Vice-Chairman and Secretary of this Judicial District Central Committee;

2.  the elected or appointed Republican precinct committee persons;

3.  the elected or appointed Republican District Attorney;

4.  the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and

5.  such other registered Republican electors who reside within the territory included in the limits of the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For County Commissioner Districts which have adopted a five-commissioner board or county home rule charter provision or ordinance that provides for the election of County Commissioners by District:*

1.  the Chairman, Vice-Chairman and Secretary of this County Commissioner District Central Committee;

2.  the elected or appointed Republican precinct committee persons;

3.  the elected or appointed Republican County Commissioner of the District;

4.  the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and

5.  such other registered Republican electors who reside within the territory included in the limits of the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

B. Only registered Republican electors who reside within the territory included in the limits of the District shall be eligible to be voting members of the District Central Committee, and each member holding multiple offices shall be entitled to only one vote on any question. Any officer of the County Central Committee of which this District is comprised in whole or in part who does not reside within the territory included in the limits of the District shall be a non-voting member of the District Central Committee and shall possess all the privileges, rights and duties of members except that of voting, nor shall each such non-

EXHIBIT "C"
EXHIBIT "1"                                                           Declaration of Alexander Haberbush - 78

voting member be entitled to designate a voting replacement.

Section 2. Vacancies in Membership:

A vacancy in membership shall exist in the event of a member's ineligibility, death, resignation, removal or inability to serve. Any vacancy in the officers of this District Central Committee shall be filled in accordance with these Bylaws. Any vacancy in any precinct committeeperson or of any officer of the County Republican Central Committee shall be filled in the manner provided by the bylaws of the County Republican Central Committee. Any vacancy in any elected or appointed Elected Office shall be filled in the manner provided by the bylaws of the district central committee of the district corresponding to such Elective Office.

## ARTICLE III. OFFICERS, POWERS OF THE COMMITTEE

Section 1. Officers, Term and Qualifications:

A.  Officers. The officers of the District Central Committee shall be a Chairman, Vice-Chairman, and Secretary.

B. Officer Qualifications. The officers shall each be registered Republican electors who reside within the territory included in the limits of the District. Persons elected to such officer positions may but do not need to otherwise qualify as members of the District Central Committee.

C. Officer Voting Membership. The officers of the District Central Committee shall be voting members of the District Central Committee during their term of office.

D.  Term of Office. The officers of the District Central Committee shall assume their duties at the conclusion of the biennial Organizational Meeting, or at the conclusion of a meeting that may be called to fill a vacancy and shall hold office until their successors are elected or appointed and qualified to serve.

Section 2. Duties of Officers:

A. Chairman: The Chairman shall perform such duties and have powers as are incident to the offices of Chairman. In addition, the Chairman shall:

> 1. Preside at all meetings of the District Central Committee and any of its committees and shall serve as Chair of the District Assembly and as the Chair of each Vacancy Committee.

> 2. Serve as ex-officio voting member of all committees of the District Central Committee.

> 3. Issue the Call and Notice of all meetings of the District Central Committee and for all meetings of any Vacancy Committee.

> 4. Perform such other duties as the District Central Committee or Vacancy Committee may assign or as may be required by law.

B. Vice-Chairman: The Vice-Chairman shall assist the Chairman in the execution of his or her duties. In addition, the Vice- Chairman shall:

> 1. Exercise the powers and assume the duties of the Chairman in the absence, or in the inability to perform, of the Chairman, except that the Vice-Chairman shall not have the power to make any appointments.

> 2. Perform such other duties as the District Central Committee or the Chairman may assign.

C. Secretary: The Secretary shall perform such duties and have such powers as are incident to the office of Secretary, including the duty and power to give written notice of all District Central Committee, District Assembly, Vacancy and Special Committee meetings, to attend all such meetings and keep a written

- 46 -

record of the proceedings, and to be custodian of the records of the Committee, District Assembly and Vacancy Committee. The Secretary shall also maintain a current list at all times of all members and officers of the Committee. In addition, the Secretary shall:

1. Provide to the Chair, at least three days prior to the convening of a District Assembly, a temporary roll of the delegates and alternates entitled to participate in such Assembly.

2. Serve as Secretary at all District Central Committee meetings, at all Vacancy Committee meetings, at all other committee meetings, and at the District Assembly.

3. Keep and be responsible for all funds, financial records, and reporting requirements, if any, of the District Central Committee and District Assembly.

4. Prepare and verify all credentials for delegates and alternates and serve as the Chair of the Credentials Committee of the District Assembly.

5. Shall file with the Colorado Secretary of State and with the Colorado Republican State Central Committee a list of names, addresses, telephone numbers and e-mail addresses of each District Central Committee officer and member of the Vacancy Committee not later than thirty (30) days after the organizational meeting, within thirty (30) days after any change to the same, or as otherwise required by law.

6. Prepare and verify certificates showing designations made by the District Assembly and selections made by the Vacancy Committee.

7. Perform such other duties as the District Central Committee, Vacancy Committees or the Chairman may assign or may be required by law.

Section 3. Election of Officers:

A. Election of Officers: Officers of the District Central Committee shall be elected at the biennial Organizational Meeting.

B. Persons Who May Nominate Officers: Nominations for any officer of the District Central Committee may be made only by a member of the Committee who is present at the biennial Organizational Meeting. No second to any nomination is required, however any person, including nonmembers, may be recognized to second a nomination or indicate endorsement.

C. Voting Procedure: The officers of the District Central Committee shall be elected by a majority vote of those members of the District Central Committee present and voting. The election of District Central Committee officers shall be conducted by secret ballot or by raise of hands unless there is only one nominee for the office, in which case the election may be by voice vote.

Section 4. Vacancies and Removal of District Central Committee Officers

A. Vacancy Conditions: A vacancy in office shall exist in the event of an officer's ineligibility to hold office, death, resignation, removal, permanent absence or permanent disability. The District Central Committee Vacancy Committee shall decide by majority vote of the members of the District Central Committee Vacancy Committee whether sufficient evidence exists of the ineligibility, permanent absence, or permanent disability of any officer. A meeting of the District Central Committee Vacancy Committee shall be held at the call of the Chairman within thirty (30) days of the effective date of any vacancy, and upon no fewer than ten (10) days written notice. In the case of a vacancy in the office of Chairman, the Vice-Chairman shall issue the notice of the meeting of the District Central Committee Vacancy Committee.

B. Removal: The District Central Committee may remove any officer for good cause and declare a vacancy by the affirmative vote of 2/3 of the members of the District Central Committee present and voting at a

EXHIBIT "C"
EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 80

regular or special meeting of the District Central Committee. The District Central Committee Vacancy Committee shall convene immediately upon adjournment of the meeting of the District Central Committee at which an officer is removed to fill the vacancy in such officer position.

C. Declaration of Vacancy by State Chairman: If a vacancy is declared or deemed to exist in an officer position for more than thirty (30) days and no meeting of the District Central Committee Vacancy Committee is pending pursuant to a call or notice to fill such vacancy, the Chairman of the Colorado Republican State Central Committee may issue such a call or notice of a meeting of the District Central
Committee Vacancy Committee to fill the vacancy in an officer position or may appoint an eligible person to fill the vacancy.

## ARTICLE IV. DISTRICT VACANCY COMMITTEES

Section 1.  Vacancy Committees Created and Empowered:

Vacancy Committees shall be and are hereby organized and empowered to fill vacancies in District Central Committee officers, in the designation and nomination of Republican candidates for the General Assembly for the District, and the Republican Elected Official of the District, in accordance with relevant provisions of Colorado law.

Section 2. District Central Committee Officer Vacancy – District Central Committee Vacancy Committee:

Any vacancy in the office of Chairman, Vice-Chairman or Secretary of this District Central Committee shall be filled by a District Central Committee Vacancy Committee consisting of the remaining officers of the District Central Committee; the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and the Republican members of the General Assembly then residing in the District.

Section 3. Vacancy in Designation or Nomination – District Assembly Vacancy Committee:

A. A vacancy caused by:

1. the failure to designate a candidate at the District Assembly; or

2. the declination, death, disqualification, resignation, or withdrawal of the person previously designated by the District Assembly; or

3. the declination, death, disqualification, resignation, or withdrawal of the person nominated at the Republican primary election; or

4. the declination, death, disqualification, or withdrawal of a candidate for elective office after a primary election at which a nomination could have been made for the office had the vacancy then existed;

shall be filled by a District Assembly Vacancy Committee consisting of the Chairman, Vice-Chairman and Secretary of the District Central Committee; the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and the Republican members of the General Assembly then residing in the District. No person is eligible for appointment to fill a vacancy in the party designation or nomination unless the person would have met all the qualifications of eligibility to be designated to the primary election ballot at the time of the District Assembly. The Assembly Vacancy Committee shall certify the results of its selection to the Colorado Secretary of State in accordance with law.

- 48 -

Section 4. Vacancy in the Republican Elected Official – Elective Office Vacancy Committee:

A. When a vacancy occurs in the office of a Republican Elective Official of this District caused by:

1. the death or resignation of a person who has been sworn into office; or

2. caused by the death or resignation of a person who has been elected to a seat but who has not yet been sworn into office; or

3. a vacancy in a party nomination occurring less than eighteen days before the general election that is caused by the declination, death, disqualification, or withdrawal of any person nominated at the primary election; or

4. the declination, death, disqualification, or withdrawal of any elective officer after a primary election at which a nomination could have been made for the office had the vacancy then existed that cannot be filled before the general election; or

5. a person not taking the oath of office within the time period required by law; the vacancy shall be filled by the Elective Office Vacancy Committee, consisting of all eligible voting members of the District Central Committee at the time the vacancy occurs. The vacancy shall be filled until the next regularly scheduled general election. The Elective Office Vacancy Committee shall certify the selection of a person who meets the qualifications for Elective Office to the Colorado Secretary of State within thirty days from the date the vacancy occurs; except that, in the case of a vacancy filled pursuant to Section 1-4-1002 (2.5), C.R.S., the Elective Office Vacancy Committee shall certify the selection within thirty days after the date of the general election affected by the vacancy; or except as otherwise required by law.

Section 5.  Notice of Vacancy Committee Meeting:

Notice of any meeting of any Vacancy Committee shall be distributed to each member of the Vacancy Committee by first-class mail at least ten (10) days prior to such meeting, or in accordance with the notice provisions required under Colorado law, whichever is shorter. Such notice shall clearly state the date, time, place and purpose of the meeting.

Section 6. Vacancy Committees Quorum:

The quorum for any Vacancy Committee meeting shall be one half (1/2) of the members present in person. No member of any Vacancy Committee may vote or otherwise participate in any meeting or any selection or designation by proxy. If a quorum is not present at any Vacancy Committee meeting, the Vacancy Committee shall adjourn the meeting to a future date, time and place certain, within the period required under law to fill the vacancy, without republishing notice of the new meeting.

Section 7. Method of Voting:

All elections of the Vacancy Committee shall be conducted by a secret ballot unless there is only one nominee to fill a vacancy. The person to fill the vacancy shall be elected by a majority vote of those members present and voting. Balloting shall be repeated until a majority vote is cast for one nominee, and no nominee shall be removed from any subsequent ballot unless such nominee voluntarily withdraws.

**ARTICLE V. MEETINGS OF THE DISTRICT CENTRAL COMMITTEE**

Section 1. Organizational Meeting:

- 49 -

A. The biennial Organizational Meeting of the District Central Committee shall be held on the same day and in the same location, or in a location proximate to, the organizational meeting of the County Republican Central Committee of which this District is comprised in whole or in part, which Organization Meeting shall be held between February 1 and February 15 of each odd-numbered year, or within such time period as may otherwise be required by law. The purpose of the Organization Meeting is to:

    1.  To Elect a Chairman, Vice- Chairman and Secretary of the District Central Committee;

    2.  To select or ratify the selection of District Vacancy Committees in accordance with these Bylaws;

    3.  To conduct such other business as may properly come before the District Central Committee.

B. Meeting Notice: Notice of the Organizational Meeting of the District Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting.  Notice of a Committee meeting shall clearly state the time, date, and place of the meeting, and, to the fullest extent possible, the business to be conducted at the meeting.

C. Failure to Properly Notice: The chairman of the County Central Committee may include notice of the District Central Committee Organizational Meeting with the call for the County organizational meeting at the request of the District Chairman. Failure of the meeting to be properly noticed shall not invalidate a District organizational meeting held on the same date and proximate to the County organizational meeting in both time and location, provided that the meeting is announced during the County organizational meeting and before the District organizational meeting.

D. If no meeting is held within the appropriate time frame for the biennial Organizational Meeting, the County Party chairman or Chairman of the Colorado Republican State Central Committee may issue such a call or notice, and she or he may personally or by nominee preside at the meeting so noticed if the District fails to provide a Chair.

Section 2. Special Meetings:

A. Special Meeting of the Committee may be called at any time by the Chairman on his own initiative or upon the written request of at least twenty-five percent of the members. If the Chairman fails to act on the request within ten (10) days, then any voting member may issue the call at the Committee's expense. Special Meetings shall be held no sooner than ten (10) days from the date the call is sent at the time, date, and place as designated by the person calling the meeting.

B. Special Meeting Notice: Notice of the Special Meeting of the District Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting to the members of the District Central Committee. Notice of the Organizational Meeting shall clearly state the time, date, and place of the meeting, and the business to be conducted at the meeting.

C. Waiver of Notice of Special Meetings: If two-thirds of the membership of the District Central Committee waive notice of the call of a special meeting of the District Central Committee, a special meeting of the Committee may be held without prior notice. Failure of the District Chair to properly provide a call for the Special Meeting shall not invalidate the need and purpose for the Special Meeting.

Section 3. Notice of all Meetings:

Unless otherwise specified herein, the members of any Regular or Special Meetings of the District Central Committee, Vacancy Committee, or other committee of the District Central Committee shall be notified by written notice delivered by United States mail, first class postage prepaid, or electronically delivered by facsimile or by e-mail.  All notices shall be directed to the District Central Committee member at her or his

EXHIBIT "C"
EXHIBIT "1"                                                                                    Declaration of Alexander Haberbush - 83

address(es) as it appears on the official Committee records as maintained by the Secretary.

Section 4. Form and Venue of Meeting, Electronic and Conference Call:

Meetings may be held in person, in an electronic format, or in a hybrid format at the discretion of the Chairman. In the event a meeting is held in an electronic or hybrid format, proxies shall be forbidden at that meeting.

Section 5. Special Rules for Initial Organizational Meetings following Reapportionment:

Following reapportionment for state senatorial or state representative districts, or following redistricting for congressional districts, as the case may be, party central committees for each new state senatorial, state representative, or congressional district shall be called to meet for the purposes of electing a chairman, vice-chairman, and secretary, selecting a vacancy committee and adopting bylaws. Calls shall be issued within twenty days following the filing or adoption of the final reapportionment or redistricting plan. Calls shall give at least fifteen days' notice of the meeting. Calls shall be issued by the current presiding officer of the county party of the county in which the district is situated, or by that officer's designee. Calls may be sent by United States mail, first-class postage prepaid or may be electronically delivered by facsimile or email. The person calling the meeting shall call the meeting to order and preside until the election of a chairman pro tem. If he or she is eligible, nothing shall preclude the person calling the meeting from being elected as chairman. If no call is issued within the indicated twenty-day period, then the CRC Chairman may issue such a call. Any officers not elected by the meeting so called may be filled by appointment by the CRC Chairman. The meeting may be held in person, in an electronic format, or in a hybrid format at the discretion of the person calling the meeting. If the meeting is held in an electronic or hybrid format, proxies shall be forbidden at the meeting. If bylaws are to be proposed for adoption at the meeting, the text of such bylaws shall accompany the meeting call. Bylaws may be adopted at the meeting by an affirmative vote of two-thirds (2/3) of those district central committee members present and voting.

**ARTICLE VI. VOTING AT MEETINGS OF THE COMMITTEE**

Section 1. Method of Voting:

A. Voice or Rising Vote: With the exception of the elections or removal of officers of the District Central Committee, or the designation or nomination of any candidate for Elective Office, all voting at meetings of the Committee, or at the District Assembly, shall be by voice vote, by raise of hands, or by rising vote at the discretion of the Chairman, unless otherwise provided by the affirmative majority vote of the members present and voting.

B. Cumulative Voting, Unit Rule: Cumulative voting (which permits an elector to give more than one vote to a single candidate) or Unit Rule shall not be allowed or adhered to at any meeting of the District

Central Committee, Vacancy Committee, or District Assembly.

Section 2. Proxies:

A. Designation: Any voting member who wishes to vote by proxy at those meetings where proxies are allowed shall designate her or his proxy in writing or on a written form which shall be dated, witnessed and submitted to the Chairman prior to the start of the meeting, except that no member may participate by proxy at any Vacancy Committee meeting. All proxies shall apply to a single meeting. An individual designated to cast a proxy vote shall be a qualified Republican elector within the constituency represented by the principal, and a person designated to cast a proxy may vote only if the principal is absent from the meeting at the time of the vote.

Section 3. Quorum Requirements:

EXHIBIT "C"
EXHIBIT "1"                                                                Declaration of Alexander Haberbush - 84

Those members present and voting at the Organizational Meeting, or at any Regular or Special Meetings of the Central Committee, shall constitute a quorum, so long as due notice has been given, or the meeting is held in accordance with these Bylaws and the rules of the Colorado Republican State Central Committee.

## ARTICLE VII. DISTRICT ASSEMBLY

Section 1. District Assembly

A. Date and Location: The District Assembly shall be held on the same date as the County Assembly in which the District is comprised, in whole or in part, in those years in which a candidate for the Elective Office of the District is designated for election.

B. Call of the District Assembly: The call of the District Assembly shall include a statement of the time, place and purpose of the District Assembly. The call of the District Assembly shall, at the request of the District Chair, be included by the chairman of the County Central Committee in the call of the County Assembly. Failure to properly call the District Assembly shall not invalidate a District Assembly held on the same date and proximate to the County Assembly in both time and location, provided that the Assembly is announced during the County Assembly and before the District Assembly is called to order.

Section 2. Qualifications of Delegates and Alternates

The delegates and alternates to the District Assembly shall be those delegates and alternates to the County Assembly that reside within the territory included in the limits of the District.

Section 3. Voting in the District Assembly

A. Proxies: No proxies shall be allowed or recognized in the District Assembly.

B. Vacancies: Any vacancy in a delegate place shall be filled only from among the alternates in attendance at the District Assembly from the precinct for which there is a vacancy. Alternates shall be seated as delegates in the order designated by their precinct caucuses. Alternates must yield to delegates when they are present.

C. Designation: The District Assembly shall take no more than two ballots for each office to be designated.

Every candidate receiving thirty (30%) percent or more of the votes of all duly accredited District Assembly delegates, who are present and voting for that office, shall be certified by affidavit of the presiding officer and secretary of the District Assembly.

If no candidate receives 30% or more of the votes of all duly accredited District Assembly delegates, who are present and voting for that office, on the first ballot, a second ballot shall be cast for all the candidates for that office. If, on the second ballot, no candidate receives 30% or more of the votes cast, the District Assembly shall certify the two candidates receiving the highest numbers of votes as candidates for the office. The certificate of designation shall indicate the order of the vote received at the District Assembly by the candidates, but the District Assembly shall not declare that one candidate has received the nomination of the District Assembly. If two or more candidates receiving designation have received an equal number of votes, the order of certification of designation shall be determined by lot by the candidates.

D. Requirements for Nominees: No person shall be eligible for designation by the District Assembly to the Republican primary election ballot unless such person possesses the constitutional and statutory qualifications for such Elective Office and shall have been continuously affiliated as a Republican for at least thirty (30) days preceding the District Assembly, as shown by the voter registration rolls

EXHIBIT "C"

EXHIBIT "1"                                                    Declaration of Alexander Haberbush - 85

maintained by the County Clerk and Recorder or the Colorado Secretary of State.

Section 5. District Assembly Vacancy Committee

The District Assembly Vacancy Committee shall fill any vacancy that occurs in the Republican designation or nomination of a candidate for Elective Office, in accordance with Article IV, Section 3 of these Bylaws, the bylaws and rules of the Colorado Republican State Central Committee, and the applicable laws of the State of Colorado.

**ARTICLE VIII. AMENDMENT OF THESE BYLAWS**

These Bylaws may be amended at any Regular or Special Meeting of the District Central Committee by the affirmative vote of two-thirds (2/3) of those members present and voting, provided that the proposed amendment was submitted, in writing, to the officers for review, mailed or sent by e-mail no fewer than thirty (30) days prior to the meeting to the members of the District Central Committee, and a copy of the proposed amendment(s) were included in the written notice of the meeting.

**ARTICLE IX. PARLIAMENTARY AUTHORITY**

The current edition of *Roberts Rules of Order, Newly Revised* shall govern the meetings of the District Central Committee, the District Assembly, and all regular or special meetings of the District Central Committee or any of its committees, including any Vacancy Committee, whenever they are applicable and not inconsistent with these Bylaws, the bylaws and rules of the County Party Central Committee, the bylaws and rules of the Colorado Republican State Central Committee, and applicable law.

EXHIBIT "C"

EXHIBIT "1"                                                                 Declaration of Alexander Haberbush - 86

**APPENDIX B-3**

**Bylaws  of  the                            District Republican Central Committee A**

**Multi-County District Political Party Committee**

**ARTICLE I. NAME, ORGANIZATIONAL STRUCTURE, PURPOSES**

Section 1. Name:

The name of this organization shall be   the "              District Republican Central Committee", hereinafter referred to as the "District Central Committee."

Section 2. Organizational Structure:

The District Central Committee is organized as an unincorporated nonprofit association, political organization, and local political party committee within the meaning of and pursuant to applicable Federal and State laws, the rules and bylaws of the Colorado Republican State Central Committee, and the rules and bylaws of the County Republican Central Committees of the Counties which this District is comprised in whole or in part.

Section 3. Primary Purpose:

The principal purpose of the District Central Committee is the selection, designation, nomination, election, and appointment of qualified persons to the Elective Office of (*State Senator / State Representative / District Attorney / County Commissioner* )   for the           (*Senatorial / Representative / Judicial / County Commissioner* ) District (the "District"), which District is comprised of all or portions of more than one County.

The Counties in the State of Colorado of which this District is comprised, in whole or in part, are:

                  .

**ARTICLE II. MEMBERSHIP**

Section 1. Membership:

A. The membership of the District Central Committee shall consist of the following registered Republican electors and officials who reside within the County and within the territory included in the limits of the District:

*For State Senatorial Districts:*

1. the Chairman, Vice-Chairman and Secretary of this Senatorial District Central Committee;

2. the elected or appointed Republican State Senator;

3. the elected or appointed Republican State Representatives;

4. the chairman, vice-chairman, and secretary of each County Republican Central Committee of which this District is comprised, in whole or in part; if any County Party officer does not reside in this State Senatorial District, a replacement who does reside in the District shall be appointed or designated by such County Party officer as provided by law; and

5. such other registered Republican electors who reside within the territory included in the limits of

- 54 -
Page 59

EXHIBIT "C"

EXHIBIT "1"                                  Declaration of Alexander Haberbush - 87

the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For State Representative Districts:*

1. the Chairman, Vice-Chairman and Secretary of this Representative District Central Committee;

2. the elected or appointed Republican State Senators;

3. the elected or appointed Republican State Representative;

4. the chairman, vice-chairman, and secretary of each County Republican Central Committee of which this District is comprised, in whole or in part; if any County Party officer does not reside in this State Representative District, a replacement who does reside in the District shall be appointed or designated by such County Party officer as provided by law; and

5. such other registered Republican electors who reside within the territory included in the limits of the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For Judicial Districts:*

1. the Chairman, Vice-Chairman and Secretary of this Judicial District Central Committee;

2. the elected or appointed Republican District Attorney;

3. the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District;

4. such Bonus Members to this Judicial District Central Committee as may be allowed to each County Central Committee of which this District is comprised, in whole or in part, as provided by law; and

5. such other registered Republican electors who reside within the territory included in the limits of the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

*For Congressional Districts:*

1. the Chairman, Vice-Chairman and Secretary of this Congressional District Central Committee;

2. the elected or appointed Republican United States Representative;

3. the elected or appointed Republican member of the State Board of Education;

4. the elected or appointed member of the Board of Regents of the University of Colorado;

5. the elected or appointed Republican State Senators;

6. the elected or appointed Republican State Representative;

7. the chairman and vice-chairman of each County Republican Central Committee of which this District is comprised, in whole or in part; if any County Party officer does not reside in this Congressional District, a replacement who does reside in the District shall be appointed or designated by such County Party officer as provided by law;

8. such Bonus Members to this Congressional District Central Committee as may be allowed from each County Central Committee of which this District is comprised, in whole or in part, as provided by law; and

9. such other registered Republican electors who reside within the territory included in the limits of

EXHIBIT "C"

EXHIBIT "1"                                                                Declaration of Alexander Haberbush - 88

the District as may be required by the laws of the State of Colorado or the bylaws or rules of the Colorado Republican State Central Committee.

B. Only registered Republican electors who reside within the territory included in the limits of the District shall be eligible to be voting members of the District Central Committee, and each member holding multiple offices shall be entitled to only one vote on any question. Any officer of the County Central Committee of which this District is comprised in whole or in part who does not reside within the territory included in the limits of the District shall be a non-voting member of the District Central Committee and shall possess all the privileges, rights and duties of members except that of voting.

Section 2. Vacancies in Membership:

A vacancy in membership shall exist in the event of a member's ineligibility, death, resignation, removal or inability to serve. Any vacancy in the officers of this District Central Committee shall be filled in accordance with these Bylaws. Any vacancy in any precinct committeeperson or of any officer of the County Republican Central Committee shall be filled in the manner provided by the bylaws of the County Republican Central Committee. Any vacancy in any elected or appointed Elected Office shall be filled in the manner provided by the bylaws of the district central committee of the district corresponding to such Elective Office.

**ARTICLE III. OFFICERS, POWERS OF THE COMMITTEE**

Section 1. Officers, Term and Qualifications:

A.  Officers. The officers of the District Central Committee shall be a Chairman, Vice-Chairman, and Secretary.

B. Officer Qualifications. The officers shall each be registered Republican electors who reside within the territory included in the limits of the District. Persons elected to such officer positions may but do not need to otherwise qualify as members of the District Central Committee.

C. Officer Voting Membership. The officers of the District Central Committee shall be voting members of the District Central Committee during their term of office.

D.  Term of Office. The officers of the District Central Committee shall assume their duties at the conclusion of the biennial Organizational Meeting, or at the conclusion of a meeting that may be called to fill a vacancy and shall hold office until their successors are elected or appointed and qualified to serve.

Section 2. Duties of Officers:

A. Chairman: The Chairman shall perform such duties and have powers as are incident to the offices of Chairman. In addition, the Chairman shall:

   1. Preside at all meetings of the District Central Committee and any of its committees and shall serve as Chair of the District Assembly and as the Chair of each Vacancy Committee.

   2. Serve as ex-officio voting member of all committees of the District Central Committee.

   3. Issue the Call and Notice of all meetings of the District Central Committee and for all meetings of any Vacancy Committee.

   4. Perform such other duties as the District Central Committee or Vacancy Committee may assign or as may be required by law.

B. Vice-Chairman: The Vice-Chairman shall assist the Chairman in the execution of his or her duties. In addition, the Vice- Chairman shall:

EXHIBIT "C"
EXHIBIT "1"                                    Declaration of Alexander Haberbush - 89

1. Exercise the powers and assume the duties of the Chairman in the absence, or in the inability to perform, of the Chairman, except that the Vice-Chairman shall not have the power to make any appointments.

2. Perform such other duties as the District Central Committee or the Chairman may assign.

C. Secretary: The Secretary shall perform such duties and have such powers as are incident to the office of Secretary, including the duty and power to give written notice of all District Central Committee, District Assembly, Vacancy and Special Committee meetings, to attend all such meetings and keep a written record of the proceedings, and to be custodian of the records of the District Central Committee, District Assembly and Vacancy Committee. The Secretary shall also maintain a current list at all times of all members and officers of the District Central Committee. In addition, the Secretary shall:

1. Provide to the Chair, at least three days prior to the convening of a District Assembly, a temporary roll of the delegates and alternates entitled to participate in such District Assembly.

2. Serve as Secretary at all District Central Committee meetings, at all Vacancy Committee meetings, at all other committee meetings, and at the District Assembly.

3. Keep and be responsible for all funds, financial records, and reporting requirements, if any, of the District Central Committee and District Assembly.

4. Prepare and verify all credentials for delegates and alternates and serve as the Chair of the Credentials Committee of the District Assembly.

5. Shall file with the Colorado Secretary of State and with the Colorado Republican State Central Committee a list of names, addresses, telephone numbers and e-mail addresses of each District Central Committee officer and member of the Vacancy Committee not later than thirty (30) days after the organizational meeting, within thirty (30) days after any change to the same, or as otherwise required by law.

6. Prepare and verify certificates showing designations made by the District Assembly and selections made by the Vacancy Committee.

7. Perform such other duties as the District Central Committee, Vacancy Committees or the Chairman may assign or may be required by law.

Section 3. Election of Officers:

A. Election of Officers: Officers of the District Central Committee shall be elected at the biennial Organizational Meeting.

B. Persons Who May Nominate Officers: Nominations for any officer of the District Central Committee may be made only by a member of the District Central Committee who is present at the biennial Organizational Meeting. No second to any nomination is required, however any person, including nonmembers, may be recognized to second a nomination or indicate endorsement.

C. Voting Procedure: The officers of the District Central Committee shall be elected by a majority vote of those members of the District Central Committee present and voting. The election of District Central Committee officers shall be conducted by secret ballot or by raise of hands unless there is only one nominee for the office, in which case the election may be by voice vote.

Section 4. Vacancies and Removal of District Central Committee Officers

A. Vacancy Conditions: A vacancy in office shall exist in the event of an officer's ineligibility to hold office, death, resignation, removal, permanent absence or permanent disability. The District Central Committee Vacancy Committee shall decide by majority vote of the members of the District Central Committee

- 57 -
EXHIBIT "C"
EXHIBIT "1"                                                                      Declaration of Alexander Haberbush - 90

Vacancy Committee whether sufficient evidence exists of the ineligibility, permanent absence, or permanent disability of any officer. A meeting of the District Central Committee Vacancy Committee shall be held at the call of the Chairman within thirty (30) days of the effective date of any vacancy, and upon no fewer than ten (10) days written notice. In the case of a vacancy in the office of Chairman, the Vice-Chairman shall issue the notice of the meeting of the District Central Committee Vacancy Committee.

B. Removal: The District Central Committee may remove any officer for good cause and declare a vacancy by the affirmative vote of 2/3 of the members of the District Central Committee present and voting at a regular or special meeting of the District Central Committee. The District Central Committee Vacancy Committee shall convene immediately upon adjournment of the meeting of the District Central Committee at which an officer is removed to fill the vacancy in any officer position.

C. Declaration of Vacancy by State Chairman: If a vacancy is declared or deemed to exist in an officer position for more than thirty (30) days and no meeting of the District Central Committee Vacancy Committee is pending pursuant to a call or notice to fill such vacancy, the Chairman of the Colorado Republican State Central Committee may issue such a call or notice of a meeting of the District Central Committee Vacancy Committee to fill the vacancy in an officer position, or may appoint an eligible person to fill the vacancy.

## ARTICLE IV. DISTRICT VACANCY COMMITTEES

Section 1.  Vacancy Committees Created and Empowered:

Vacancy Committees shall be and are hereby organized and empowered to fill vacancies in District Central Committee officers, in the designation and nomination of Republican candidates for the General Assembly for the District, and the Republican Elected Official of the District, in accordance with relevant provisions of Colorado law.

Section 2. District Central Committee Officer Vacancy – District Central Committee Vacancy Committee:

Any vacancy in the office of Chairman, Vice-Chairman or Secretary of this District Central Committee shall be filled by a District Central Committee Vacancy Committee consisting of the remaining officers of the District Central Committee; the chairman, vice-chairman, and secretary of the County Republican Central Committee who reside within the territory included in the limits of the District; and the Republican members of the General Assembly then residing in the District.

Section 3. Vacancy in Designation or Nomination – District Assembly Vacancy Committee:

A.  A vacancy caused by:

  1. the failure to designate a candidate at the District Assembly; or

  2. the declination, death, disqualification, resignation, or withdrawal of the person previously designated by the District Assembly; or

  3. the declination, death, disqualification, resignation, or withdrawal of the person nominated at the Republican primary election; or

  4. the declination, death, disqualification, or withdrawal of a candidate for elective office after a primary election at which a nomination could have been made for the office had the vacancy then existed;

shall be filled by a District Assembly Vacancy Committee consisting of the Chairman, Vice-Chairman and Secretary of the District Central Committee; the chairman, vice-chairman, and secretary of the County

EXHIBIT "C"
EXHIBIT "1"                                    Declaration of Alexander Haberbush - 91

Republican Central Committee who reside within the territory included in the limits of the District; and the Republican members of the General Assembly then residing in the District. No person is eligible for appointment to fill a vacancy in the party designation or nomination unless the person would have met all the qualifications of eligibility to be designated to the primary election ballot at the time of the District Assembly. The Assembly Vacancy Committee shall convene and shall certify the selection of a person who meets the qualifications for Elective Office to the Colorado Secretary of State within thirty days from the date the vacancy occurs in accordance with law.

Section 4. Vacancy in the Republican Elected Official – Elective Office Vacancy Committee:

A.  When a vacancy occurs in the office of a Republican Elective Official of this District caused by:

>1. the death or resignation of a person who has been sworn into office; or

>2. caused by the death or resignation of a person who has been elected to a seat but who has not yet been sworn into office; or

>3. a vacancy in a party nomination occurring less than eighteen days before the general election that is caused by the declination, death, disqualification, or withdrawal of any person nominated at the primary election; or

>4. the declination, death, disqualification, or withdrawal of any elective officer after a primary election at which a nomination could have been made for the office had the vacancy then existed that cannot be filled before the general election; or

>5. a person not taking the oath of office within the time period required by law;

the vacancy shall be filled by the Elective Office Vacancy Committee, consisting of all eligible voting members of the District Central Committee and each Republican precinct committeeperson who resides within the territory included in the limits of the District at the time the vacancy occurs. The vacancy shall be filled until the next regularly scheduled general election. The Elective Office Vacancy Committee shall certify the selection of a person who meets the qualifications for Elective Office to the Colorado Secretary of State within thirty days from the date the vacancy occurs; except that, in the case of a vacancy filled pursuant to Section 1-4-1002 (2.5), C.R.S., the Elective Office Vacancy Committee shall certify the selection within thirty days after the date of the general election affected by the vacancy; or except as otherwise required by law.

*Alternative Section 4. Congressional District - Vacancy in Member of Congress*

Should any vacancy occur in the office of Representative in Congress from this Congressional District, a Convening Committee composed of the officers of this Congressional District Central Committee and the county chairmen of all counties entitled to Bonus Member representation on this Congressional District Central Committee are hereby designated to convene a Congressional District Convention for the purpose of nominating a candidate to fill a vacancy in the unexpired term of a Representative in Congress and shall provide the procedure for the nomination of such candidate. Upon receipt of the notice of election, the State Chairman of the Colorado Republican State Central Committee shall issue the call for the Congressional District Convention, stating the number of delegates from each county and the method of their selection. The purpose of the Congressional District Convention shall be to nominate a Republican candidate to the ballot for a special congressional vacancy election, in accordance with 1-4- 401, *et seq.*, 1-4-701, and 1-12-202, C.R.S., or any successor section, or other applicable provisions of  law. Should the Congressional District Convention fail to select a vacancy committee then the Convening Committee of this section is so designated.

Section 5.  Notice of Vacancy Committee Meeting:

EXHIBIT "C"
EXHIBIT "1"                                                          Declaration of Alexander Haberbush - 92

Notice of any meeting of any Vacancy Committee shall be distributed to each member of the Vacancy Committee by first-class mail at least ten (10) days prior to such meeting, or in accordance with the notice provisions required under Colorado law, whichever is shorter. Such notice shall clearly state the date, time, place and purpose of the meeting.

Section 6. Vacancy Committee Quorum:

The Vacancy Committee quorum shall be one half (1/2) of the members present in person. No member of any Vacancy Committee may vote or otherwise participate in any meeting or any selection or designation by proxy. If a quorum is not present at any Vacancy Committee meeting, the Vacancy Committee shall adjourn the meeting to a future date, time and place certain, within the period required under law to fill the vacancy, without republishing notice of the new meeting.

Section 7. Method of Voting:

All elections of the Vacancy Committee shall be conducted by a secret ballot unless there is only one nominee to fill a vacancy. The person to fill the vacancy shall be elected by a majority vote of those members present and voting. Balloting shall be repeated until a majority vote is cast for one nominee, and no nominee shall be removed from any subsequent ballot unless such nominee voluntarily withdraws.

**ARTICLE V. MEETINGS OF THE DISTRICT CENTRAL COMMITTEE**

Following reapportionment for state senatorial or state representative districts, or following redistricting for congressional districts, as the case may be, party central committees for each new state senatorial, state representative, or congressional district shall be called to meet for the purposes of electing a chairman, vice-chairman, and secretary, selecting a vacancy committee and adopting bylaws. Calls shall be issued within twenty days following the filing or adoption of the final reapportionment or redistricting plan. Calls shall give at least fifteen days' notice of the meeting. Calls shall be issued by the current presiding officer of the county party of the county with the largest portion of the population, according to the last federal census, or his designee, after consultation with the current chairmen of other counties wholly or partially within that district. Calls may be sent by United States mail, first-class postage prepaid, or may be electronically delivered by facsimile or email. The person calling the meeting shall call the meeting to order and preside until the election of a chairman pro tem. If he or she is eligible, nothing shall preclude the person calling the meeting from being elected as chairman. If no call is issued within the indicated twenty-day period, then the CRC Chairman may issue such a call. Any officers not elected by the meeting so called may be filled by appointment by the CRC Chairman. The meeting may be held in person, in an electronic format, or in a hybrid format at the discretion of the person calling the meeting. If the meeting is held in an electronic or hybrid format, proxies shall be forbidden at the meeting. If bylaws are to be proposed for adoption at the meeting, the text of such bylaws shall accompany the meeting call. Bylaws may be adopted at the meeting by an affirmative vote of two-thirds (2/3) of those district central committee members present and voting.

Section 1. Organizational Meeting:

A. The biennial Organizational Meeting of the District Central Committee shall be held on the same day and in the same location, or in a location proximate to, the organizational meeting of the Colorado Republican State Central Committee, which Organization Meeting shall be held each odd-numbered year within such time period as may otherwise be required by law. The purpose of the Organization Meeting is to:

    1.  To Elect a Chairman, Vice- Chairman and Secretary of the District Central Committee;

    2.  To select or ratify the selection of District Vacancy Committees in accordance with these Bylaws;

EXHIBIT "C"
EXHIBIT "1"                                             Declaration of Alexander Haberbush - 93

3.  To conduct such other business as may properly come before the District Central Committee.

B. Meeting Notice: Notice of the Organizational Meeting of the District Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting.  Notice of a Committee meeting shall clearly state the time, date, and place of the meeting, and, to the fullest extent possible, the business to be conducted at the meeting.

C. Failure to Properly Notice: The chairman of the Colorado State Republican Central Committee may include notice of the District Central Committee Organizational Meeting with the call for the Colorado State Republican Central Committee organizational meeting at the request of the District Chairman. Failure of the meeting to be properly noticed shall not invalidate a District organizational meeting held

on the same date and proximate to the Colorado State Republican Central Committee organizational meeting in both time and location, provided that the meeting is announced during the Colorado Republican State Central Committee organizational meeting and before the District organizational meeting.

D. If no meeting is held within the appropriate time frame for the biennial Organizational Meeting, the chairman of the Colorado Republican State Central Committee may issue such a call or notice, and she or he may personally or by nominee preside at the meeting so noticed if the District fails to provide a Chair.

Section 2. Special Meetings:

A. Special Meeting of the Committee may be called at any time by the Chairman on his own initiative or upon the written request of at least twenty-five percent of the members. If the Chairman fails to act on the request within ten (10) days, then any voting member may issue the call at the Committee's expense. Special Meetings shall be held no sooner than ten (10) days from the date the call is sent at the time, date, and place as designated by the person calling the meeting.

B. Special Meeting Notice: Notice of the Special Meeting of the District Central Committee shall be distributed in accordance with Section 4 of this Article no fewer than ten (10) days before the date of the meeting to the members of the District Central Committee. Notice of the Organizational Meeting shall clearly state the time, date, and place of the meeting, and the business to be conducted at the meeting.

C. Waiver of Notice of Special Meetings: If two-thirds of the membership of the District Central Committee waive notice of the call of a special meeting of the District Central Committee, a special meeting of the Committee may be held without prior notice. Failure of the District Chair to properly provide a call for the Special Meeting shall not invalidate the need and purpose for the Special Meeting.

Section 3. Notice of all Meetings:

Unless otherwise specified herein, the members of any Regular or Special Meetings of the District Central Committee, Vacancy Committee, or other committee of the District Central Committee shall be notified by written notice delivered by United States mail, first class postage prepaid, or electronically delivered by facsimile or by e-mail.  All notices shall be directed to the District Central Committee member at her or his address(es) as it appears on the official Committee records as maintained by the Secretary.

Section 4. Form and Venue of Meeting, Electronic and Conference Call:

Meetings may be held in person, in an electronic format, or in a hybrid format at the discretion of the Chairman. In the event a meeting is held in an electronic or hybrid format, proxies shall be forbidden at that meeting.

**ARTICLE VI. VOTING AT MEETINGS OF THE COMMITTEE**

- 61 -

Section 1. Method of Voting:

A. Voice or Rising Vote: With the exception of the elections or removal of officers of the District Central Committee, or the designation or nomination of any candidate for Elective Office, all voting at meetings of the Committee, or at the District Assembly, shall be by voice vote, by raise of hands, or by rising vote at the discretion of the Chairman, unless otherwise provided by the affirmative majority vote of the members present and voting.

B. Cumulative Voting, Unit Rule: Cumulative voting (which permits an elector to give more than one vote to a single candidate) or Unit Rule shall not be allowed or adhered to at any meeting of the District Central Committee, Vacancy Committee, or District Assembly.

Section 2. Proxies:

A. Designation: Any voting member who wishes to vote by proxy at those meetings where proxies are allowed shall designate her or his proxy in writing or on a written form which shall be dated, witnessed and submitted to the Chairman prior to the start of the meeting, except that no member may participate by proxy at any Vacancy Committee meeting. All proxies shall apply to a single meeting. An individual designated to cast a proxy vote shall be a qualified Republican elector within the constituency represented by the principal, and a person designated to cast a proxy may vote only if the principal is absent from the meeting at the time of the vote.

Section 3. Quorum Requirements:

Those members present and voting at the Organizational Meeting, or at any Regular or Special Meetings of the Central Committee, shall constitute a quorum, so long as due notice has been given or the meeting is held in accordance with these Bylaws and the rules of the Colorado Republican State Central Committee.

**ARTICLE VII. DISTRICT ASSEMBLY, DISTRICT CONVENTION**

Section 1. District Assembly

A. Date and Location: The District Assembly shall be held on a date, time and in a location determined by the Chairman of the District Central Committee after the date of each County Assembly of each County of which the District is comprised, in whole or in part, but before the State Assembly, in those years in which a candidate for Elective Office is designated for election. In the event no date or location is determined by the Chairman of the District Central Committee and no call is issued within thirty days of the State Assembly of the Colorado Republican State Central Committee, the District Assembly shall be held on the day immediately preceding the State Assembly of the Colorado Republican State Central Committee at a location and time to be determined by the State Chairman of the Colorado Republican State Central Committee.

B. Call of the District Assembly: The call of the District Assembly shall include a statement of the time, place and purpose of the District Assembly. The call of the District Assembly shall, at the request of the District Chair, be included by the chairman of the County Central Committee in the call of the County Assembly, distributed at the Precinct Caucuses, distributed at the County Assembly, or included in the call of the State Republican Assembly by the State Chairman of the Colorado Republican State Central Committee. Failure to properly call the District Assembly shall not invalidate a District Assembly held on the day before and in a location proximate to the State Republican Assembly, provided that the notice of the District Assembly is included in the call of the State Republican Assembly.

Section 2. Qualifications of Delegates and Alternates

EXHIBIT "C"

EXHIBIT "1"                                                                    Declaration of Alexander Haberbush - 95

The delegates and alternates to the District Assembly shall be selected at the Republican precinct caucuses or at the Republican County Assembly in each in of the Counties of which this District is comprised in whole or in part in accordance with the delegate apportionment plan adopted by the officers of the District Central Committee as provided by law. In the event no separate delegate apportionment plan is adopted by the officers of the District Central Committee, the delegates and alternates to the District Assembly shall be those delegates and alternates to the State Republican Assembly that reside within the territory included in the limits of the District, and an appropriate voting factor shall be applied to multiply or discount the vote of each eligible delegate to apportion the total votes to be cast by those delegates upon an equitable and proportional basis among the portions of the district which lie in separate counties.

Section 3. Voting in the District Assembly

A. Proxies: No proxies shall be allowed or recognized in the District Assembly.

B. Vacancies: Any vacancy in a delegate place shall be filled only from among the alternates in attendance at the District Assembly from the precinct for which there is a vacancy. Alternates shall be seated as delegates in the order designated by their precinct caucuses. Alternates must yield to delegates when they are present.

C. Designation: The District Assembly shall take no more than two ballots for each office to be designated.

Every candidate receiving thirty (30%) percent or more of the votes of all duly accredited District Assembly delegates, who are present and voting for that office, shall be certified by affidavit of the presiding officer and secretary of the District Assembly.

If no candidate receives 30% or more of the votes of all duly accredited District Assembly delegates,  who are present and voting for that office, on the first ballot, a second ballot shall be cast for all the candidates for that office. If, on the second ballot, no candidate receives 30% or more of the votes cast, the District Assembly shall certify the two candidates receiving the highest numbers of votes as candidates for the office. The certificate of designation shall indicate the order of the vote received at the District Assembly by the candidates, but the District Assembly shall not declare that one candidate has received the nomination of the District Assembly. If two or more candidates receiving designation have received an equal number of votes, the order of certification of designation shall be determined by lot by the candidates.

D. Requirements for Nominees: No person shall be eligible for designation by the District Assembly to the Republican primary election ballot unless such person possesses the constitutional and statutory qualifications for such Elective Office and shall have been continuously affiliated as a Republican for at least thirty (30) days preceding the District Assembly, as shown by the voter registration rolls maintained by the County Clerk and Recorder or the Colorado Secretary of State.

Section 5. District Assembly Vacancy Committee

The District Assembly Vacancy Committee shall fill any vacancy that occurs in the Republican designation or nomination of a candidate for Elective Office, in accordance with Article IV, Section 3 of these Bylaws, the bylaws and rules of the Colorado Republican State Central Committee, and the applicable laws of the State of Colorado.

Section 6.  District Convention

Delegates and alternates to the District Assembly shall also serve as delegates and alternates to the corresponding District Convention, which District Convention shall nominate such candidates and select delegates and alternates to national political conventions in accordance with law and the bylaws and rules of the Colorado Republican State Central Committee.

EXHIBIT "C"

EXHIBIT "1"                                                                        Declaration of Alexander Haberbush - 96

## ARTICLE VIII. AMENDMENT OF THESE BYLAWS

These Bylaws may be amended at any Regular or Special Meeting of the District Central Committee by the affirmative vote of two-thirds (2/3) of those members present and voting, provided that the proposed amendment was submitted, in writing, to the officers for review, mailed or sent by e-mail no fewer than thirty (30) days prior to the meeting to the members of the District Central Committee, and a copy of the proposed amendment(s) were included in the written notice of the meeting.

## ARTICLE IX. PARLIAMENTARY AUTHORITY

The current edition of *Roberts Rules of Order, Newly Revised* shall govern the meetings of the District Central Committee, the District Assembly, and all regular or special meetings of the District Central Committee or any of its committees, including any Vacancy Committee, whenever they are applicable and not inconsistent with these Bylaws, the Bylaws and rules of the County Party Central Committee, the bylaws and rules of the Colorado Republican State Central Committee, and applicable law.

EXHIBIT "C"

EXHIBIT "1"                                                         Declaration of Alexander Haberbush - 97

# Exhibit C



# Exhibit D

## Alexander Haberbush

| | |
|---|---|
| **From:** | Steven A. Klenda <sklenda@klendalegal.com> |
| **Sent:** | Monday, April 13, 2026 9:58 AM |
| **To:** | Alexander Haberbush |
| **Cc:** | John Eastman |
| **Subject:** | RE: TIME-SENSITIVE: State Assembly Authority and Request for Clarification |

Alex,

Your position stretches the exception to the business judgment rule that I cited beyond its applicable scope. The purpose of the Party, broadly speaking, is to elect Republican Candidates to office and promote Republican principles. The Chair's decision does not prevent the Party from fulfilling this purpose. According to our Congressional and other statewide candidates, it fulfills it. This is a tactical litigation decision limited in effect to the participation of unaffiliated voters in the 2026 primary. The Chair maintains the discretion to make this decision.

Kind regards,

-Steve
Steven A. Klenda
Klenda Legal LLC
1580 Logan St., 6th Floor
Denver, CO 80203
(720) 432-5705

---

**From:** Alexander Haberbush <ahaberbush@ccg1776.com>
**Sent:** Monday, April 13, 2026 10:41 AM
**To:** Steven A. Klenda <sklenda@klendalegal.com>
**Cc:** John Eastman <jeastman@ccg1776.com>
**Subject:** RE: TIME-SENSITIVE: State Assembly Authority and Request for Clarification

Steve,

Thanks for getting back to me.

Even if we agree that the State Assembly, acting in convention, might lack the statutory authority to compel the Chairman on a specific litigation tactic, I think that misses the bigger picture. The Assembly clearly expressed its wishes, and those wishes perfectly align with the formal resolutions already adopted by the Party's governing body, the State Central Committee (SCC).

As you know, the SCC expressly adopted resolutions directing this litigation "with the goal of having the constitutionality of Proposition 108 overturned."

I understand you are relying on the business-judgment rule regarding the Chairman's discretion. However, as you rightly point out at the bottom of page 6 of your own correspondence, that discretion has limits: it "does not allow corporate directors or officers to prevent a corporation from fulfilling its purpose," and courts will void actions that are "inconsistent with a corporation's underlying purpose."

The Chairman's directive not to file this motion interferes with the explicitly defined purpose set out by the SCC. Because her decision obstructs the organization's underlying goal, it appears to fall outside the protection of the business-judgment rule under the very standard you cited.

1



# Constitutional Counsel Group

Alexander Haberbush, Partner
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
(562) 435-9062; ahaberbush@ccg1776.com
Member: California Bar

---

**From:** Steven A. Klenda <sklenda@klendalegal.com>
**Sent:** Monday, April 13, 2026 6:43 AM
**To:** Alexander Haberbush <ahaberbush@ccg1776.com>
**Cc:** John Eastman <jeastman@ccg1776.com>
**Subject:** RE: TIME-SENSITIVE: State Assembly Authority and Request for Clarification

Alex,

This will be abbreviated, bc I have other matters to which to attend.

The term "controversy" in section 106 does not mean any dispute. It refers to a controversy that has been filed in accordance with the rules that the party has adopted for adjudicating a formal dispute that has been filed with the Party. Under the Bylaws, any such controversy must first be passed on by the Executive Committee; the Central Committee has only the ability to decide appeals of an ExCom decision. The Assembly resolution was not a decision of an appeal filed under the Bylaws. So, it is not "final" in any sense. Further, to qualify under 106 a "controversy" must deal with the regularity of the organization. A tactical litigation decision does not deal with the regularity of the Party's organization.

Further, considering the State Assembly to be a superior body to the Central Committee reads the language "but not otherwise" out of section 106. The temporary authority of the state assembly cannot displace the authority of either the Central Committee or the Chair without extending the assembly's authority beyond the time of the assembly. When the assembly ended, under Robert's Rule's that body terminated.

Finally, section 106 gives the state assembly only the authority of the Central Committee. The Central Committee lacks authority to direct the Chair as to particular litigation decision or other particulars over which the Chair has discretion and represents the part by virtue of her position of as the Party's CEO. Allowing the CC to direct the Chair as to particular decisions effectively removes the Chair without following the process in the Bylaws to do so or amending the Bylaws to restrict the Chair's inherent authority. For more on this, please see my attached opinion, esp. the section that beging on p. 6, I think, and the 10th Circuit opinion cited therein.

I again instruct you, on behalf of the Chair as the Party's CEO, that the party will NOT pursue injunctive relief to close the 2026 primary.

Kind regards,

-Steve
Steven A. Klenda
Klenda Legal LLC
1580 Logan St., 6th Floor
Denver, CO  80203
(720) 432-5705

2

EXHIBIT "1"                                          Declaration of Alexander Haberbush - 101

**From:** Alexander Haberbush <ahaberbush@ccg1776.com>
**Sent:** Monday, April 13, 2026 12:24 AM
**To:** Steven A. Klenda <sklenda@klendalegal.com>
**Cc:** John Eastman <jeastman@ccg1776.com>
**Subject:** TIME-SENSITIVE: State Assembly Authority and Request for Clarification

Steve,

Attached please find my letter regarding the issues we discussed this afternoon.

As noted, please provide any supporting authority for your position no later than 8:00 a.m. Monday.



**Constitutional Counsel Group**

Alexander Haberbush, Partner
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
(562) 435-9062; ahaberbush@ccg1776.com
Member: California Bar

3

EXHIBIT "1"                                    Declaration of Alexander Haberbush - 102

# Constitutional Counsel Group

444 W Ocean Blvd., Suite 1403, Long Beach, CA 90802 | (562) 435-3456

John C. Eastman (temporarily inactive)
jeastman@ccg1776.com
Member: U.S. Supreme Court Bar



Alexander Haberbush
ahaberbush@ccg1776.com
Member: California Bar,
U.S. Supreme Court Bar

April 12, 2026

*VIA EMAIL*

Steve Klenda

Re:     *TIME-SENSITIVE: State Assembly Authority and Request for Clarification
Regarding Litigation Directive*

Dear Steve:

We have a bit of a conundrum. You stated to me by text earlier this afternoon that "[t]he party will not pursue a tro/prelim injunction or similar relief to exclude unaffiliated voters from the 2026 primary." That directive is directly contrary to the resolution adopted overwhelmingly by the State Convention of the Republican Party (aka "State Assembly") yesterday, which explicitly directed us to file a motion for preliminary injunction to bar election officials from distributing Republican primary election ballots to unaffiliated voters.

You also asserted in your text message that the "state assembly lacks authority to direct the Chair in specific litigation decisions or tactics." I don't think that is accurate. State law provides that when the Party is meeting in convention, as it was yesterday, the convention is the ultimate authority in the party, superseding even the State Central Committee. C.R.S. § 1-3-106(2). It has full power "to pass upon and determine all controversies concerning the regularity of the organization of" the Party, and also to "make rules governing the method of passing upon and determining controversies as it deems best." All such determinations are to be deemed final. C.R.S. § 1-3-106(1).

The Colorado cases construing this statutory allocation of authority confirm that such disputes are committed to the Party's own highest governing body— "by which members of the same political body are required to submit their controversies to the highest constituted authority of the party in the state." *People ex rel. Lowry v. Dist. Ct. of Second Jud. Dist.*, 32 Colo. 15, 19, 74 P. 896, 897 (1903). The present dispute falls squarely within that category.

Our conundrum is this. Our client is the Colorado Republican Party, not the Chair of the Party. When the State Assembly is meeting in convention, it is the ultimate authority of the Party on matters specified in state law. Otherwise, the State Central Committee is the ultimate authority, and it has twice passed resolutions mandating the legal challenge to Proposition 108 "with the goal of

April 12, 2026
Page 2

having it overturned." Your directive by text message runs counter to both the two resolutions of the State Central Committee and the resolution passed yesterday by the State Assembly.

If you have case law or some other authority that supports your claim that the State Assembly does not have authority to pass the directive it did, but that only the Chair has authority to make specific litigation decisions—a particularly troubling claim given that the State Central Committee has twice voted "no confidence" in the current chair and that she has already announced her resignation from the office effective less than a week from now—please provide it to us as soon as possible, but no later than 8:00 a.m. Monday morning.

By:_____

Alexander H. Haberbush, Esq.

EXHIBIT "1"                                                      Declaration of Alexander Haberbush - 104