# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY,
an unincorporated nonprofit association, on behalf of itself and its members,

    *Plaintiff*,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE MARCH 31, 2026 ORDER FOR THE 2026 PRIMARY ONLY

---

Plaintiff Colorado Republican Party ("the Party"), by and through undersigned counsel, respectfully moves this Court on an emergency basis for a temporary restraining order and/or preliminary injunction (or, alternatively, modification of the March 31, 2026 Order) directing Defendant Jena Griswold ("Secretary Griswold"), in her official capacity as Colorado Secretary of State, to exclude unaffiliated voters from participating in the Republican primary portion of the June 30, 2026 Colorado Primary Election. Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned conferred with opposing counsel this morning, and was advised that Secretary Griswold opposes this motion. Declaration of Alexander Haberbush ¶ 12 (attached hereto as Exhibit 1). In support thereof, the Party states as follows:

Plaintiff's Emergency Motion for TRO or PI - 1

## I.    INTRODUCTION

On March 31, 2026, this Court held that "the Party has shown that Proposition 108's requirement that primaries be open to unaffiliated voters constitutes a severe burden" on its constitutional right to freedom of association. Order at 16 (Dkt.#130). As such, the Proposition 108 unaffiliated voter mandate was subject to strict scrutiny, and this Court also held that neither of the governmental proffered interests—increased voter participation and stability—was sufficient to overcome the severe burden on the Party's associational rights. Order at 18-19. The Court then held that "if a major party has a reasonable ability to opt out of the semi-open primary, the associational burden of Proposition 108 would not exist." Order at 20.[1] The "reasonable ability to opt out" now exists here, according to the Court, because the supermajority vote requirement to opt out is itself unconstitutional and, therefore, now no longer in effect. Order at 21. The Court granted the Party's Motion for Summary Judgment with respect to its claim that the 3/4 supermajority vote requirement to opt out was unconstitutional. But it denied Summary Judgement to the Party with response to the unaffiliated voter participation mandate itself,[2] apparently because, absent the unconstitutional *supermajority* opt-out vote requirement, the party has a "reasonable" opportunity to opt out such that "the associational burden of Proposition 108 would not exist." Order at 20. .

For the 2026 election cycle, however, no such "reasonable ability" ever existed, and the ability to opt out of the 2026 semi-open primary cannot now be retroactively resurrected. The

---

[1] The Party disagrees with this holding and will be filing a separate motion under Fed. R. Civ. P. 54(b) for reconsideration of that issue in light of *Utah Republican Party v. Herbert*, 144 F.Supp.3d 1263 (D. Utah 2015)

[2] The Court also denied Secretary Griswold's Motion for Summary Judgment.

75% supermajority threshold that this Court has now declared unconstitutional was the only statutory mechanism available to the Party in September 2025 and the Party was required to conduct its opt-out vote by October 1, 2025. C.R.S. § 1-4-702(1). Because that now-unconstitutional barrier prevented any realistic opt-out, the semi-open primary for 2026 imposes precisely the severe associational burden the Court identified. The State's asserted interests were expressly rejected as non-compelling. Order at 18–20. Accordingly, application of the semi-open primary to the 2026 Republican primary unconstitutionally compels the Party to associate with unaffiliated voters in violation of the First Amendment. Emergency relief limited to the 2026 cycle is therefore necessary to prevent irreparable constitutional injury before ballots are mailed to voters wishing to vote in the June primary election.

## I.      FACTUAL BACKGROUND

At its meeting on September 27, 2025, the Republican Party's State Central Committee met and voted on whether to opt out of the 2026 semi-open primary. Declaration of Eric Grossman ¶ 2 (attached hereto as Exhibit 2). The vote was 226 in favor of opting out to 196 against, short of the 3/4 of total membership threshold required by C.R.S. § 1-4-702(1). *Id.* Colorado law required any vote to opt out of the semi-open primary for 2026 to occur no later than October 1, 2025. C.R.S. § 1-4-702(1). Accordingly, it is now too late for the Party to conduct a new opt-out vote without the 3/4 supermajority requirement that this Court has held to be unconstitutional.

## II.      LEGAL ARGUMENT

### a.  The Court's Reasoning in its March 31 Order Compels the Conclusion That Proposition 108 Is Unconstitutional as Applied to the 2026 Primary.

This Court has already found that Proposition 108's semi-open primary "constitutes a severe burden" on the Party's associational rights. Order at 15. The Court further held that the opt-

out provision, rather than curing that burden, itself created the severe burden because it made opting out "highly unlikely." *Id*. at 16–17. The associational burden "would not exist" *only if* the Party possesses "a reasonable ability to opt out." *Id*. at 20.

For the 2026 cycle, that condition was never satisfied. The unconstitutional 75% threshold was in full force when the Party's State Central Committee acted in September 2025 and when the statutory deadline expired on October 1, 2025. The Party therefore never had a "reasonable ability" to opt out. The severe burden identified in the Colurt's Order therefore exists for the 2026 primary.

The Secretary's proffered governmental interests (voter participation and election stability) were expressly rejected as compelling justifications. *Id*. at 18–20. Consequently, compelling the Party to conduct a semi-open primary in June 2026—without any reasonable opt-out mechanism available at the time—violates the First Amendment.

**b.  The Relief Sought Here Is Narrow, Equitable, and Limited to 2026 Only.**

The Party does not seek with this emergency motion to invalidate Proposition 108 writ large or for future cycles. The requested relief is strictly as-applied to the 2026 primary election. This Court has authority to issue such an injunction pursuant to Fed. R. Civ. P. 65. Alternatively, if the Court determines that its March 31 Order precludes such relief, the Court retains authority to modify or clarify that Order to prevent ongoing constitutional violations flowing directly from the ruling. See Fed. R. Civ. P. 54(b). This is such a case.

**c.  The Four Factors for Emergency Relief Strongly Favor the Party.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1221 (D. Colo. 2001). All four elements are met here.

**Likelihood of success on the merits.** For the reasons set out above, the Party is likely to succeed on the merits. Indeed, this Court has already ruled in its March 31 Order that the unaffiliated voter participation mandate imposes a severe burden on the Party's associational rights absent a reasonable opportunity to opt out and the government interests proffered by the Secretary are insufficient to overcome that severe burden. That burden is only removed going forward because this Court determined that the 3/4 supermajority vote requirement was unconstitutional. Because the 3/4 supermajority vote requirement was in effect when the Party attempted to opt out of the 2026 semi-open primary, the Party is being forced to participate in the upcoming June 30, 2026, primary election that includes unaffiliated voters without having had a reasonable opportunity to opt out of that forced association.

In a constitutional case, the likelihood of success on the merits will often be the determinative factor. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). This is because: (a) "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); (b) the government's interests in enforcing a likely unconstitutional law do not outweigh Plaintiff's interest in having its constitutional rights protected; and (c) it is always in the public interest to prevent violation of constitutional rights. *Hobby Lobby*, 723 F.3d at 1145. As the Tenth Circuit has previously recognized, "when an alleged constitutional right is

involved, most courts hold that no further showing of irreparable injury is necessary." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). Even if the Court were to separately consider the other factors, however, the result would be the same because all of the factors favor Plaintiff.

**Irreparable harm.** It is well-settled that a showing of the infringement of a constitutional right requires no further showing of irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 805 (10th Cir. 2019).

**Balance of Harms.** As for the balance of harms prong, the State's interest in enforcing an unconstitutional law does not outweigh Plaintiff's interest in its constitutional rights. *Awad*, 670 F.3d at 1131.

This Court has already determined that, absent a reasonable opportunity to opt out of the semi-open primary, Proposition 108's unaffiliated voter participation mandate imposes a severe burden on the Party's associational rights. And it has already determined that the Secretary's proffered governmental interests are insufficient to outweigh that burden.

The Secretary may argue, as she has previously, that she cannot change the elections system in time to prevent unaffiliated voters from participating in the Party's June 30, 2026, election. But state law already allows a minor political party to notify the Secretary of State that it is prohibiting unaffiliated electors from voting in its primary as late as April 16, 2026. C.R.S. § 1-4-1304(1.5)(c). No harm would arise were major political parties such as Plaintiff here allowed to avail themselves of the same right that statutorily exists for minor parties to exclude unaffiliated voters from their primary elections. No alteration of ballots is required; no alteration of the candidates who will appear on the ballot is required. The only difference, should this motion be granted to avoid the unconstitutional violation that has already been found to exist, is that ballots

will not be mailed to unaffiliated voters. Pursuant to the Uniformed and Overseas Citizens Absentee Voting Act of federal law, absentee ballots must be transmitted to military and overseas citizens "at least 45 days before an election for federal office," which is May 16 for the upcoming primary election. 52 U.S.C.A. § 20302(a)(8)(A) ("UOCAVA"); *see also,* C.R.S. §§ 1-8.3-103(1)(b); 1-8.3-110(1). The real deadline for simply *not* mailing such ballots is therefore May 16, 2026. And as this Court has already recognized, unaffiliated voters who wish to vote in the Republican primary election "may change their affiliation up until election day." Order Denying Mot. for Preliminary Injunction, Dkt.# 69, at 9.

The Secretary may contend, as she has previously, that it is not possible to re-program the state's SCORE voter rolls system to exclude unaffiliated voters on such short notice. We have two responses to any such argument. First, Secretary Griswold is legally obligated to be able to make such a change for any minor party who notified the Secretary by April 16 of its desire to exclude unaffiliated voters from its primary election. C.R.S. § 1-4-1304(1.5)(c). Second, the Secretary's own witness at the preliminary injunction hearing testified that, under the existing procedures, the SCORE voter system already "determines which ballot style each voter is eligible to receive based on," *inter alia*, "party affiliation. Dkt. #69, at 6. As this Court recognized, that means, for example, that:

> a Republican voter in Arapahoe County would receive a Republican primary ballot, containing any state-wide races, county-specific races for Arapahoe County, and ballot initiatives. Meanwhile, an unaffiliated voter in Arapahoe County would receive a major party packet, containing both the Republican and Democrat primary ballots for the voter's district.

*Id.* In other words, the segregation of unaffiliated from party-registered voters is already operative in the SCORE system and part of the routine management of elections.

The only change that would now be required in order to prevent the violation of the Republican Party's constitutional rights in the upcoming election is that the unaffiliated voter packet would not include a Republican Party ballot. If some counties that have already pre-printed instructions for the unaffiliated voter packets despite being well aware of the existence of this litigation, those instructions may need to be modified and reprinted in order to explain why the unaffiliated voter packet only includes the Democratic Party ballot. Any such cost likely would be entirely offset by the reduction in postage and printing costs resulting from not having to include both major party ballots in the mailing, but even if not, "the possibility of future increases in the cost of administering the election system is not a sufficient basis here for infringing appellees' First Amendment rights." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986) .

**Public Interest**. The unconstitutionality of Proposition 108 as applied to the June 2026 primary election is also dispositive on the "public interest" prong, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132.

### d. Neither Laches nor the *Purcell* doctrine precludes granting a preliminary injunction.

Anticipating a likely affirmative defense by the Secretary, the Court will undoubtedly wish to consider whether the Party's emergency motion should be denied either on grounds of laches or the *Purcell* doctrine. In the Party's view, neither doctrine should preclude the granting of its motion for preliminary injunction.

### i.    *Laches* is not a bar under the circumstances presented here.

Laches is an affirmative defense. *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474,

479 (10th Cir. 2023). It "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Equal Emp. Opportunity Comm'n v. Chris the Crazy Trader Inc.*, No. 21-CV-02666, 2025 WL 958486, at *9 (D. Colo. Mar. 31, 2025) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002)). The party asserting laches as a defense has the burden of proving each element. *Safeway Stores*, 65 F.4th at 490. The Secretary cannot carry that burden on either element.

In a case nearly directly on point, the Supreme Court, via Justice Powell as Circuit Justice, granted a preliminary injunction ordering the Texas Secretary of State to place Senator Eugene McCarthy on the general election ballot as a candidate for President in the 1976 presidential general election. *McCarthy v. Briscoe*, 429 U.S. 1317, 1319 (1976). A year prior to the election, the Texas legislature had altered state election law and repealed prior rules providing a mechanism for independent candidates for President to demonstrate a sufficient level of support to be granted access to the ballot. Senator McCarthy filed suit on July 30, 1976 challenging the constitutionality of Texas's new law. On September 3, 1976—just two months prior to the November 2, 1976, general election—the district court held that Texas's law was unconstitutional but declined to provide any injunctive relief to Senator McCarthy, holding that it was "too late for [it] to fashion meaningful relief without substantially disrupting the entire Texas election scheme." *Id.* at 1319. The Fifth Circuit affirmed three weeks later. *Id.* at 1320. Senator McCarthy submitted an emergency application the next day to Justice Powell who, after noting agreement from a majority of the Court, granted the application on September 30—a mere 33 days before the election—ordering the Texas Secretary of State to include Senator McCarthy on the ballot. Justice Power rejected Texas's laches argument.

Plaintiff's Emergency Motion for TRO or PI - 9

The Party filed the instant suit more than three years ago. It sought a preliminary injunction in January 2024, five months before the June 2024 primary election, which was denied. It then sought Summary Judgement in May 2025 after extensive discovery. On March 31, 2026, this Court found that the supermajority-vote requirement to opt out of the semi-open primary was unconstitutional. But the Court also held that it would be a severe burden on the Party's associational rights, and therefore unconstitutional, if the Party did not have a reasonable opportunity (i.e., not burdened by the ¾ supermajority vote requirement) to opt out. As noted above, the Party had no such reasonable opportunity for the upcoming primary election.

This emergency motion for preliminary injunction is filed twenty days after this Court's ruling on unconstitutionality—1 day less than the time between the district court ruling in *McCarthy* and Senator McCarthy's emergency application to Justice Powell. Even more significantly, this motion is filed 71 days before the primary election. Senator McCarthy's emergency application to Justice Powell was filed only 39 days before the general election at issue in that case, and only 19 days before the window for applying for absentee ballots under Texas law at the time opened on October 13, pursuant to Article 2956 of the Texas Revised Civil Statutes of 1925.[3] Moreover, mailing of ballots to Texas military and overseas voters had likely already begun in 1976 under the Overseas Citizens Voting Rights Act of 1975, 89 Stat. 1142 (repealed and replaced by UOCAVA in 1986, 52 U.S.C. §§ 20301–20311).

Here, in contrast, transmittal of the list of candidates who will appear on the ballot has

---

[3] Available at https://www.sll.texas.gov/library-resources/collections/historical-texas-statutes/bookreader/1925/#page/886/, pp. 815-16.

only just recently been completed and need not have been completed until April 22. *See* Secretary of State, 2026 Election Calendar.[4] The deadline for mailing UOCAVA overseas ballots is not until May 16, C.R.S. § 1-8.3-110(1), and the first day that mail ballots may be mailed to voters (other than UOCAVA voters) is not until June 8, C.R.S. § 1-7.5-107(3)(a)(I).

To be sure, this instant motion is filed twenty days after the Court's ruling on unconstitutionality was issued on March 31. The delay is unfortunate, but excusable. The Party itself has repeatedly made clear, through resolutions of its governing body, that "a majority of the Republican Party's State Central Committee supports choosing Republican Party nominees by a primary election at which only registered voters who are members of the Republican Party are eligible to participate." Prel. Inj. Hrg. of Jan. 23, 2024, Exs. 8, 10. Despite that clear directive, the individual serving as Party Chairman at the time this Court's March 31 decision was issued, and who had already tendered her resignation effective April 17, 2026, after having twice received votes of no confidence, Grossman Decl. ¶¶ 3-4, instructed counsel *not* to file a motion for preliminary injunction that, if successful, would have secured the goals of the litigation sought by the Party itself. Haberbush Decl. ¶ 5.

An emergency meeting of the Party's Executive Committee, which under Article IX, Section B.4 of the Party's bylaws has authority to "[h]ear and determine party controversies" (subject to override by the State Central Committee), was called and held on April 9, but the Executive Committee declined to override the instruction of the Party Chair *not* to file a motion for preliminary injunction with the vote outcome determined by the negative votes of all six of the Chairman-appointed members of the Committee. Grossman Decl. ¶ 5. The outgoing Party

---

[4] Available at https://www.sos.state.co.us/pubs/elections/calendars/2026ElectionCalendar.pdf.

Chairman had already declined to call a meeting of the State Central Committee normally held the day prior to the Party's Assembly convention, *id.* ¶ 6, at which the State Central Committee could (and likely would) have overridden both the Chair and the Executive Committee, *id*. But on April 11, the Party's State Assembly met and overwhelmingly adopted a resolution directing counsel "to immediately file an injunction to prevent unaffiliated [voters] from voting in [the Republican] primary." Grossman Decl. ¶ 7. It did so after overruling a ruling by the Parliamentarian, acting pursuant to authority delegated from the Chairman, that the resolution was out of order. *Id.* The State Assembly, when meeting,. has full and final authority "to pass upon and determine all controversies concerning the regularity of the organization of" the Party, and also to "make rules governing the method of passing upon and determining controversies as it deems best." C.R.S. §§ 1-3-106(1), (2).

Despite that unambiguous directive, the outgoing Party Chairman continued, through her appointed General Counsel, to instruct counsel of record in this case *not* to file a motion for preliminary injunction. Haberbush Decl. ¶¶ 7, 9-10. The General Counsel, who has now been terminated, Grossman Decl. ¶ 8, contended that the Assembly did not have authority to pass that resolution because, in his view, the issue was not a "controversy concerning the regularity of the organization" and, as CEO, she had final authority to make specific litigation decisions. Haberbush Decl. ¶ 7 and Exs. C, D.[5]

---

[5] The communications between the former Party Chairman and General Counsel, on the one hand, and undersigned counsel of record in this case, on the other, are attorney-client privileged communications. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383 (1981). However, the current acting Chairman/CEO of the Party has waived the privilege with respect to these particular communications, Haberbush Decl. ¶ 3 and Ex. A. As the Supreme Court has held, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger,

The Party contends that the now-former Chairman's interpretation of the bylaws and state law was incorrect, and that the directive issued by the Party while meeting in Assembly/Convention was controlling, a position supported by a recent decision of the Arapahoe County District Court. Order Dismissing All Claim, p. 6, *LeBlanc v. Colorado Republican State Central Committee*, No. 2025cv367 (Arapahoe Cnty Dist. Ct., Nov. 26, 2025) (citing *People ex rel. Lowry v. Dist. Ct. of Second Jud. Dist.,* 74 P. 896, 898 (Colo. 1903), emphasis in original).

Nevertheless, despite the Assembly directive and the decision in *LeBlanc*, the outgoing Chairman, through her General Counsel, persisted in ordering counsel in this case *not* to file a motion for preliminary injunction. With those conflicting directives from its client, and with the outgoing Chairman's resignation set to take effect in just a few days, counsel of record for the Party determined not to burden the Court with an internal dispute about the respective claims of authority to decide whether to file a motion for preliminary injunction until new leadership was at the helm.

The outgoing Chairman's resignation took effect at the end of the day (midnight) on Friday, April 17. Grossman Decl. ¶ 4. Pursuant to Art. V, § D.2.a of the Party's bylaws, the Vice-Chairman of the Party must issue a call for a meeting of the State Central Committee to elect a new Chairman within 10 days, and then hold such a meeting "within thirty days." In the interim, pursuant to Art. V, § B.2.a of the Party's bylaws, the Vice-Chairman "shall … [e]xercise the functions of the Chairman during" any temporary absence. In that capacity, the Vice-Chairman has now directed counsel in this case to file this emergency motion in accord with the April 11

---

loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).

directive of the State Assembly, Haberbush Decl. ¶ 11; Grossman Decl. ¶ 9, and we have done so on the very first court day since the Vice-Chairman began exercising the functions of the Chairman. The 20-day delay in filing this motion since this Court's March 31 order is therefore not the result of the Party itself sitting on its rights. Laches should therefore not be a bar to the Court hearing and granting this emergency motion for injunctive relief.

### ii.    The *Purcell* doctrine is likewise not a bar.

In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the Supreme Court vacated a decision by the Ninth Circuit enjoining a state election law—without explanation or justification—less than four weeks before the election. *Id.* at 6. The Ninth Circuit's injunction was issued after the district court had already rejected the request, not because it was sought too close to the election, but because plaintiffs were unlikely to succeed on the merits. *Purcell*, 549 U.S. at 3. The Supreme Court's decision vacating the Ninth Circuit's last-minute injunction did not take issue with the district court's consideration of the request for an injunction less than two months before the election even though, under UOCAVA, the deadline for mailing absentee ballots to military personnel and overseas citizens was less than two weeks away.

The Supreme Court and lower courts have routinely noted how imminent was the election at issue in *Purcell*, and either denied (or stayed) an injunction because the election was similarly imminent or declined to apply that doctrine to requests for injunctive relief brought months before an election.[6] Here, the election is still nearly two and a half months away.

---

[6] *Compare, e.g., Husted v. Ohio State Conference of N.A.A.C.P.*, 135 S.Ct. 42 (2014) (staying an injunction affirmed on September 24 before an election for which early voting was to begin September 29); *with, e.g. Holland v. Williams*, 457 F. Supp. 3d 979, 997 (D. Colo. 2018) ("In *Purcell*, it was a month before the election when an injunction was ordered. … Here, it is nearly five months before the 2018 elections.").

Election officials cannot begin mailing ballots (other than UOCAVA ballots) until June 8. And although the deadline for mailing UOCAVA ballots to military and overseas citizens is only four weeks away, that is still double the time available when the district court in *Purcell* considered the request for an injunction in that case.

In sum, although we are approaching the time when the *Purcell* doctrine might apply, the injunctive relief the Party now seeks is "not on the 'eve of an election'" as the courts have defined that phrase. *See, e.g.*, *Veasey v. Perry*, 769 F.3d 890, 894 (5th Cir. 2014)). The requested injunction is not barred by *Purcell*.

## III.    CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, the Party respectfully requests that the Court:

(1) Issue a temporary restraining order and/or preliminary injunction (or, alternatively, modify its March 31 Order) barring the Secretary from including unaffiliated voters in the Republican primary ballot for the June 30, 2026 Colorado Primary Election; and

(3) Grant such other and further relief as the Court deems just and proper.

Dated: April 20, 2026                              Respectfully Submitted,

<table>
<tr><td>/s/ <em>Alexander Haberbush</em></td><td>/s/ <em>Randy B. Corporon</em></td></tr>
<tr><td>Alexander Haberbush</td><td>Randy B. Corporon</td></tr>
<tr><td>CONSTITUTIONAL COUNSEL GROUP</td><td>LAW OFFICES OF RANDY B. CORPORON P.C.</td></tr>
<tr><td>444 W Ocean Boulevard, Suite 1403</td><td>5445 DTC Parkway, Suite 825</td></tr>
<tr><td>Long Beach, CA 90802</td><td>Greenwood Village, CO 80111</td></tr>
<tr><td>Telephone: (562) 435-9062</td><td>Telephone: (303) 749-0062</td></tr>
<tr><td>E-mail: ahaberbush@ccg1776.com</td><td>E-mail: rbc@corporonlaw.com</td></tr>
</table>

Plaintiff's Emergency Motion for TRO or PI - 15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Alexander Haberbush*
Alexander Haberbush