**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY, an unincorporated nonprofit association,
on behalf of itself and its members,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

      Defendant,

and

NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, JEFF HURD,
in his capacity as a candidate for U.S. Representative for Colorado's 3rd
Congressional District, LAUREN BOEBERT, in her capacity as a candidate
for U.S. Representative for Colorado's 4th Congressional District, JEFF CRANK,
in his capacity as a candidate for U.S. Representative for Colorado's 5th
Congressional District, and GABE EVANS, in his capacity as a candidate for
U.S. Representative for Colorado's 8th Congressional District,

      Proposed Intervenor-Defendants.

---

**National Republican Congressional Committee, Congressman Jeff Hurd,
Congresswoman Lauren Boebert, Congressman Jeff Crank, and Congressman
Gabe Evans's Motion for Limited Intervention to Oppose Plaintiff's Motion
for Temporary Restraining Order and/or Preliminary Injunction**

---

      Proposed Intervenor-Defendants National Republican Congressional Committee

(NRCC), Congressman Jeff Hurd, Congresswoman Lauren Boebert, Congressman Jeff

Crank, and Congressman Gabe Evans respectfully move to intervene under Federal

Rule of Civil Procedure 24(a)(2), or alternatively under Rule 24(b), for the limited

purpose of opposing Plaintiff Colorado Republican Party's (CRC) emergency motion for

a temporary restraining order and preliminary injunction that would exclude unaffiliated voters from the 2026 Republican primary elections just days before ballots are mailed. This targeted intervention is necessary to protect candidates' and a national political committee's concrete, partisan interests from imminent disruption, and it will not prejudice existing parties or expand the scope of the emergency proceedings.

### D.C.COLO.LCivR 7.1 Conferral Statement

Counsel[1] for Proposed Intervenors conferred with counsel for Plaintiff CRC and Defendant Colorado Secretary of State Jena Griswold regarding their proposed limited intervention under Rule 24(a)(2) and 24(b). The CRC opposes the relief requested in this motion; the Secretary does not oppose limited intervention.

### Factual Background on Proposed Intervenors and Their Interests

The **National Republican Congressional Committee** is the Republican Party's congressional campaign committee, and it is the only national political-party committee exclusively devoted to electing Republican candidates to the U.S. House of Representatives across the United States. It supports the election of Republicans to the House through direct financial contributions to candidates and Republican Party organizations; technical and research assistance to Republican candidates and party organizations; voter registration, education, and turnout programs; and other party-building activities. While the NRCC does not endorse Republican candidates or otherwise take sides in primary elections, it actively uses information and data obtained

---

[1] Undersigned counsel certifies he is a member in good standing of the Bar of this Court. *See* D.C.COLO.LAttyR 5(a).

from congressional primaries, including in the State of Colorado, to support all Republican congressional candidates in general elections. Further, because the NRCC's primary mission is to help elect Republican congressional candidates, it has a unique interest in the competitive landscape of primaries to promote Republican candidates in general elections. (Decl. of R. Dollar, **Ex. 1.**)

**Jeff Hurd** serves as the representative for Colorado's 3rd Congressional District in the U.S. House of Representatives (CD3), and he is a candidate in the upcoming contested Republican primary election in CD3. Representative Hurd began his reelection campaign in November 2024, and he has been actively campaigning, or planning his campaign, since this time. This includes strategizing on and developing critical voter outreach, positioning, and messaging targeting Colorado's unaffiliated voters, who make up over a majority of the electorate in the state, which is more than the Republican and Democratic Parties combined. If the Court orders the Colorado Secretary of State to change the primary election rules—including, most fundamentally, who can vote in the 2026 Colorado Republican primary elections—it would significantly disrupt Congressman Hurd's reelection campaign days before the state begins mailing early ballots to voters for the primaries. (Decl. of J. Hurd at, **Ex. 2**.)

**Jeff Crank** serves as the representative for Colorado's 5th Congressional District in the U.S. House of Representatives (CD5), and he is a candidate in the upcoming Republican primary election in CD5. Although Representative Crank is running unopposed in the 2026 Republican primary election for CD5, he has a significant interest in the data that will be gathered from Colorado's semi-open primary election

3

and will be at a disadvantage compared with his eventual Democratic opponent who will presumably have access to data generated by unaffiliated voters participating in the Democratic Party's primary. (Decl. of J. Crank , **Ex. 3**.)

**Gabe Evans** serves as the representative for Colorado's 8th Congressional District in the U.S. House of Representatives (CD8), and he is a candidate in the upcoming Republican primary election in CD8. Although Representative Evans is running unopposed in the 2026 Republican primary election for CD8, he has a significant interest in the data that will be gathered from Colorado's semi-open primary election and will be at a disadvantage compared with his eventual Democratic opponent who will presumably have access to data generated by unaffiliated voters participating in the Democratic Party's primary. (Decl. of G. Evans, **Ex. 4**.)

**Lauren Boebert** serves as the representative for Colorado's 4th Congressional District in the U.S. House of Representatives (CD4), and she is a candidate in the upcoming Republican primary election in CD4. Although Representative Boebert is running unopposed in the 2026 Republican primary election for CD4, she has a significant interest in the data that will be gathered from Colorado's semi-open primary election and will be at a disadvantage compared with her eventual Democratic opponent who will presumably have access to data generated by unaffiliated voters participating in the Democratic Party's primary. (Decl. of L. Boebert, **Ex. 5**.)

## Argument

### I.    Limited Intervention Is Appropriate and Narrowly Tailored

Proposed Intervenors seek leave to participate in briefing, argument, and any hearing on the CRC's emergency request for TRO and injunctive relief. This limited intervention responds to newly emergent circumstances: the CRC's April 20, 2026 motion asking the Court to award emergency relief that would significantly disrupt ongoing campaigns and imminent Republican primary elections by closing the elections to millions of unaffiliated voters in Colorado. Courts routinely grant motions to intervene as a matter of course, particularly where, as here, Proposed Intervenors are willing to submit to limitations on the scope of their involvement in the case. *See, e.g.*, *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) ("[I]ntervention as of right 'may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.'" (quoting *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013)); *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352–53 (5th Cir. 1997) (same); *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013) (collecting cases) ("Rule 24 … provides for limited-in-scope intervention."); *see also* Fed. R. Civ. P. 24, advisory committee's note to 1966 Amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

Here, Proposed Intervenors seek intervention for the limited purpose of opposing the CRC's emergency motion that asks the Court to upend Colorado's Republican primary elections.

## II.      Proposed Intervenors Are Entitled to Intervene As of Right

Federal Rule of Civil Procedure 24(a) governs the intervention of non-parties as of right. Under Rule 24(a)(2), non-parties may intervene in a pending lawsuit as of right if: "(1) the application is timely; (2) the applicants claim an interest relating to the property or transaction which is the subject of the action; (3) the applicants' interest may as a practical matter be impaired or impeded; and (4) the applicants' interest is not adequately represented by existing parties." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (brackets omitted).

***Intervention is timely.*** "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). The "crucial date for assessing the timeliness of a motion to intervene is when Putative Intervenors should have been aware that their interests would not be adequately protected by the existing parties." *W. Watershed Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (quoting *Smith v. Los Angeles Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)); *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005) (noting the district court's entry of judgment changed the

6

circumstances and it was no longer reasonable for the proposed intervenor to rely on the defendant's argument on jurisdiction).

The CRC filed its emergency motion on Monday, April 20, 2026, asking the Court to enjoin "the Secretary from including unaffiliated voters in the Republican primary ballot for the June 30, 2026 Colorado Primary Election." (Mot. for TRO and/or Prelim. Injunc. at 15, Doc. 134.) If granted, the CRC's request will disrupt election rules— indeed, one of the most fundamental rules governing who constitutes the Republican primary electorate—days before the primary elections are set to begin. *See* 2026 Election Calendar, Colo. Sec'y of State, https://bit.ly/4tsvbFA (last accessed on Apr. 23, 2026) (designating May 1, 2026, as last day for the Secretary "to deliver the Primary Election ballot order and content to county clerks").

Not only that, but the relief requested by the CRC is limited to only Republican primary elections, meaning unaffiliated voters—the same unaffiliated voters who, as of now, may vote in Republican primary elections—would continue to be eligible to vote in the Democratic primary election. Such a ruling could cause chaos in the soon-to-begin primary elections and would disrupt campaigns (Republican and Democratic alike) that have been actively positioning themselves and targeting voters for months. The CRC's last-minute move to overhaul Colorado's Republican primary elections days before early ballots are mailed, *see* 2026 Election Calendar, *supra* ("Deadline for county clerk to transmit a primary election ballot to military and overseas voters for the June 30th Primary Election."), is a sufficiently new circumstance to warrant Proposed Intervenors' immediate intervention in this matter.

7

Nor will Proposed Intervenors' intervention for the purpose of opposing the CRC's motion prejudice the CRC. At most, the CRC will "hav[e] to respond to excess briefs," but that is insufficient to deny intervention. *See Kane Cnty., Utah v. United States*, 928 F.3d 877, 891 (10th Cir. 2019). At bottom, intervention "would not expose the [CRC] to any burden not inherent in the litigation to which it has consented" by initiating this litigation and filing its emergency motion. *See San Juan Cnty.*, 503 F.3d at 1174. Proposed Intervenors filed three days after the emergency motion (consistent with the deadline set for the Secretary's response), which eliminates any prejudice.

**Impairment of significant, protectable interests.** "To meet the interest requirement, an applicant 'must have an interest that could be adversely affected by the litigation.'" *Kane Cnty.*, 928 F.3d at 891 (quoting *San Juan Cnty.*, 503 F.3d at 1191). In *Bost v. Illinois State Board of Elections*, the U.S. Supreme Court held that "[c]andidates, in short, are not 'mere bystanders' in their own elections. They have an obvious personal stake in how the result is determined and regarded." 146 S. Ct. 513, 520 (2026) (quoting *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)). And changing the rules of the game—the rules by which candidate elections will be decided—undoubtedly will harm those interests that are unique to them as candidates. *See id.* at 519 ("And a candidate has a personal stake in the rules that govern the counting of votes in his election."). "[A]n unlawful election rule," or new election rule imposed by judicial decree, "can injure a candidate in several ways." *Id.* For one, "[i]t might cause him to lose the election. It might require him to expend additional resources. Or it might decrease his vote share and damage his reputation." *Id.*

8

It is therefore indisputable that Proposed Intervenors who are candidates in the upcoming Colorado Republican primary elections have a "legally protectable interest" that could be impaired through a ruling on the CRC's motion that is adverse to their interests. *See Kane Cnty.*, 928 F.3d at 891. For over a year, campaign plans, voter-contact universes, messaging, and resource allocations have been built around unaffiliated participation; a last-minute closure forces retooling and sunk-cost losses.

The same holds for Proposed Intervenor NRCC. Its legally protected interest is both derivative of the candidate Intervenors that it promotes and supports and, individual, because its primary purpose is to promote Republican congressional candidates through spending and campaign support during general elections, a task that will fundamentally change if the Court crafts an election-eve remedy that only applies to Republican primaries and not Democratic primaries. If only Republican primaries are closed while Democratic primaries remain open, the NRCC (and the candidate Intervenors) will face asymmetric competitive harms, including loss of valuable primary data about unaffiliated participation that informs general-election strategy across federal and state races.

In sum, the interests that Proposed Interventor identify track the harm that the Supreme Court articulated in *Bost* earlier this year: potential electoral loss, diversion of resources, and reputational effects from reduced vote share under altered rules that govern elections. And these interests could be significantly impaired if the Court grants the CRC's requested relief at this late hour. In other words, Proposed Intervenors have a concrete and particularized interest in the motion, not mere generalized grievance.

9

*Inadequacy of existing representation.* Lastly, the Secretary, in her role as the state's chief elections official, does not adequately represent Proposed Intervenors' interests. Proposed Intervenors' burden on the adequacy-of-representation prong is "minimal" and "it is enough to show that the representation 'may be' inadequate." *Kane Cnty.*, 928 F.3d at 892 (quoting *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

To be sure, the Secretary has an interest in opposing the CRC's motion. But her interest is one of election administration and public interest—by definition, these are (or should be) nonpartisan aims. *See id.* ("[W]here the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, 'this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." *Id.* (quoting *Utah Ass'n of Cntys.*, 255 F.3d at 1255) (brackets in original)). Proposed Intervenors' interests, on the other hand, are largely partisan interests concerned with the competitive advantages or disadvantages and winning elections. Again, the Supreme Court recently recognized these distinct, individual, partisan interests as sufficient to establish Article III standing, *see Bost*, 146 S. Ct. at 520 ("Such harm to candidates is in no sense 'common to all members of the public.'") (quoting *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (per curiam)), and the Secretary cannot, and does not, protect or represent these interests, *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("We have repeatedly pointed out that … the government's prospective task of protecting 'not only the interest of the public but also the private interest of the

10

petitioners in intervention' is 'on its face impossible' and creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation.'" (quoting *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977)).

Because the Secretary represents the public interest in the administration of elections, not the partisan, competitive interests of candidates and committees, her defense is inadequate, which satisfies the minimal showing required under this prong.

* * *

Proposed Intervenors are entitled to intervene under Rule 24(a)(2) for purposes of opposing the CRC's motion for TRO and preliminary injunction: their application is timely, they have a significant interest in the subject of the emergency motion, their interests may be impaired by a ruling on the motion, and their interests are not adequately represented by existing parties. The CRC's untimely motion to fundamentally transform the Republican primary electorate just before ballots are mailed presents new circumstances justifying immediate intervention. This limited intervention will not prejudice the CRC. Proposed Intervenors, including candidates in contested and uncontested Republican primaries and the NRCC, have protectable interests that could be adversely affected by the CRC's motion, as it threatens to disrupt election rules (for a single major party in Colorado's 2026 primary elections) and harm their electoral prospects. The Secretary's representation is inadequate due to her nonpartisan role, which cannot align with the partisan interests of Proposed Intervenors, who are focused on competitive electoral advantages.

11

### III.    Alternatively, Proposed Intervenors Should Be Granted Permissive Intervention

A non-party may also seek permissive intervention under Rule 24(b). Permissive intervention is allowed if (1) the motion to intervene is timely and (2) the non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The decision whether or not to grant a motion for permissive intervention is within the district court's sound discretion." *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 689–90 (D. Colo. 2008). Here, narrow participation by Proposed Intervenors promotes judicial economy by allowing directly affected stakeholders—Republican candidates and a national political committee—to address the discrete legal and factual issues governing who may vote and how an election-eve injunction would operate administratively and competitively, without expanding the underlying merits litigation.

*First*, courts apply the same timeliness analysis discussed under Rule 24(a) to permissive intervention under Rule 24(b). As explained, Proposed Intervenors promptly moved to intervene for the limited purposes of opposing the CRC's motion for TRO and preliminary injunction, which would change—by potentially millions—*who* may participate in the Republican primary elections. Proposed Intervenors filed their motion and proposed opposition brief three days after the CRC filed its motion and consistent with deadline set for the Secretary to respond to the CRC's motion. The timing of Proposed Intervenors' motion and opposition therefore will not prejudice any party.

*Second*, the CRC's requested relief and Proposed Intervenors' defenses concern common questions of law and fact. Indeed, a TRO or injunction barring unaffiliated

12

voters from voting in Colorado's Republican primary elections, as state law presently

allows, would impose significant disruption to campaigns, candidates, and political

committees on the eve of the Republican primary elections. Just as problematic, a

judicial order requiring one major political party (the Republican Party) to close their

primary elections while allowing the other major political party (the Democratic Party) to

proceed with open primaries would result in a distinct competitive disadvantage to

Proposed Intervenors. Not only would a last-minute change in the rules fundamentally

shift the competitive landscape of the Republican primary elections,[2] but denying

Proposed Intervenors the benefit of valuable electoral information during an open

primary (e.g., which unaffiliated voters voted a Republican ballot; was this the first time,

second time, third time, or fourth time they voted a Republican ballot; did high-

propensity unaffiliateds vote a Republican ballot; did low-propensity unaffiliateds vote a

Republican ballot; and so on[3]) would significantly disadvantage the candidate

Intervenors and the NRCC. As partisan officeholders, candidates, and political

committees, Proposed Intervenors have no choice but to intervene in this matter and

---

[2] *See Bost*, 146 S. Ct. at 520–21 ("Departures from the preordained rules cause [candidates] particularized and concrete harm. The same is true of competitors in other contests. Each runner in a 100-meter dash, for example, would suffer if the race were unexpectedly extended to 105 meters. Whether a particular runner expects to finish strong or fall off the pace in the final five meters, all would be deprived of the chance to compete for the prize that the rules define. The fastest to run 105 meters has not won the 100-meter dash." (footnote and citation omitted)).

[3] This type of information gleaned from participation in primary election is valuable data for candidates and political committees in the general election.

oppose a TRO or preliminary injunction to preserve their competitive advantage—and prevent competitive harm—in what will be a highly consequential general election.

## Conclusion

Proposed Intervenors request an order granting intervention as of right under Rule 24(a)(2) for the limited purpose of opposing the TRO and preliminary injunction, including filing the attached proposed opposition brief and participating in any hearing, or alternatively permissive intervention under Rule 24(b) on the same limited basis.

Respectfully submitted this 23rd day of April 2026.

*s/ Julian R. Ellis, Jr.*
Christopher O. Murray
Julian R. Ellis, Jr.
Erin M. Gust
**FIRST & FOURTEENTH PLLC**
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-4937
Emails: chris@first-fourteenth.com
        julian@first-fourteenth.com
        erin@first-fourteenth.com

*Attorneys for Proposed Intervenor-Defendants National Republican Congressional Committee, Jeff Hurd, Lauren Boebert, Jeff Crank, and Gabe Evans*

14

## Certificate of Service

I certify that I filed the foregoing motion with the Clerk of the Court using the

CM/ECF system on April 23, 2026, which will send notification of such filing to all

counsel of record.

*s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.
**FIRST & FOURTEENTH PLLC**