**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY,
an unincorporated nonprofit association, on behalf of itself and its members,

    *Plaintiff*,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

**PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE**

---

Plaintiff Colorado Republican Party ("the Party"), by and through undersigned counsel, opposes the Motion to Intervene filed by Christopher Murray and others at Murray's law firm[1] on behalf of the National Republican Congressional Committee (NRCC), Congressman Jeff Hurd, Congresswoman Lauren Boebert, Congressman Jeff Crank, and Congressman Gabe Evans. As this Court has previously held, individual members of a political party do not have standing to assert (or, necessarily, oppose the assertion of) the Party's own constitutional rights to freedom of association.

I.    **Background**

At its State Central Committee meeting in September 2021, the Colorado Republican

---

[1] Mr. Murray previously represented the Party in matters involving Proposition 108. The interests he now advances are adverse to the Party's current position without written consent.

Plaintiff's Opposition to Motion to Intervene - 1

Party unanimously approved a resolution authorizing the "Republican Party of Colorado, its members, or both," to bring a lawsuit challenging the constitutionality of Colorado's Semi-Open Primary Law, Proposition 108. When Party leadership had not initiated a lawsuit after several months, a group of Party members, individually and as part of an unincorporated association of Colorado major party candidates, leaders, and voters called "People for Association Rights and Bi-Partisan Limited Elections," or "PARABLE," filed a lawsuit in February 2022 seeking declaratory and injunctive relief against further implementation of Proposition 108. *PARABLE v. Griswold*, No. 22-cv-00477, Complaint (Dkt. #1) ¶¶ 1, 3. Among the named individual plaintiffs in the case were two candidates on the ballot for the 2022 primary election. *Id.* ¶¶ 4, 5.

This Court, Senior District Judge Kane presiding, dismissed most of the case, including the same Freedom of Association claims at issue here, for lack of standing.[2] "The statutory choice provided by Proposition 108 is one to be made exclusively by Colorado's political parties," the Court held. *PARABLE,* Mem. Op. & Order on Mot. to Dismiss, Dkt. #61, pp. 11-12 (attached hereto as Exhibit A). "Any constitutional harm that accompanies the limits inherent in that choice inures to the parties, and not to their individual members," the court added. *Id.* at 12. Elaborating, the court stated: "Plaintiffs' forced association claims involve 'a right to associate for the purpose of engaging in those activities protected by the First Amendment,' such as collective speech and assembly—a right unique to the Party." *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). The court acknowledged that interference with the Party's associational rights "may burden the individual party members to some extent," but it held that "that secondary impact does not permit [the individual members] to assert the party's rights as their own."

---

[2] It dismissed the remaining Equal Protection claim by the individual voters on the merits.

Plaintiff's Opposition to Motion to Intervene - 2

"Plaintiffs 'are in no position to rely on the right that the First Amendment confers on political parties to . . . select the candidate of the party's choosing,'" the court added. *Id.* (quoting *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 (2008)).

In the *PARABLE* case, this Court made the same holding with respect to the compelled speech claim. "A member of a political party," such as proposed intervenors here, "suffers no constitutional injury when denied the preferred method for selecting his party's nomination of a candidate for office," the court held. *Id.* at 13-14. "If a primary election statutory scheme impacts a party's right to free speech, and therefore its members' right," the court added, "then it is the party that must speak up on behalf of its collective members. The injury is personal to the collective—the party—and not to the individual members." *Id.* at 14.

The present case was filed in July 2023 *by the Party* itself after new leadership took the helm, once again challenging Proposition 108 as unconstitutional. At its September 2023 meeting, the Party's State Central Committee reiterated its commitment to the legal challenge, as well as its desire to eliminate the unaffiliated voter mandate and allow it to return to primary elections where only members of the Party were allowed to help choose the Party's nominees. It sought a preliminary injunction (albeit unsuccessfully) in January 2024 (Dkt. Nos. 39, 69), engaged in discovery, and filed a motion for summary judgement in April 2025 (Dkt. # 103), all with the aim of having the unaffiliated voter mandate of Proposition 108 declared an unconstitutional infringement on *the Party*'s freedom of association protected by the First Amendment.

Following this Court's March 31, 2026 Order holding that the unaffiliated voter mandate imposed a severe burden on *the Party*'s associational rights and would therefore be unconstitutional unless *the Party* had a reasonable opportunity to opt out of that mandate, *the Party* filed an

emergency motion for temporary restraining order and/or preliminary injunction seeking to prevent the Secretary of State from transmitting Republican primary ballots to unaffiliated voters. The motion was based on this Court's March 31, 2026, ruling, given that the Party did not have a reasonable opportunity to opt out of the unaffiliated voter mandate for the upcoming June 30, 2026, primary election.

Proposed intervenors include members—elected officials who are candidates for re-election—of the Party seeking to block their own Party's motion. For the reasons set out below, they have no standing to challenge a decision of their own Party. Neither does the NRCC, which raises claims based on its support of those candidates.

**II.    Application of *PARABLE* to the Putative Intervenors**

Proposed intervenors stand in the same position as the candidate Plaintiffs in the *PARABLE* litigation and lack standing for the same reason the Plaintiffs in that case were held to lack standing. Individual members of a political party—even candidates of that political party—have no standing to assert (or oppose the assertion of) the associational rights of the party itself.

The Fourth Circuit's decision in *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007), bolsters that point. Under the Virginia law at issue in that case, an incumbent office holder had the right to select the method by which his political party would nominate candidates. *Id.* at 362 (citing Va. Code Ann. § 24.2–509(B) (2006)). The particular incumbent in the dispute at issue chose an open primary election as the nomination method. The court held that, *as applied*, the unaffiliated-voter mandate imposed upon the party by the incumbent's selection of the open primary violated the party's First Amendment associational rights. The court rejected the argument that the incumbent elected official should be viewed as acting on behalf of the party. "Simply because a

legislator belongs to a political party," it held, "does not make her at all times a representative of party interests." *Id.* at 369 (cleaned up, quoting *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 225 n.15 (1989)).

The Supreme Court's recent decision in *Bost v. Illinois State Bd. of Elections*, 146 S.Ct. 513 (2026), does not alter *PARABLE*'s lack-of-standing conclusion. In *Bost*, the Supreme Court held that candidates have standing to challenge state election laws that allowed for the receipt and counting of ballots for up to two weeks after the election. Candidates have a particularized interest in a fair election process conducted *by the government*, the Court held, but it did not address anything dealing with whether candidates have standing to demand a *party-nomination* process different than the one selected by the candidate's party itself.

According to Colorado law and the Republican Party's own bylaws, it is *the Party*, via its State Central Committee, that has the "power to make all rules for party government" and the "full power to pass upon and determine all controversies concerning the regularity of the organization of that party." C.R.S. §§ 1-3-105, 1-3-106; 2025 Bylaws Art. III, § B.[3] Both of these powers are, under century-old controlling caselaw, non-reviewable by courts, even when challenged by individual members of the Party. *See People ex rel. Lowry v. Dist. Ct. of Second Jud. Dist.*, 32 Colo. 15, 25, 74 P. 896, 899 (1903).

The Party's bylaws provide for the election of a Chairman who "Shall … [b]e the chief executive officer of the" State Central Committee. Art. V, § B.1.a. The bylaws also provide for the establishment of an Executive Committee, which has the power to "[h]ear and determine

---

[3] The current version of the bylaws, which became effective January 1, 2025, are attached as Exhibit C to the Declaration of Alexander Haberbush, filed in support of the Party's Emergency Motion, Dkt. # 138.1.

party controversies, … subject to review by the" State Central Committee. Art. IX, § B.4. The Party also meets annually in convention as a State Assembly, and state law designates the State Assembly, when meeting, as the highest authority of the Party "to pass upon and determine all controversies concerning the regularity of the organization of" the Party. C.R.S. §§ 1-3-106(1), (2). Although there is an unresolved dispute within the Party as to whether the State Assembly, the State Central Committee, or the Party Chairman has authority to make tactical litigation decisions such as whether to have filed the instant Emergency Motion,[4] there is no dispute about whether individual members of the Party, even candidates or incumbent elected officials, have such authority. They do not.

### III.     Laches and *Purcell*

The putative intervenors who are candidates contend that they have their own particularized injury arising out of laches and *Purcell* doctrine concerns. The Party has addressed in its Emergency Motion why neither doctrine should preclude the granting of the Emergency Motion under the circumstances of this case. Both doctrines are affirmative defenses that must be asserted by the defendant Secretary of State, who has the burden of proof. We are aware of no case where individual party members sought to assert such a defense in order to challenge a litigation decision of their own party. Moreover, one of the requirements for intervention as of right is that existing parties in the case will not or may not adequately represent any interest the putative intervenors might have in the case. Fed. R. Civ. P. 24(a)(2). *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 691 (1961); *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d

---

[4] That dispute is immaterial at present, as all three claimants to that authority are in agreement regarding the filing of the instant Emergency Motion.

1038, 1042 (10th Cir. 1996). Although the burden of demonstrating inadequacy of representation may be "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1030 (10th Cir. 2024), it is not met here. A proposed intervenor's differing underlying motives do not render existing representation inadequate when the existing party is aggressively advancing the exact same legal defenses. The Secretary is already vigorously raising the same laches and *Purcell* doctrine arguments in opposition to the Party's Emergency Motion that the putative intervenors seek to raise here.

In any event, *PARABLE* should control here. As noted above, the court in that case acknowledged that interference with the Party's associational rights "may burden the individual party members to some extent," but it held that "that secondary impact does not permit [the individual members] to assert the party's rights as their own." *PARABLE,* Mem. Op. & Order on Mot. to Dismiss, Dkt. #61, at 12.

## IV.    The Putative Intervenors Do Not Assert Protectable Interests.

The concerns raised by the putative intervenors are both overblown and contrary to the constitutional right to freedom of association asserted by the Party. They assert that they have already designed campaign strategies targeted to unaffiliated voters. Mot. to Intervene at 7. Should this Court grant the Party's Emergency Motion and enjoin the Secretary from transmitting Republican primary ballots to unaffiliated voters as an unconstitutional violation of the Party's freedom of association, nothing in that order would preclude the putative intervenor candidates from appealing to those same voters by simply inviting them to register as Republicans. State law permits unaffiliated voters to register with a political party up to 22 days before the primary election, which would be June 8th this year. C.R.S. § 1-2-219(1).

Putative intervenor NRCC as well as the individual candidates also contend that they "will face asymmetric competitive harms, including loss of valuable primary data about unaffiliated participation that informs general-election strategy across federal and state races." Mot. to Intervene at 9. The putative intervenors do not explain how the loss of information about which unaffiliated voters would have voted in the Republican primary would be "asymmetric," undoubtedly because it would not be. Democrat and Republican campaigns and their strategists would have access to the *identical* voter histories. Colorado law requires the Secretary of State to maintain a centralized, computerized statewide voter registration system. C.R.S. § 1-2-301(1). That system must include individual voter history in order for the Secretary to fulfill other statutory duties, such as the requirement in C.R.S. § 1-2-305(1) to generate a list of voters who submitted more than one ballot, or the requirement in C.R.S. § 1-2-305(4) to provide to each political party "a list of individuals who actually voted in such election." The voter registration records, including party affiliation and voter histories, "are public records subject to examination by any person." C.R.S. §§ 1-2-227(1)(a); 1-2-218.5. The fact that some unaffiliated voters declined to vote in the primary election would likewise be available to everyone. There are no "asymmetric competitive harms," therefore, and the putative intervenors' claim to the contrary is simply not accurate.

Beyond that, neither the individual candidates nor anyone else has a right to force *the Party* to accept the votes of unaffiliated voters once it has exercised its constitutional right to freedom of association not to have such voters participate in the selection of its nominees. As the

Plaintiff's Opposition to Motion to Intervene - 8

Supreme Court has repeatedly held, the freedom to associate includes the freedom not to associ-

ate. *See, e.g.*, *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).[5]

### V.     CONCLUSION

The putative intervenors' motion to intervene should be denied.

Dated: April 24, 2026.                                Respectfully Submitted,

/s/ *Alexander Haberbush*                            /s/ *Randy B. Corporon*
Alexander Haberbush                                  Randy B. Corporon
CONSTITUTIONAL COUNSEL GROUP                         LAW OFFICES OF RANDY B. CORPORON P.C.
444 W Ocean Boulevard, Suite 1403                    5445 DTC Parkway, Suite 825
Long Beach, CA 90802                                 Greenwood Village, CO 80111
Telephone: (562) 435-9062                            Telephone: (303) 749-0062
E-mail: ahaberbush@ccg1776.com                       E-mail: rbc@corporonlaw.com

---

[5] This also defeats the putative intervenors' request for permissive intervention. They have no claim to demand a nomination process contrary to the decision of their own party, so no "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Plaintiff's Opposition to Motion to Intervene - 9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Lacey Kalkwarf*
Lacey Kalkwarf