**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY, an unincorporated nonprofit association,
on behalf of itself and its members,

     Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

     Defendant,

and

NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, JEFF HURD,
in his capacity as a candidate for U.S. Representative for Colorado's 3rd
Congressional District, LAUREN BOEBERT, in her capacity as a candidate
for U.S. Representative for Colorado's 4th Congressional District, JEFF CRANK,
in his capacity as a candidate for U.S. Representative for Colorado's 5th
Congressional District, and GABE EVANS, in his capacity as a candidate for
U.S. Representative for Colorado's 8th Congressional District,

     Proposed Intervenor-Defendants.

---

**National Republican Congressional Committee, Congressman Jeff Hurd,
Congresswoman Lauren Boebert, Congressman Jeff Crank, and
Congressman Gabe Evans's Reply in Support of Their Motion for
Limited Intervention to Oppose Plaintiff's Motion for Temporary
Restraining Order and/or Preliminary Injunction**

---

Proposed Intervenor-Defendants timely seek to intervene as defendants in this

case for the limited purpose of opposing the CRC's motion for a temporary restraining

order and/or preliminary injunction to close the 2026 Republican primary in Colorado

weeks before ballots will be mailed. Proposed Intervenors do not seek to challenge the

CRC's general litigation position in this case, nor attack or otherwise undo the Court's core ruling. The CRC will, absent intervening legislation, be given an opportunity to opt out of Colorado's semi-open primary election in favor of nominating its candidates by party assemblies and conventions next cycle. The only question before the Court is whether, having been unable to opt for the assembly-convention model this cycle, and having failed to seek emergency relief before now, the CRC is entitled to the bespoke emergency remedy of a one-time closed primary election. On this narrow question, four incumbent Republican Members of Congress and the national party committee dedicated to their reelection have a legally protectable interest because of the competitive disadvantage forced on them if CRC's motion is granted. Proposed Intervenors should be permitted to vindicate their interest before this Court.

### Reply in Support of Motion to Intervene

### I.    Proposed Intervenors Established They Have a Right to Intervene

The CRC only disputes two of the four Rule 24(a) prongs: (1) whether Proposed Intervenors have legally protectable interests in the Court changing the rules defining *who* may vote in the upcoming Republican primaries, and (2) whether the Secretary's nonpartisan, administrative defense against emergency relief is adequate to represent Proposed Intervenors' admittedly partisan, competitive interests. None of the CRC's arguments present an obstacle to Proposed Intervenors' intervention.

***Legally protectable interests.*** The CRC's no-legally-protectable-interest argument fails from the start. In *San Juan County, Utah v. United States*, the en banc Tenth Circuit held "that parties seeking to intervene under Rule 24(a) or (b) need not

establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013).[1] Setting aside whether a traditional-standing analysis makes sense for limited-intervention *defendants*, as Proposed Intervenors are, the CRC cannot dispute that it and the Secretary have standing; therefore, it is settled that "the federal court has a Case or Controversy before it regardless of the standing of [Proposed] [I]ntervenor." *See id.* That resolves any contention over Proposed Intervenors' "standing." (*See* Resp. at 2–6, Doc. 150 (arguing Proposed Intervenors "have no standing" under *Parable v. Griswold*, No. 22-cv-00477-JLK, slip op. 11–12 (D. Colo.), Doc. 61).)

That said, Proposed Intervenors do have standing, and the Supreme Court's recent decision in *Bost v. Illinois State Board of Elections* unequivocally confirms Proposed Intervenors' legally protected interests (and standing) in opposing the CRC's emergency motion. Candidates, and the political committees that support them, "have an obvious personal stake in how [election] result[s] [are] determined and regarded," and "[d]epartures from the preordained rules cause them particularized and concrete harm." *Bost v. Ill. State Bd. of Elections*, 607 U.S. ----, 146 S. Ct. 513, 520 (2026). *Bost*

---

[1] The exception to this rule is when an intervenor pursues relief not requested by an existing party. *Kane Cnty., Utah v. United States*, 928 F.3d 877, 886 (10th Cir. 2019) (citing *San Juan Cnty.* and recognizing *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), limited the Circuit's en banc ruling in *San Juan County* in this one respect). Here, Proposed Intervenors and the Secretary seek the same remedy—denial of the CRC's emergency motion—albeit to protect different interests.

thus teaches that candidates (and political committees like the NRCC) have concrete, particularized interests in unlawful changes to election rules.

Here, the CRC is asking the Court to alter election rules on the eve of the primary elections. The change: fundamentally redefining the composition of the electorate in the soon-to-start Republican primaries by disqualifying millions of voters in Colorado from participation. Proposed Intervenors of course have an "obvious personal stake" in whether the Court should disqualify millions of voters that, as of today, are qualified to vote for the candidate Intervenors. This is the sort of goalpost shift addressed in *Bost*. *See id.* at 520–21. For months, Proposed Intervenors have campaigned and positioned themselves for electoral success based on unaffiliated voters' participation in Colorado's Republican primary elections. Changing who may vote—not just how votes are counted—days before voting begins is a fortiori rule change affecting that stake.[2]

The rules change advanced by the CRC is not a mere practical inconvenience. As the Supreme Court recognized in *Bost*, changes to election rules "might require [a candidate] to expend additional resources." *Id.* at 519. Sunk campaign costs and forced resource reallocation[3] in the final days before a primary election (that the candidates of only one political party will bear) are the types of harms identified in *Bost*.

---

[2] Again, Proposed Intervenors request limited intervention to oppose the emergency relief requested by the CRC. They do not oppose the merits finding of the Court—just the proposed preliminary relief and the timing of that relief.

[3] The CRC's argument that the harm can be mitigated because Proposed Intervenors have until 22 days before the primaries to convince unaffiliated voters to change their affiliation (Resp. at 7, Doc. 150), proves Proposed Intervenors' point on the forced resource allocation (*see* Proposed Interventors' [Proposed] Opp'n to the CRC's Mot. at 11–12, Doc. 145-6 (discussing the same).)

The CRC dismisses *Bost* as addressing only "government-imposed" ballot-counting rules. (Resp. at 5, Doc. 150.) That is a distinction without legal significance. The emergency-injunctive relief sought here is a government (judicial) order that will alter the election rules applicable to the primary races. *Bost* itself used broad language: candidates have a stake in "the rules that govern" their elections, 146 S. Ct. at 519, without limiting that principle to legislatively imposed rules. Further, a court-ordered injunction *is* a government action that alters election rules. There is no good reason for treating a legislative rule change differently from one imposed by the judiciary for purposes of candidate standing—both change the operative rules of the election. If anything, a last-minute judicial alteration is *more* disruptive than a legislative one because it comes without the notice and deliberative process that legislation provides.

At bottom, a candidate facing a contested primary (Representative Hurd in CD3) has a protectable interest when the composition of the primary electorate is altered days before balloting begins. (Rep. J. Hurd Decl., Doc. 145-2.) Even uncontested candidates (Representatives Boebert, Crank, and Evans) have cognizable interests: vote share and general-election data are concrete interests recognized in *Bost*. 146 S. Ct. at 519 ("It might decrease his vote share and damage his reputation."). (*See also* Rep. L. Boebert Decl., Doc. 145-5; Rep. J. Crank Decl., Doc. 145-3; Rep. G. Evans Decl., Doc. 145-4.) Further, the candidate Intervenors' general-election data interest and the NRCC's asymmetric data harm are two sides of the same coin—they both flow from the one-party-only closure.

As for NRCC's interests, it has an independent institutional interest because its mission of electing Republicans to Congress is directly affected by a one-party-only primary closure that skews general election competitive data. (*See* R. Dollar Decl., Doc. 145-1.) The CRC minimizes the NRCC's interest on factual grounds based on existing access to voter *histories* in the statewide registration system. (Resp. at 8, Doc. 150.) But historical data cannot replace the data gained through unaffiliated voters' participation in *this year's* semi-open primaries. Take one data point: which unaffiliated voters chose to engage with Republican candidates during the 2026 primary cycle signals likely general-election behavior. Data like this gathered during Colorado's semi-open primaries are critical to the NRCC (and all Republican candidates) during the general election because they inform campaign plans, voter-contact universes, resource allocations, and messaging to these voters. This prospective data cannot be reconstructed from existing records. To make matters worse, if the Court grants emergency relief and closes the Republican primary election but not the Democratic primary election, this harm will asymmetrically be felt by Republican candidates and committees only. The asymmetric data loss that would result from closing only Republican primaries is itself a concrete, particularized harm to the NRCC.

In sum, the CRC's no-protectable-interest argument turns on the belief that candidates have no legally protected stake in who gets to vote for them days before balloting begins—a proposition *Bost* forecloses. Under *San Juan Cnty.* and *Bost* together, Proposed Intervenors' interests are not only protectable; they are obvious.

***Inadequacy of existing representation.*** The CRC concedes the burden is "minimal" and that Proposed Intervenors only need to show the Secretary's representation "may be" inadequate. *Kane Cnty.*, 928 F.3d at 892. (*See also* Resp. at 7, Doc. 150.) The Tenth Circuit has repeatedly held that a government entity representing the public interest cannot simultaneously represent the particular private interests of proposed intervenors. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001). The Secretary's interests here are explicitly *nonpartisan*: orderly election administration and compliance with state law. Proposed Intervenors' interests are explicitly *partisan*: winning elections, preserving competitive advantages, and supporting Republican candidates. True, Proposed Intervenors and the Secretary raise similar arguments in opposition to the CRC's emergency motion—principally, under *Purcell* and the doctrine of laches. (*See* Resp. at 7, Doc. 150.) But this is not because Proposed Intervenors and the Secretary are vindicating the same interests. It is because both *Purcell* and the doctrine of laches so clearly apply and foreclose relief. Nonetheless, what matters for purposes of intervention is the Secretary raises these arguments to protect election administration, not to protect candidate competitive interests. These *reasons* matter under the adequacy-of-representation prong.

Lastly, if the Court fashions a remedy that is partial, phased, or conditioned (to be clear, it should not), the Secretary has no incentive to argue for the remedy least harmful to Republican candidates specifically. The Proposed Intervenors do. The same

7

is true for appellate rights. The Proposed Intervenors' appellate strategy will differ from the Secretary based on the unique interests they represent.

## II.    Alternatively, the Court Should Grant Permissive Intervention

The CRC's only response to permissive intervention is in a two-sentence, concluding footnote. (*See id.* at 9, n.5.) Its argument: because Proposed Intervenors supposedly have no "claim" to demand a particular nominating process, they have no "claim or defense that shares with the main action a common question of law or fact." (*Id.* (quoting Fed. R. Civ. P. 24(b)(1)(B).) But the CRC misses the point. Proposed Intervenors' limited intervention is not predicated on a "claim" to demand a particular nominating process; rather, it is to challenge preliminary and emergency injunctive relief in the form of a judicial order that would change the election rules days before primary elections in which the candidate Intervenors are competing. The common-question requirement is clearly met: the legal and factual issues presented by Proposed Intervenors—*Purcell*, laches, the practical effects of emergency relief at this late hour, and the competitive impact of a one-party-only closure—are directly implicated by the CRC's emergency motion. Permissive intervention is within the Court's sound discretion, *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 689–90 (D. Colo. 2008), and granting it here advances the Court's interest in a complete record before issuing emergency relief affecting a federal and state elections.

## III.    Purcell and Laches

The CRC does not address the merits of Proposed Intervenors' arguments under *Purcell* and laches, instead it argues that these are "affirmative defenses" that "must be

raised by a defendant." This, of course, begs the question. Proposed Intervenors seek limited intervention as defendants. Provided they are granted intervention—and they should be for the reasons stated above—they may raise any affirmative defense available to them as defendants. Further, and more problematically, Proposed Intervenors are unaware of any federal case, let alone one in the Tenth Circuit, which treats the principle articulated in *Purcell v. Gonzales*, 549 U.S. 1 (2006), as an affirmative defense. Rather, it is routinely articulated as a principle applicable to equitable remedies in the context of impending elections that federal courts should "not alter the election rules on the eve of an election." *Abbott v. League of United Latin Am. Citizens*, 607 U.S. ----, 146 S. Ct. 418, 419 (2025) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (*per curiam*)).

**Conclusion**

Proposed Intervenors request an order granting intervention as of right under Rule 24(a)(2) for the limited purpose of opposing the TRO and preliminary injunction, including filing the proposed opposition brief attached to Proposed Intervenors' motion and participating in any hearing, or alternatively permissive intervention under Rule 24(b) on the same limited basis.

9

Respectfully submitted this 27th day of April 2026.

s/Christopher O. Murray
Christopher O. Murray
Julian R. Ellis, Jr.
Erin M. Gust
**FIRST & FOURTEENTH PLLC**
2 N. Cascade Avenue, Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-4937
Emails: chris@first-fourteenth.com
julian@first-fourteenth.com
erin@first-fourteenth.com

*Attorneys for Proposed Intervenor-Defendants National Republican Congressional Committee, Jeff Hurd, Lauren Boebert, Jeff Crank, and Gabe Evans*

## Certificate of Service

I certify that I filed the foregoing motion with the Clerk of the Court using the CM/ECF system on April 27, 2026, which will send notification of such filing to all counsel of record.

*s/Christopher O. Murray*

Christopher O. Murray
**FIRST & FOURTEENTH PLLC**