IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY,
an unincorporated nonprofit association, on behalf of itself and its members,

    *Plaintiff*,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

    *Defendant*.

---

**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION,
OR IN THE ALTERNATIVE, FOR RECONSIDERATION**

---

Plaintiff Colorado Republican Party ("the Party"), by and through undersigned counsel, submits the following reply in support of its emergency motion for temporary restraining order and/or preliminary injunction or, in the alternative, for reconsideration. [Dkt. #138]. The Party agrees with Secretary Griswold on one important point, namely, that "this Court should hold a prompt hearing" and issue a ruling "in advance of the May 1 statutory deadline to certify the content of the 2026 primary ballots," BIO at 1, or at least as shortly thereafter as possible.

**I.    The Party's Motion Is Neither Overbroad Nor Incompatible with the March 31 Order.**

Secretary Griswold asserts that the Party's Emergency Motion is both "overbroad" and "incompatible" with the Court's March 31 Order. BIO at 1. It is neither. Rather, as explained at length in the Motion itself, the relief sought is narrowly targeted only to the upcoming June 2026 primary, and the legal contentions made by the Party in support of the Motion are drawn directly from the holdings of the March 31 Order.

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 1

The Secretary mischaracterizes this Court's March 31 Order by contending that the Order "preserved the binary choice" between a semi-open primary (in which unaffiliated voters may participate) and a convention or assembly. BIO at 3. If that were true, the Court would have granted summary judgment to the Secretary, but it did not. Instead, as noted in the Party's Motion, the Court expressly held that: 1) the unaffiliated voter mandate of the semi-open primary imposed a severe burden on the Party; and 2) the governmental interests were not sufficient to overcome that burden. Order at 16, 18-19. That would render the semi-open primary unconstitutional unless, as the Court expressly stated, the Party has a reasonable opportunity to opt out of the semi-open primary and its unaffiliated voter mandate. *Id.* at 20. No such "reasonable" opt-out opportunity existed for the June 2026 primary because, as this Court further held, the supermajority vote requirement that existed at the time was itself unconstitutional. *Id.* at 21.

Neither *Woodruff* nor *Garrison* are to the contrary. In *Woodruff*, the Tenth Circuit held that the district court had not rewritten the election code by requiring the Plaintiff to comply with all statutory requirements other than the one found to be unconstitutional. *Woodruff v. Herrera*, 623 F.3d 1103, 1107, 1110 (10th Cir. 2010). The same is true here. The Party is not seeking an order rewriting any statutory requirements for the conduct of elections *other than* the one that is unconstitutional as applied, namely, the unaffiliated voter mandate for the upcoming June 2026 election. And in *Garrison*, the Tenth Circuit noted that a court's "equitable power to enjoin *otherwise lawful activity* ... is not often necessary or appropriate, and is therefore infrequently exercised." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961-62 (10th Cir. 2002) (emphasis added). The flaw in the Secretary's argument is her claim that the injunction "would prohibit the Secretary from performing her *lawful* duties." BIO at 4. It would not. It

would simply prevent the Secretary from violating the Party's associational rights by implementing the statute that *unconstitutionally* forces the Party to associate with unaffiliated voters.[1]

Nor does the Secretary improve her argument by labeling the requested relief "mandatory." BIO at 2 n.1. The Party asks the Court to restrain the Secretary and county election officials from providing Republican primary ballots to unaffiliated voters for the June 2026 primary. That is prohibitory relief; it prevents the continued enforcement of the unconstitutional unaffiliated-voter mandate as applied to this election. It does not require the Secretary to "invent" a new election system. Even if the Court treats the injunction as disfavored because it would alter the status quo for the 2026 primary, the Party satisfies any heightened showing because this Court has already held that forced unaffiliated-voter participation imposes a severe associational burden absent a reasonable opt-out, and no reasonable opt-out existed for the 2026 cycle.

## II.     The Secretary's Laches and *Purcell* Concerns Are Based on Exaggerated and Incorrect Claims of Deliberate Delay, Chaos, and Impossibility.

The cases cited by the Secretary arguing laches and *Purcell* are materially distinguishable. Each involved either substantially shorter timelines before an election, alteration of completed ballot content, or relief that required systemic changes to election procedures. None involved the narrow, administrative adjustment at issue here, where ballot content remains unchanged, and ballots have not yet been printed or mailed.

---

[1] The Secretary also contends that the injunction "may also prevent Colorado from complying with several other statutory provisions, including the May 1 deadline to certify ballot content and the May 16 federal deadline to mail military and overseas ballots." BIO at 4 n.3. Nothing in the relief sought by the Party affects ballot content or its certification. And as long as a ruling on the requested injunction is issued relatively soon, the May 16 deadline for transmitting UOCAVA votes will also not be affected. Indeed, until the ballot content is certified on May 1, there are no ballots that could be printed in preparation for the UOCAVA mailings.

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 3

The Secretary next urges that the slight, 20-day delay between the issuance of this Court's March 31 Order and the filing of the Emergency Motion "undermines its claim that it will suffer irreparable injury." BIO at 13. But the main case it cites cuts strongly *against* the Secretary's claim. The delay at issue in *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016), was "at least thirty months." Even then, the Tenth Circuit rejected the government's claim that the 30-month delay at issue in the case undercut the finding of irreparable harm. "Delay is only one factor to be considered" in the irreparable harm analysis, it held. "The question instead is whether the delay was reasonable, was not a decision by the party to 'sit on its rights,' and did not prejudice the opposing party." *Id.*

Contrary to the Secretary's assertion, the *Party* did not sit on its rights. As explained previously, the Party's governing bodies were consistent: the State Central Committee had authorized and reaffirmed this litigation to secure a Republican nomination process limited to Republican voters, and the State Assembly then directed counsel to seek immediate injunctive relief for the 2026 primary. The obstacle was not the Party sleeping on its rights; it was a departing Chairman, acting through then-General Counsel, who instructed counsel not to file in defiance of the Party's express wishes. Haberbush Decl. ¶¶ 4–11; Grossman Decl. ¶¶ 3–9. As the Tenth Circuit recognized in *Herald Co. v. Seawell*, when members or shareholders become dissatisfied with management, the ordinary remedy is not for them to manage the entity themselves, but to "install new management." 472 F.2d 1081, 1094 (10th Cir. 1972). That is precisely the problem here: under the Party's bylaws, removal of the Chairman would have required a special State Central Committee meeting called for that purpose, with at least fifteen days' written notice. CRC Bylaws Art. V § C. The outgoing Chairman's resignation was already set to take effect before that

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 4

process could provide relief. The Party did not sit on its rights; its outgoing Chairman did.

Neither would the government be harmed in any non-trivial way were the injunction to issue. The Secretary's claims to the contrary are greatly exaggerated, and many of the alterations to the election process that the Secretary claims would be necessary are simply not affected by the emergency relief sought by the Party here at all.

The Secretary's declarant, Hilary Rudy, acknowledges, for example, that the SCORE system already designates which kind of ballot style each voter is to receive. Rudy Decl. ¶ 8. As can be ascertained from the Secretary's own publicly-available training module and regulations, no change in the number of ballot styles would be required were the Party's motion to be granted. For major parties and unaffiliated voters, there are only three: Republican, Democratic, and Un-affiliated. The first two would not change, and the third would only need to be modified so that the ballot style definition would instruct print vendors to include only the Democrat primary bal-

lot. For in-person voters, election workers would simply desig-nate the "Democratic" ballot style. See 8 CCR 1505-1.1.8 (defin-ing "ballot style"); Secretary of State Election Judges Training Course, Section 4: Issuing Ballots (depicting SCORE screenshot for unaffiliated voter ballot selection.[2]



Ms. Rudy also acknowledges that the SCORE system is used to generate the data exports that counties then use to send to their print vendors reflecting which ballot style should be used

---

[2] The above picture reflects the ballot selection portion of the SCORE screen for in-person unaf-filiated voters. The full slide is available at https://www.coloradosos.gov/pubs/elections/electionJudge/courses/IssuingBallots/in_person_paper_ballot_style.html.

for each voter. Rudy Decl. ¶ 9. Neither of those processes would change. By Ms. Rudy's own admission, the print vendors don't utilize the SCORE system to decide how many ballot packages should be printed and mailed for each category of voter; that information comes directly from the counties, based on the data export from the SCORE system. Rudy Decl. ¶ 16.c.

Ms. Rudy then claims that the SCORE system is used to determine which ballot style a voter is eligible to receive if the voter chooses to vote in person. Rudy Decl. ¶ 10. What she omits is how the SCORE system is used to make that determination. When a voter shows up at a vote center to vote in person, the voter's registration is pulled up in the SCORE system. If the registration is "Republican," the voter is given a Republican ballot. If "Democrat," a Democratic ballot. If "Unaffiliated," the screen shows both. *See supra* at 5. Under current law, the voter is then asked which ballot he or she would like to receive, and the SCORE system allows that choice to be recorded. Should the Party's motion be granted, only a Democratic ballot could be selected. This is not rocket science, and it would not take months to educate poll workers.

Ms. Rudy also contends that the already-approved election plans in each of the 64 counties would also need to be altered, but she greatly exaggerates what would be affected. Rudy Decl. ¶ 13. The "statutorily required information related to voter service and polling centers and ballot drop-off locations" will not change. The "number of election judges, check-in stations, printers, and other equipment that will be in use at centers" will not change. The forms and instructions that the counties will use for Republican and for Democratic voters, including the outgoing and return envelopes, will not change. As the Party noted in its Motion, the only thing that would need to be changed is the wording of the instructions for unaffiliated voters, and those instructions can easily be changed to explain why the unaffiliated packet only has Democrat

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 6

ballots. The language should be as simple as: "The Republican Party has exercised its constitu-

tional right to have only Republicans participate in the Republican primary election this year; as

a result, only a Democrat primary election ballot is enclosed."[3] Again, not rocket science, and

such a change would certainly not "likely take weeks" "to re-review and re-approve," as Ms.

Rudy claims. Rudy Decl. ¶ 28.

The instructions sent to voters by mail or provided in person could also notify voters of

their statutory right to re-register as Republicans if they wished to vote in the Republican pri-

mary, thereby addressing one of the Secretary's concerns about voter education. Unaffiliated vot-

ers may change their party affiliation online or by fax, email, or mail before June 8, or "at any

time" up to and including election day if in person. C.R.S. § 1-2-218.5(2); 8 CCR § 1505-1:2.5.4.

Ms. Rudy also asserts, without providing the basis for her asserted personal knowledge,

that "[s]ome counties have already completed" the process of printing voter instructions and en-

velopes and that "in some counties, ballot envelopes are pre-stuffed with voter instructions."

Rudy Decl. ¶ 27. The Party has already acknowledged that the unaffiliated voter instructions

would need to be modified and, if already pre-printed, reprinted, but any such cost would likely

be more than offset by the reduction in costs from printing only 1 ballot instead of 2 for each un-

affiliated voter. As for the claim that some counties have pre-stuffed mailing envelopes with

voter instructions, there is no evidence that such has occurred, and it would be non-sensical for

county print vendors to have run their automated envelope-stuffing process before all of the

---

[3] To avoid any attempt by the Secretary to make disparaging statements about the Republican Party's decision to exercise its constitutional rights and exclude unaffiliated voters, if this Court grants the Party's Emergency Motion, it should specify the above or similar language that should be included on the instruction sheet for unaffiliated voters.

inserts—including the ballots—are available.[4]

The Secretary claims that the SCORE system "is currently programmed so that all unaffiliated voters will be mailed both a Republican and a Democratic ballot for the June primary," BIO at 7, but she provides no evidentiary support for that assertion. The SCORE system is "programmed" to indicate whether a voter is Republican, Democrat, or Unaffiliated.[5] Print vendors then insert Republican ballots in envelopes addressed to Republican voters, Democratic ballots for Democrat voters, and currently both for Unaffiliated voters. The only change that would be required is for print vendors to be instructed, via a modified unaffiliated voter ballot style definition, to insert only a Democrat ballot in the Unaffiliated voter packet when mailed. This hardly qualifies as requiring the counties to "scrap" their "carefully planned election procedures." And the requested injunction would not "direct the Secretary to violate *unchallenged* statutory deadlines and other provisions," BIO at 14, other than the unconstitutional unaffiliated voter mandate.

---

[4] Ms. Rudy also speculates that "[s]ome counties also may need to reprint or alter envelopes intended for unaffiliated voters," but she does not provide even a single example. Purely speculative claims of hardship do not suffice to establish hardship. *Cf., e.g., RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[5] The Secretary also claims that SCORE could not be used to ensure election judges do not receive ballots from ineligible voters "because its programming would show that unaffiliated voters are eligible to receive and submit Republican ballots." A "new manual process" would be required, she claims. BIO at 7. That is not accurate. As currently programmed, the SCORE system requires election workers to select "Republican" or "Democratic" ballot after the election worker prompts an unaffiliated voter to choose. If the injunction is issued, only "Democratic" ballot could be selected unless the voter chooses to first re-register as a Republican. No "new manual process" would need to be developed, and the only "retrain[ing] that would be required is a simple instruction that Republican ballots not be provided to unaffiliated voters absent re-registration—hardly creating the proliferating risk of human error that the Secretary claims. Ms. Rudy's related claim that "counties would need to work with their print vendors to have the vendor *manually* alter which ballot styles were issued to each voter" is likewise incorrect. Rudy Decl. ¶ 23 (emphasis added). The "ballot style" would not need to be "manually" altered; the unaffiliated voter ballot style would simply need to be modified to instruct print vendors to insert 1 instead of 2 ballots in the envelope. There is nothing "complex" about it. BIO at 11.

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 8

Not a single statutory deadline would be changed.

The Secretary's claims of disruption are exaggerated and unsupported. The requested injunction would not change ballot content, SCORE functionality, or election procedures—only that unaffiliated voters would receive a single Democratic ballot instead of two. No statutory deadlines would be affected, and implementation would require only a minor modification in the unaffiliated ballot style definition transmitted to print vendors.

In short, there is nothing credibly asserted by the Secretary that would create the kind of chaos, voter confusion, or risk to the integrity of Colorado's election she claims. All of the supposed harms the Secretary will suffer, to the extent they exist at all, would have been no different, or very little different, if the Emergency Motion had been filed immediately after this Court's March 31 order on April 1 or, more realistically, on April 6. Pre-printed instructions for unaffiliated voters would still need to be modified or reprinted. County clerks will still need to make a simple modification in the unaffiliated ballot style definition to instruct their print vendors to include only 1 rather than 2 ballots in the unaffiliated voter mailings by May 16 for UOCAVA voters or June 8 for other voters. Election office staff will still need to be instructed that, when appearing to vote in person, unaffiliated voters are not eligible to receive a Republican ballot unless they wish to re-register as a Republican.

There is ample time for each of those things to occur, even with the Motion having been filed two weeks later than it might otherwise have been. This is not prejudice at all, much less the kind of severe prejudice that would prevent a finding of irreparable harm on a clear constitutional violation. The Secretary bears the burden of demonstrating that the requested relief would create substantial disruption to the administration of the election. She has not done so. Notably,

Plaintiff's Reply In Support of Emergency Motion for TRO or PI - 9

the Secretary does not identify a single county that would be unable to comply with such an order within existing procedures.

Finally, the Secretary makes three arguments that third-party harms tip the balance of harms analysis against the injunction. First, she contends that "third-party rights" will be affected by the injunction, and that "weighs heavily" against the Party in the balance of harms analysis. The Supreme Court has already held, however, that unaffiliated voters have no right to participate in a political party's nomination process, as such would violate the Party's own constitutional right to freedom of association. *California Democratic Party v. Jones*, 530 U.S. 567, 583 (2000). Second, she expresses concern that some unaffiliated voters may not learn of the injunction and therefore be aware of the need to re-register if they wish to vote in the Republican primary, but any such concern is easily mitigated by including a notice of the re-registration option in the modified instructions sent to unaffiliated voters. Finally, she contends that candidates and their supporters have already spent time, money, and effort in reliance on a semi-open primary. For the reasons set out in the Party's opposition to the NRCC's motion to intervene, individual party members, including candidates, have no protectable interests in demanding a nomination process different than the one chosen by their own party.

Dated: April 28th, 2026                                       Respectfully Submitted,

/s/ *Alexander Haberbush*                             /s/ *Randy B. Corporon*
Alexander Haberbush                                      Randy B. Corporon
CONSTITUTIONAL COUNSEL GROUP                LAW OFFICES OF RANDY B. CORPORON P.C.
444 W Ocean Boulevard, Suite 1403           5445 DTC Parkway, Suite 825
Long Beach, CA 90802                                   Greenwood Village, CO 80111
Telephone: (562) 435-9062                           Telephone: (303) 749-0062
E-mail: ahaberbush@ccg1776.com             E-mail: rbc@corporonlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Lacey M. Kalkwarf*
Lacey M. Kalkwarf, Paralegal