IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY, an unincorporated nonprofit association, on behalf
of itself and its members,

     Plaintiff,

v.

JENA GRISWOLD, Secretary of State in her official capacity as Colorado Secretary of
State,

     Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction, or in the Alternative for Reconsideration of the March 31, 2026 Order for the 2026 Primary Only [Docket No. 138] and the National Republican Congressional Committee (the "NRCC"), Congressman Jeff Hurd, Congresswoman Lauren Boebert, Congressman Jeff Crank, and Congressman Gabe Evans's Motion for Limited Intervention to Oppose Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 145]. The Court has jurisdiction pursuant to 28 U.S.C. §1331.

I.    **BACKGROUND**

On July 31, 2023, the Colorado Republican Party ("the Party") filed this case, challenging the constitutionality of Colorado's semi-open primary system. Docket No. 1. On December 22, 2023, the Party filed a motion for a preliminary injunction, asking that

the Court enjoin the Secretary from enforcing the semi-open primary system.  Docket No. 39 at 15.  The Court held a two-day evidentiary hearing on the preliminary injunction motion on January 23-24, 2024.  Docket Nos. 67-68.  The Court denied the preliminary injunction motion on February 2, 2024.  Docket No. 69.

On March 31, 2026, the Court denied the Secretary's motion for summary judgment and granted in part and denied in part the Party's motion for summary judgment.  Docket No. 130 at 21-22.  The Court found that the portion of Colo. Rev. Stat. § 1-4-702(1) requiring three-quarters of a major political party's state central committee members to vote to opt out of the semi-open primary system constitutes a severe burden on major parties' associational rights and is therefore unconstitutional. *Id.* at 20.  On April 20, 2026, the Party filed an emergency motion asking that the Court "bar[] the Secretary from including unaffiliated voters in the Republican primary ballot for the June 30, 2026 Colorado Primary Election."  Docket No. 138 at 15.  On April 23, 2026, the NRCC, Congressman Hurd, Congresswoman Boebert, Congressman Crank, and Congressman Evans (the "NRCC Defendants") filed a Motion to Intervene for the "limited purpose of opposing Plaintiff Colorado Republican Party's (CRC) emergency motion for a temporary restraining order and preliminary injunction that would exclude unaffiliated voters from the 2026 Republican primary elections just days before ballots are mailed."  Docket No. 145 at 1-2.

## II.    ANALYSIS

Pursuant to Colo. Rev. Stat. § 1-4-702(1), the deadline for the Party to opt out of the semi-open primary for the 2026 Primary Election was October 1, 2025.  The Party failed to opt out by the deadline.  *See* Docket No. 138 at 3.  As the Secretary notes, the

March 31 Order did not find unconstitutional that portion of Proposition 108 that gives major parties a choice between nominating candidates through a semi-open primary or by convention or assembly and requiring that they do so by the statutory deadline. *See* Docket No. 144 at 3; Colo. Rev. Stat. § 1-4-702(1). Since the time that the Court ruled that the three-fourths provision is unconstitutional, neither the Secretary nor the Colorado General Assembly has set forth a new mechanism for the Party to opt out of a semi-open primary or new conditions for doing so. Thus, the Party asks the Court to disregard a statutory deadline that the Party failed to challenge and to permit the Party to opt out, without a vote by the Party's state central committee, in contravention of Colo. Rev. Stat. § 1-4-702(1). *See* Docket No. 138 at 15. Furthermore, the Party asks the Court to order that the Secretary administer a closed primary, despite Proposition 108 not providing for a state-run closed primary. *See id.;* Colo. Rev. Stat. § 1-4-702(1). Under Colorado law, major parties only have two options for nominating their candidates: a state-run semi-open primary or a privately-funded convention or assembly. *See* Colo. Rev. Stat. § 1-4-702(1). Because the Party seeks relief that exceeds the scope of the March 31 Order and is not supported by Colorado law, the Court will deny the Party's motion.

Moreover, the Court finds that the Party's motion seeks relief that violates the doctrine established in *Purcell v. Gonzalez*, 549 U.S. 1 (2006). "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell*, 549 U.S. at 4 (citation omitted). Pursuant to the *Purcell* doctrine, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (citations omitted).

3

"*Purcell*'s rationale rests upon the notion that court orders affecting elections can themselves result in voter confusion and consequent incentive to remain away from the polls." *Archer v. Griswold*, 638 F. Supp. 3d 1246, 1259 (D. Colo. 2022) (internal quotation and alteration omitted) (quoting *Purcell*, 549 U.S. at 4-5).

The Colorado Primary Election is on June 30, 2026. *See 2026 Election Calendar*, Colo. Sec'y of State, https://www.sos.state.co.us/pubs/elections/Resources/ElectionCalendars.html (last accessed April 22, 2026). The first deadline for mailing primary ballots is May 16, 2026, the date by which county clerks must transmit mail ballots to overseas and military voters. *Id.* On May 1, 2026, the Secretary must certify the contents of the ballots. *See id.*

The Secretary has attached to her response the declaration of the Colorado Department of State's Deputy Elections Director, Hilary Rudy.[1] *See* Docket No. 144-1. Ms. Rudy states that, after the Secretary certifies the contents of the ballots, counties

---

[1] The Party challenges the accuracy of Ms. Rudy's declaration. *See* Docket No. 152 at 5-9. The Party contends that the "claims of disruption are exaggerated and unsupported." *See id.* at 9. For instance, the Party rejects Ms. Rudy's statement that some counties have already printed voter instructions and, even if that were true, the Party argues that there is no significant hardship. *See id.* at 7. Relying on the "Secretary's own publicly-available training module and regulations," which consist of screenshots of SCORE, the Party argues that "no change in the number of ballot styles would be required were the Party's motion to be granted." *See id.* at 5. The Party argues that re-educating election workers, who conduct in-person voting, on how to use SCORE to ensure that unaffiliated voters do not receive the Republican primary ballot "is not rocket science" and "would not take months." *Id.* at 6. For vote by mail, the Party contends that the "only change that would be required is for print vendors to be instructed, via a modified unaffiliated voter ballot style definition, to insert only a Democrat ballot in the Unaffiliated voter packet when mailed," which does not "qualif[y] as requiring the counties to scrap their carefully planned election procedures." *Id.* at 8 (internal citation omitted). The Court finds that the Party's challenge to Ms. Rudy's declaration is unsupported by a declaration of a person with personal knowledge and therefore fails to dispute the accuracy of Ms. Rudy's declaration.

immediately begin to "finalize the layout and appearance of their ballots," which "must be completed in a matter of days, so that counties can promptly send their ballot orders to the printers and printing can be completed in time to mail paper ballots to eligible military and overseas voters." *Id.* at 5, ¶ 16. The State relies on a system known as SCORE, which is a statewide voter registration and election system that is "used to manage the process of issuing, receiving, and validating election ballots." *Id.* at 2, ¶ 7. The declaration states that counties rely on SCORE to generate the information that they send to their print vendors, "reflecting which ballot styles should be printed and inserted in the envelopes and to be mailed to each voter." *Id.* at 3, ¶ 9. When voting in-person, SCORE is used to determine voters' "ballot eligibility and provide[] the voter with the ballot style for which they are eligible." *Id.* at 8, ¶ 25. SCORE also serves "as a backstop to ensure that voters do not vote ballots that they are not eligible to submit." *Id.*, ¶ 26. The declaration states that it would take approximately seven months to reprogram SCORE to ensure that unaffiliated voters do not receive the Republican primary ballot. *Id.* at 6, ¶ 18. To avoid error in SCORE's implementation during the election period, the State begins a "blackout period" once the ballots are certified, during which "no coding changes are introduced to SCORE as a matter of routine practice." *Id.* at 6, ¶ 19. Ms. Rudy states that the reason for the blackout period is because SCORE is a "real-time system," introducing software that "inadvertently either creates or errors or impacts other SCORE functionalities" creates disruptions that result in "substantial risks to the ongoing work counties are doing during the period leading up to the election." *Id.* The blackout period is scheduled to begin May 1, 2026. *Id.*

The Court finds that ordering the Secretary to exclude unaffiliated voters from the Republican primary – less than a month from the deadline for mailing primary ballots and only a few days before the deadline by which the Secretary must certify ballots – would create the kind of voter confusion that the *Purcell* doctrine is meant to prevent. The Court finds that the Secretary would be unable to reprogram SCORE in sufficient time to ensure that unaffiliated voters did not receive the Republican primary ballot. The Party's arguments to the contrary are unavailing. The Party contends that minor parties having until April 16 to opt out indicates that the Secretary is able to reprogram SCORE in time for the 2026 Primary Election. *See* Docket No. 138 at 7. However, Ms. Rudy states that "SCORE is already programmed to enable a minor party to exclude or include unaffiliated voters in their primary election, if they hold one." *Id.* at 13, ¶ 35. Furthermore, Ms. Rudy states that, "because unaffiliated voters are not automatically provided with minor party ballots, even if the minor party holds a primary election, a minor party's choice of whether to include or exclude unaffiliated voters from their primary election does not affect which ballots are automatically mailed to unaffiliated voters before the ballot mailing deadlines." *Id.*

The Party also argues that reprogramming SCORE for the 2026 Primary Election is possible because "the segregation of unaffiliated from party-registered voters is already operative in the SCORE system and part of the routine management of elections." *See* Docket No. 138 at 8. However, as discussed above, merely knowing which voters are unaffiliated does not change the fact that SCORE is currently programmed to ensure that unaffiliated voters receive the ballots of both major parties and would need to be reprogrammed. Furthermore, counties rely on SCORE when

6

transmitting information to the vendors that are responsible for preparing the envelopes containing the ballots.

Given that Proposition 108 passed in 2016, Ms. Rudy's declaration indicates that unaffiliated voters have become accustomed to receiving primary ballots from both major political parties. *See* Docket No. 144-1 at 10, ¶ 29. Ms. Rudy states that, "[i]f unaffiliated voters' eligibility to vote in the Party's primary were to change, the counties and the State would need to launch a substantial effort to educate voters about the change." *Id.* The Court finds that the State would be unable to engage in the necessary education effort before the 2026 Primary Election. Thus, there is a risk that unaffiliated voters will not be informed that they will not receive the Republican primary ballot unless they chose to affiliate with the Republican Party and will be unable to affiliate in time to vote in the Republican primary. Furthermore, as the Party acknowledges, some county clerks have likely already printed, if not transmitted, instructions on how unaffiliated voters can vote in the upcoming primary election, which would explain to unaffiliated voters that they should expect to receive the primary ballots for both major parties. *See* Docket No. 138 at 8. Given the voter confusion that would result from excluding unaffiliated voters and the state's inability to reprogram SCORE in time for the 2026 Primary Election, the Court finds, in the alternative, that the relief sought by the Party is barred by *Purcell*.[2]

---

[2] The NRCC Defendants seek to intervene for the "limited purpose of opposing the TRO and preliminary injunction." Docket No. 145 at 14. Given that the Court will deny the Party's motion for a TRO and preliminary injunction, the Court will deny the NRCC's motion to intervene without prejudice as moot.

III.    **CONCLUSION**

Therefore, it is

**ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order
and/or Preliminary Injunction, or in the Alternative for Reconsideration of the March 31,
2026 Order for the 2026 Primary Only [Docket No. 138] is **DENIED**.  It is further

**ORDERED** that National Republican Congressional Committee, Congressman
Jeff Hurd, Congresswoman Lauren Boebert, Congressman Jeff Crank, and
Congressman Gabe Evans's Motion for Limited Intervention to Oppose Plaintiff's Motion
for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 145] is
**DENIED without prejudice** as moot.

DATED April 28, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge