IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01948-PAB-KAS

COLORADO REPUBLICAN PARTY,
an unincorporated nonprofit association, on behalf of itself and its members,

      Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

      Defendant.

---

**DEFENDANT'S OPPOSITION TO RULE 54(b) MOTION
FOR RECONSIDERATION OF MARCH 31 ORDER (DKT. 156)**

---

This Court has rejected the Colorado Republican Party's (the "Party") request to exclude unaffiliated voters from its primary elections on three prior occasions. It (1) denied the Party's first Motion for Preliminary Injunction on February 2, 2024 (Dkt. 69); (2) rejected the Party's request to declare Proposition 108 invalid except to the limited extent that it "declared the three-fourths opt-out provision unconstitutional" in its March 31, 2026 summary judgment order ("MSJ Order") (Dkt. 130); and (3) denied the Party's request for "emergency" injunctive relief to exclude unaffiliated voters from its 2026 primary election on April 28, 2026 (Dkt. 153). The Court and the parties have thus addressed the Party's constitutional arguments at great length throughout the course of this litigation.

The Party's Motion for Reconsideration ("Mot.") (Dkt. 156) seeks to rehash those same arguments a fourth time, *see, e.g.*, Mot. at 6 ("[T]he Party's 'as-applied' argument . . . is not a

new argument"), arguing that this Court committed "clear error" by declining to adopt the reasoning of a non-binding, out-of-district case, *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263 (D. Utah 2015), which addressed a different factual context and misconstrued the Fourth Circuit precedent on which it relied. The Party has not identified any valid reason for the Court to revisit its summary judgment order, and this Court should deny the Motion.

## LEGAL STANDARD

A motion for reconsideration under Rule 54(b) is appropriate only in "extraordinary circumstances." *See King v. IC Grp., Inc.*, 743 F. Supp. 3d 1346, 1351 (D. Utah 2024) ("basic assessment" for reconsideration under Rule 54(b) is the same as under Rules 59(e) and 60(b)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* But a motion for reconsideration is *not* an appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*; *see Rivera v. Exeter Fin. Corp.*, No. 15-cv-01057-PAB-MEH, 2019 WL 6173666, at *1 (D. Colo. Nov. 19, 2019) (denying reconsideration based on "clear error" argument when "Plaintiff cite[d] no new facts or case law contradictory to the [court's prior] ruling").

Reconsideration based on a clear error argument—without any intervening law or new facts—presents the highest hurdle for reconsideration. *See, e.g.*, *King*, 743 F. Supp. 3d at 1352 (clear error "normally requires the definite and firm conviction that a mistake has been

2

committed" (citation omitted)); *see also Dolan v. FEMA*, 794 F. Supp. 3d 951, 985-86 (D.N.M. 2025) (explaining burdens of reconsideration requests, which require litigation of the same issues that the parties and the court have already addressed (applying *Servants of Paraclete*, 204 F.3d at 1012)). As the Fourth Circuit has explained "on more than one occasion, '[a] prior decision does not qualify for [the clear error grounds for reconsideration] by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)).

## ARGUMENT

**I.     The Party has failed to meet the high standard for reconsideration.**

This Court should summarily deny the Party's Motion, just as it denied the reconsideration request in *Rivera*. *See* 2019 WL 6173666, at \*1 (Brimmer, C.J.). In *Rivera*, Plaintiffs challenged the Court's order denying class certification. When plaintiffs moved for reconsideration of that order, this Court required just a single paragraph of analysis to deny their motion. *Id.* The Court noted that plaintiffs' motion (1) took issue with the court's "refusal to find an ascertainable class"; (2) directed "the Court to a case decided before the Court's [prior] order" and (3) reasserted "arguments already presented to and considered by the Court." *Id.* Applying the high standard for reconsideration (*supra* at 2-3), it concluded that "[n]one of these grounds provide a basis for the Court to reconsider its [prior] order." *Id.*

The Party's Motion shares the same flaws as the one in *Rivera*, and it merits the same summary denial. Just as in *Rivera*, the Motion (1) takes issue with the Court's prior holding— namely, that providing a "reasonable ability to opt out of the semi-open primary" alleviates any

associational burden that Proposition 108 might impose, Mot. at 2 (quoting MSJ Order at 20); (2) relies heavily on a case decided more than a decade before the March 31 MSJ Order, *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263 (D. Utah 2015), Mot. at 5-9; and (3) reasserts arguments that the Party *admits* it presented "in its motion for summary judgment here," Mot. at 8; *see id.* at 6-7 (noting that same argument was "expressly raised in the Party's Motion for Summary Judgment"). As in *Rivera*, "[n]one of these grounds provide a basis for the Court to reconsider its March 31 order," and this Court need not delve further to deny the Motion. In fact, the basis for denying reconsideration is even stronger here than in *Rivera* because the Party also cited and relied upon the same authority in its arguments in support of its first motion for a preliminary injunction, Dkt. 63 at 1-2, which this Court also denied.

Particularly given the lengthy procedural history of this case, the Party's argument that this Court "misapprehen[ded] . . . the nature of the Party's 'as-applied' challenge to the unaffiliated mandate," Mot. at 5, cannot justify the Party rehashing the same arguments it made in two prior rounds of briefing, *see Brumark*, 57 F.3d at 948. But in any event, the Party's suggestion that this Court misapprehended its as-applied challenge is belied by the MSJ Order itself. MSJ Order at 20. The Party urges the Court to hold that "[o]nce the [Party] declines to opt out of the open primary, the requirement that it allow unaffiliated voters to participate in its primary election" is unconstitutional "as applied . . . as a matter of law." Mot. at 8. Far from misapprehending this argument, the MSJ Order expressly rejected it, holding instead that "if a

4

major party has a reasonable ability to opt out of the semi-open primary, the associational burden of Proposition 108 would not exist." MSJ Order at 20.[1]

Similarly, the Party is wrong that the Court "le[ft] unresolved the constitutionality of the unaffiliated voter mandate unburdened by" the three-fourths opt-out threshold. Mot. at 9. Instead, the Court quoted *Miller v. Brown*, 503 F.3d 360, 367 (4th Cir. 2007), for the rule that when, "by merely choosing [other methods controlled and funded by the party], a party is free to limit its candidate selection process" to party members, then "the forced association that the Supreme Court has condemned simply is not present." MSJ Order at 20-21 (quotation marks and citation omitted).[2] Based on that principle, the Court carefully ruled that the Party was entitled to summary judgment "*only* to the extent of the Court declaring the three-fourths opt-out provision unconstitutional." MSJ Order at 21 (emphasis added).

Nor is there any error in the Court declining to explicitly address the non-binding out-of-district precedent (*Utah Republican Party v. Herbert*) that forms the basis for the Party's reconsideration request. The Party briefed that case at length in its motion for summary judgment (Dkt. 105 at 7-9) and the Secretary responded to that authority at length (Dkt. 108 at 6-10). "There is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." *Dade v. Wands*, No. 11-cv-00430-WJM-MJW, 2012 WL

---

[1] The Party's alternate framing that it was "seeking a ruling of unconstitutionality 'as applied' to the unaffiliated voter mandate," is not an as-applied challenge at all, as the Party concedes that such a ruling would apply to "either major political party in Colorado." Mot. at 6.

[2] To the extent the Party claims that it alleges separate "as applied" and "facial" claims in the Complaint, it is incorrect. In both Count I and Count II of the Complaint, the Party challenged the provisions of Proposition 108 "on their face and as applied." *See* Compl. (Dkt. 1) ¶¶ 38, 42, 51, 53.

1207150, at *1 (D. Colo. Apr. 11, 2012); *United States v. Rogers*, No. 10-CR-10186-01-JTM, 2016 WL 7650583, at *1 (D. Kan. Mar. 9, 2016) ("Arguments not discussed may be deemed implicitly rejected, rather than ignored."). And that legal principle holds especially true where, as here, the Party relies on *Herbert* for its "review of controlling Supreme Court precedent" that this Court did address at length in its MSJ Order. Mot. at 8; *see, e.g.*, MSJ Order at 13-16.

Finally, to the extent the Party finds ambiguity in the fact that the Court has not yet issued a final judgment in this case, Mot. at 3-4, 9, the Party's arguments for reconsideration ignore this Court's clear holdings. In both its MSJ Order and its April 28, 2026 Order, this Court made clear that Proposition 108's semi-open primary requirement does *not* burden the Party's associational rights, provided the Party has a reasonable opportunity to opt out and choose to nominate its candidates by convention or assembly, as Colorado law permits. MSJ Order at 20-21; Order Denying Emergency Relief at 1-3. The Party's request for an order requiring a closed primary as a matter of constitutional law, Mot. 9, is flatly inconsistent with those rulings. And the Party's Motion does not come close to satisfying the high standard of showing that those rulings were "clearly in error." *See supra* at 2-3.

II.     **The Court's March 31 Order rightly rejected the argument that the Party's First Amendment rights are violated even after it chooses not to opt out of the primary.**

Even if this Court were inclined to evaluate the Party's arguments afresh, those arguments would still fail. In effect, the Party argues that it is immaterial whether it has freely chosen to remain in the State-funded primary. It insists that even after declining to opt out of a semi-open primary, including unaffiliated voters in its primary severely burdens its First Amendment rights. That position is both nonsensical and undermined by Supreme Court precedent. If the Party "decline[s]" to opt out, it is its own choice, not state law, that allows

unaffiliated voters to participate in its nominating contests. And if the Party has chosen to use a

nominating system in which unaffiliated voters are included, it can hardly turn around and claim

the state is unconstitutionally burdening its associational rights. To the contrary, the Supreme

Court has held that parties' right of free association *prevents* the state from interfering with

parties' choice to include unaffiliated voters in their primaries if they so desire. *See Tashjian v.*

*Republican Party of Conn.*, 479 U.S. 208 (1986).

The District of Utah's decision in *Herbert* does not provide persuasive authority to the

contrary. At issue in *Herbert* was a system that allowed political parties to choose between

becoming a "registered political party" (RPP) or a "qualified political party" (QPP). *See Herbert*,

144 F. Supp. 3d at 1267-68. QPPs, unlike RPPs, were required to open their primaries to

unaffiliated voters, among other differences. *Id.* The plaintiff parties, both of whom had elected

to be QPPs, contended that this requirement severely burdened their associational rights. The

state responded that there was no burden of forced association because those parties had elected

to proceed as QPPs. *Id.* at 1269. The court rejected the state's argument, concluding that once the

plaintiffs elected to be QPPs, the law was unconstitutional as applied to them. *Id.* at 1280.

Respectfully, the *Herbert* court's reasoning is flawed and should not be applied here. As

this Court's orders have recognized, the effects of election laws must be analyzed "in sum rather

than in isolation." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1088 (10th Cir. 2018) (citing

*Arutunoff v. Okla. State Election Bd.*, 687 F.2d 1375, 1379 (10th Cir. 1982) ("[E]ach case must

be resolved on its own facts after due consideration is given to the practical effect of the election

laws of a given state, viewed in their totality.")). *Herbert*'s analysis ignored the other paths

available to parties. 144 F. Supp. 3d at 1278-80. The Constitution does not require States to offer

political parties their preferred nomination method, only a constitutionally sufficient one. *See Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974). Where those "constitutionally sufficient paths" exist, the "burden that any one particular route . . . places on candidates, voters, and parties is necessarily reduced." *Cox*, 892 F.3d at 1088. *Herbert* erred by failing to accord "due weight" to the presence of those constitutional alternatives. *See id.*

The only authority *Herbert* cited in support of its conclusion was *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007). But *Herbert* misinterprets *Miller*, which does not support *Herbert*'s conclusion. *Miller* concerned a set of Virginia election laws that provided multiple avenues for candidate nomination. *Id.* at 362. By law, the incumbent state legislator in a particular office was empowered to choose the method by which candidates for the legislator's seat would be nominated in the next election. *Id.* If the candidate selected nomination by primary, then the state's open primary law required that all registered voters be permitted to participate, regardless of party affiliation. *Id.* at 362-63. But candidates could also choose other methods, including a party-funded convention, caucus, or party canvas. *Id.* at 362. In *Miller*, the incumbent legislator in a particular senatorial district had selected the primary as the nomination method for the next election. *Id.* The state Republican party committee in charge of the party's nomination process for that district alleged that the legislator's choice forced it to associate with non-party members against its will, and the district court agreed. *Id.* at 362-64.

On appeal, the state argued that the party was not being forced to associate with those voters, because the incumbent legislator was acting as the party's representative in selecting the nomination method. *Id.* at 368-69. The Fourth Circuit rejected that argument as a matter of both fact and law, refusing to accept that the incumbent legislator's choice served as a stand-in for the

party's choice. *Id.* It thus concluded that the party's associational rights were burdened under the circumstances. *Id.* at 369-70. But critical to the Fourth Circuit's holding was its conclusion that the party had *not* chosen for itself whether to proceed by primary. *Id.* Indeed, the Party acknowledges as much in its Motion. *See* Mot. at 5. As a result, *Miller* does not support *Herbert*'s conclusion that *even when the party has itself chosen* among constitutionally adequate nomination methods, the party's associational rights are burdened if one of those methods requires the party to include non-members. To the contrary, the Fourth Circuit rejected the party's facial challenge to the open primary law on the basis that the law "ma[de] available to political parties multiple options for restricting their candidate selection process to individuals of their choosing." *Id.* at 368.

Nor does the Tenth Circuit's decision in *Cox*, 892 F.3d 1066, support adopting *Herbert* here. *Cox* repeatedly referenced *Herbert* in describing the litigation's procedural history, but it made clear that the legal provision requiring political parties who register as QPPs to include unaffiliated voters in their primaries was "not before [the court]." *Id*. at 1073. In dicta, *Cox* described *Herbert*'s ruling invalidating that provision as grounded in the principle that parties have "a right to identify the people who constitute the association, and to select a standard bearer." *Id.* at 1081 (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989)). But it nowhere discussed or affirmed *Herbert*'s narrower conclusion that a political party is unconstitutionally burdened even if the party is free to choose an alternative nomination process that excludes unaffiliated voters. To the contrary, *Cox* repeatedly emphasized in its holding that when candidates "have alternative and constitutionally sufficient paths through

9

which to qualify" for the ballot, "the burden that any one particular route to ballot access that the law places on candidates, voters, and parties is necessarily reduced." *Id.* at 1088.

Unlike in *Miller*, Proposition 108 does not outsource to others the choice of whether the Party will proceed by semi-open primary or another method; it empowers the Party to make that decision. Once the Party itself chooses not to opt out and to participate in the semi-open primary, "the forced association that the Supreme Court has condemned simply is not present." MSJ Order at 20-21 (citation omitted). *Herbert*, which misconstrued *Miller*, does not entitle the Party to summary judgment.

## CONCLUSION

For these reasons, as well as the reasons set forth in the Secretary's summary judgment briefing, this Court should deny the Party's Motion for Reconsideration.

Respectfully submitted this 5th day of June, 2026.

PHILIP J. WEISER
Attorney General

/s/ Kolya Glick
**Emily Burke Buckley**, First Assistant Attorney General
**Kyle M. Holter**, Assistant Attorney General
**Talia Kraemer**, Senior Assistant Attorney General
**Kolya D. Glick**,* Senior Assistant Attorney General
Public Officials Unit | State Services Section
1300 Broadway, Denver, CO 80203
Telephone: 720.508.6000
emily.buckley@coag.gov; kyle.holter@coag.gov;
talia.kraemer@coag.gov; kolya.glick@coag.gov

*Practice in Colorado temporarily authorized pending admission under C.R.C.P. 205.6

*Attorneys for Defendant*

10